# EXHIBIT J

# Litigation Alert:
## Supreme Court's *Petrella* Decision Eliminates the Laches Defense as an Absolute Bar to Copyright Claims

MAY 20, 2014



*Laches, we hold, cannot be invoked to preclude adjudication of a claim for damages brought within the three-year window* [of the Copyright Act's statute of limitation]

In the coming months, authors of copyrighted materials may begin resurrecting long buried works and asserting infringement claims against current users. The doctrine of laches—a plaintiff's unreasonable delay in bringing suit combined with prejudice to a defendant—had kept many infringement claims interred where the author had not filed suit within three years of discovering the infringement.

In *Petrella v. Metro-Goldwyn-Mayer, Inc.*, No. 12-1315 (May 19, 2014), the Supreme Court eliminated laches as an absolute defense for copyright claims. Now any copyright owner can seek monetary damages for infringement during the past three years, no matter when the infringement began. The key question left open by *Petrella* is whether laches will remain an effective defense against disgorgement of profits and injunctive relief—the equitable remedies under the Copyright Act.

### The *Raging Bull* Litigation
Paula Petrella sued MGM for copyright infringement of her father's screenplay for Raging Bull. Although her father, Frank Petrella, had assigned his rights in the screenplay to MGM's subsidiary, after his death the renewal rights reverted to his heirs free from assignment under *Stewart v. Abend*, 495 U.S. 207 (1990). Ms. Petrella obtained the renewal rights to her father's screenplay in 1991, and after making sporadic litigation demands to MGM, filed suit in 2009.

The district court granted MGM's motion for summary judgment on laches, holding that Ms. Petrella unreasonably delayed bringing suit and that MGM was prejudiced by the delay. The Ninth Circuit affirmed, applying its precedent that when infringement began more than three years before filing suit, courts should presume that the delay was unreasonable. The Supreme Court, in a majority opinion written by Justice Ginsburg and joined by five others, reversed and remanded. Justice Breyer, joined by Justices Roberts and Kennedy, dissented.

### The Copyright Act's Statute of Limitations
The Copyright Act contains a three-year limitations period, added by Congress in 1957. 17 U.S.C. § 507(b). The three-year period begins when the copyright claim accrues—when a copyright owner can file suit and obtain relief. A claim accrues either when the infringer first copies a work or when the copyright owner first discovers the infringement. (Nine circuit courts have adopted the latter "discovery rule"; the Supreme Court has not resolved that dispute.)

Further, copyright owners enjoy a "separate-accrual rule." Each infringing act triggers a new three-year limitations period. So when Ms. Petrella brought suit in 2009, she limited her claim for relief to damages and MGM's profits for the previous three years, as well as prospective injunctive relief.

### The *Petrella* Decision's New Rule on Laches
The new rule is: A claim brought within a statutory limitations period cannot be barred by laches; in extraordinary circumstances, however, delay may warrant curtailing equitable remedies. The majority advanced three rationales for this rule: (1) Congress already took into account the issue of delay when drafting the statute of limitations; (2) infringers may offset an award of profits with "deductible expenses" and "elements of profit attributable to factors other than the copyrighted work"; and (3) laches was historically a defense to equitable, not legal, remedies. Notably, the majority found nothing "untoward" about a copyright owner waiting to see if a defendant profited from infringement before filing suit.

The majority also offered two balms for copyright defendants. First, it highlighted that its holding did not eliminate the defense of estoppel, which bars suit when a plaintiff misled a defendant about the plaintiff's intent to abstain from suit and the defendant detrimentally relied on that misrepresentation. And it acknowledged that a district court can consider a plaintiff's delay in fashioning

equitable remedies, including disgorgement of profit and injunctive relief.

**Implications for Copyright Use and Other Types of IP**
The *Petrella* decision may ignite a firestorm of dormant copyright disputes. The decision will galvanize savvy copyright owners to dust off older works and reconsider asserting their rights against current users.

In response, businesses that rely on copyrighted material, particularly in the entertainment and software industries, should reevaluate their risk exposure. *Petrella* diminishes the advantage of operating under the radar by allowing authors to wait until a business realizes profits to make a demand. In some circumstances, it may now make sense to inoculate against that risk by forcing the issue early—contacting the author and asking her to state clearly if she believes she retains any interest in the work and intends to sue. A "no" builds the ground work for an estoppel defense; a "yes" avoids the surprise of receiving a demand letter three years after making a profit. Remember, of course, that just asking puts a business in an author's crosshairs.

Businesses may also wish to keep all financial records showing deductible expenses for the duration of a product's life (plus three years). For products that may be on the market for decades, such a retention schedule will exceed the duration imposed by financial reporting requirements.

Finally, patent holders and technology companies should recognize that *Petrella* casts doubt on the Federal Circuit's rule that laches can bar damages incurred before a suit is filed. *See A.C. Aukerman Co. v. R.L. Chaides Constr. Co.*, 960 F.2d 1020, 1029–31 (1992). In a footnote, the *Petrella* majority noted the Federal Circuit rule, but stated that the Supreme Court had "not had occasion to review the Federal Circuit's position." Given *Petrella*'s discussion of the preemptive effect of statutory limitations periods and its reinforcement of the distinction between equitable and legal forms of relief, the Federal Circuit's rule on laches may not survive much longer.

*For more information please contact:*

Ilana S. Rubel, 650.335.7208; irubel@fenwick.com
Sebastian E. Kaplan, 415.875.2477; skaplan@fenwick.com

©2014 Fenwick & West LLP. All Rights Reserved.

THE VIEWS EXPRESSED IN THIS PUBLICATION ARE SOLELY THOSE OF THE AUTHOR, AND DO NOT NECESSARILY REFLECT THE VIEWS OF FENWICK & WEST LLP OR ITS CLIENTS. THE CONTENT OF THE PUBLICATION ("CONTENT") SHOULD NOT BE REGARDED AS ADVERTISING, SOLICITATION, LEGAL ADVICE OR ANY OTHER ADVICE ON ANY PARTICULAR MATTER. THE PUBLICATION OF ANY CONTENT IS NOT INTENDED TO CREATE AND DOES NOT CONSTITUTE AN ATTORNEY-CLIENT RELATIONSHIP BETWEEN YOU AND FENWICK & WEST LLP. YOU SHOULD NOT ACT OR REFRAIN FROM ACTING ON THE BASIS OF ANY CONTENT INCLUDED IN THE PUBLICATION WITHOUT SEEKING THE APPROPRIATE LEGAL OR PROFESSIONAL ADVICE ON THE PARTICULAR FACTS AND CIRCUMSTANCES AT ISSUE.