Stephen M. Lobbin (admitted *pro hac vice*)
**The Eclipse Group LLP**
2020 Main Street, Suite 600
Irvine, California  92614
Tel:  949.851.5000

Mark W. Ford (10659)
Rachel Jacques (13250)
**Maschoff Brennan**
1389 Center Drive, Suite 300
Park City, Utah  84098
Tel:  435.575.1387

*Attorneys for Plaintiff Petter Investments, Inc. d/b/a RIVEER*

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF UTAH

| | |
|---|---|
| **PETTER INVESTMENTS, INC.** d/b/a **RIVEER**, a Michigan corporation,<br><br>     Plaintiff,<br><br>vs.<br><br>**HYDRO ENGINEERING, INC.**, a Utah corporation, and **CALIFORNIA CLEANING SYSTEMS**, a California company,<br><br>     Defendants. | **PLAINTIFF RIVEER'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ON PLAINTIFF'S FIRST CLAIM FOR RELIEF**<br><br>Civil Case No. 2:14-CV-00045<br><br>Judge Dee Benson |
| AND RELATED COUNTERCLAIMS | |

**FILED UNDER SEAL**
**THE DOCUMENT CONTAINS "SEALED MATERIAL"**

## TABLE OF CONTENTS

I.   INTRODUCTION ................................................................................................2

II.   BACKGROUND ................................................................................................4

III.   RESPONSE TO STATEMENT OF ELEMENTS AND UNDISPUTED MATERIAL
FACTS ........................................................................................................................10

   A.   Riveer's Response To Hydro's Statement Of Elements.................................................10

   B.   Riveer's Response To Defendants' Statements Of Undisputed Facts ............................19

IV.   ARGUMENT ................................................................................................31

   A.   Riveer's First Claim For Relief Is Not Barred By Res Judicata Or Collateral Estoppel....32

   B.   Riveer's First Claim For Relief Is Not Barred By The *Kessler* Doctrine........................35

   C.   Riveer's First Claim For Relief Is Not Barred By Laches...............................................37

V.   CONCLUSION.................................................................................................44

## TABLE OF AUTHORITIES

**CASES**

A.C. Aukerman Company v. R.L. Chaides Construction Co.

    960 F.2d 1020, Federal Circuit, 1992......................................................12, 22, 23, 44, 47, 48

*Abbey v. Mercedes Benz of N. Am., Inc.*

    No. 05-1050, 138 Fed.Appx. 304, 2005 WL 1109603 (Fed. Cir. May 11, 2005) ..................18

*Acumed LLC v. Stryker Corp.*

    525 F.3d 1319 (Fed. Cir. 2008)...................................................................................................38

*Adelberg Labs., Inc. v. Miles, Inc.*

    921 F.2d 1267 (Fed. Cir. 1990).............................................................................................22, 43

Blackhawk Molding Company, Inc.

    133 F.3d 1469, Federal Circuit, 1998.......................................................................................11

*Brain Life, LLC v. Elekta Inc.*

    746 F.3d 1045 (Fed. Cir. 2014)...........................................................15, 16, 20, 21, 40, 41

*Celotex Corp. v. Catrett*

    477 U.S. 317 (1986) .................................................................................................................36

*Cisco Sys. v. United States*

    804 F. Supp. 2d 1326 (Ct. Int'l Trade 2011) ...........................................................................36

*Commonwealth Property Advocates, LLC v. Mortgage Elec. Registration Sys., Inc.*

    680 F.3d 1194 (10th Cir. 2011) ..........................................................................................19, 38

*Dowling v. City of Philadelphia*

    855 F.2d 136 (3d Cir. 1988) .....................................................................................................36

*Easter v. United States*

    575 F.3d 1332 (Fed. Cir. 2009)................................................................................................36

*Foster v. Hallco Mfg. Co.*

    947 F.2d 469 (Fed. Cir. 1991)............................................................................................16, 37

*Globe-Union, Inc. v. Tiegel Mfg. Co.*

    228 USPQ 58 (N.D. Calif. 1985) ..............................................................................................48

*Hallco Mfg. Co. v. Foster*

    256 F.3d 1290 (Fed. Cir. 2001)................................................................................................16

*Jacobsen v. Deseret Book Co.*
   287 F.3d 936 (10th Cir. 2002) ..............................................................22, 43, 44

*Jensen v. Cunningham*
   250 P.3d 465 (Utah 2011).....................................................................................19

*Kearns v. Gen. Motors Corp.*
   94 F.3d 1553 (Fed. Cir. 1996)......................... 16, 17, 18, 19, 20, 37, 38, 39

*Kessler* ...........................................................................................2, 7, 19, 20, 21, 40

*Kessler v. Eldred,*
   206 U.S. 285 (1907) ........................................7, 8, 19, 20, 21, 40, 41

*Kinetic Concepts, Inc. v. ConvaTec, Inc.*
   268 F.R.D. 226 (D.N.C. 2010)..............................................................................10

*Mahurkar Patent Litigation*
   831 F. Supp. 1354, 1379-80 (N.D. Ill. 1993), aff'd, 71 F.3d 1573 (Fed. Cir. 1995) ..............48

*Maxon Premix Burner Co. v. Eclipse Fuel Engineering Co.*
   471 F.2d 308 (7th Cir. 1972) ..............................................................................46

Meyers v. Asics Corp.
   974 F.2d 1304, Federal Circuit, 1992...................................................................12

*Meyers v. Brooks Shoe, Inc.*
   912 F.2d 1459 (Fed. Cir. 1990)......................................................................22, 43

*MGA, Inc. v. General Motors Corp.*
   827 F.2d 729 (Fed. Cir. 1987)..............................................................................21

*Moore v. Schultz*
   491 F.2d 294 (10th Cir. 1974) ............................................................................46

*Pelt v. Utah*
   539 F.3d 1271 (10th Cir. 2008) .............................................................15, 16, 38

*Petrella v. MGM*
   134 S. Ct. 1962 (2014) ...........................................................................23, 24, 43

*PPC Broadband, Inc. v. Corning Gilbert Inc.*
   5:13-CV-538 GLS/DEP, 2013 WL 6145799 (N.D.N.Y. Nov. 21, 2013) ..............38

*RCA Corp. v. Data General Corp.*
   701 F. Supp. 456 (D. Del. 1988)..........................................................................46

*SciMed Life Sys. v. Advanced Cardiovascular Sys., Inc.*

    No 99 C 112, 1999 WL 33244568 (D. Minn. May 17, 1999) .........................................18, 37

*Senju Pharm. Co. v. Apotex Inc.*

    746 F.3d 1344 (Fed. Cir. 2014)............................................................................................16

*Serdarevic v. Advanced Medical Optics, Inc.*

    532 F.3d 1352 (Fed. Cir. 2008)............................................................................................46

*Stratos Lightwave, Inc. v. Picolight, Inc.*

    No. 03 C 917, 2005 WL 681308 (D. Del. Mar. 23, 2005) ...................................................18

*Studiengesellschaft Kohle v. Eastman Kodak Co.*

    616 F.2d 1315 (5th Cir. 1980) ..............................................................................................46

*Tanner v Johnston*

    Civ. No. 11-cv-28, 2013 WL 139884 (D. Utah Jan. 10, 2013) .............................................10

*Trading Tech. Int'l, Inc. v. BCG Partners, Inc.\*

    No. 10 C 715, 2011 WL 3157304 (N.D. Ill. July 26, 2011).............................................18, 37

*Vaupel Textilmaschinen KG v. Meccanica Euro Italia S.P.A.*

    944 F.2d 870 (Fed. Cir. 1991).............................................................................................46

*Yellowbear v. Lampert*

    741 F.3d 48 (10th Cir. 2014) ...............................................................................................36

## OTHER AUTHORITIES

James W. Moore et al., Moore's Federal Practice ¶¶ 0.401, 0.405, 0.441 (2d ed.1992) ..............19

## RULES

35 U.S.C. § 101.....................................................................................................................17

35 U.S.C. § 282(b) ................................................................................................................23

35 U.S.C. § 286.....................................................................................................................23

DUCivR 56-1(c)..................................................................................................................7, 15

DUCivR 56-1(c)(2)(B)...........................................................................................................24

Fed. R. Civ. P. 56(a)...............................................................................................................36

Fed. R. Civ. P. 56(d) ...........................................24, 25, 27, 28, 29, 30, 31, 32, 34, 35, 36, 40, 42, 49

Rule 12(c) .............................................................................................................................36

Rule 12(d) .............................................................................................................................36

Rule 30(b)(6) ....................................................................25, 27, 28, 29, 30, 31, 32, 33, 34, 35, 36

iv

Rule 34(b)............................................................................................................10

Rule 37(a)(4)........................................................................................................10

Pursuant to DUCivR 56-1(c), Plaintiff Petter Investments, Inc. d/b/a RIVEER ("Riveer") hereby opposes Defendants Hydro Engineering, Inc. ("Hydro") and California Cleaning Systems' (collectively "Defendants") Motion for Summary Judgment on Plaintiff's First Claim for Relief (*see* Docket No. 72).

## I.  INTRODUCTION

Defendants seek a dismissal of Riveer's first claim for relief under each of the following three legal theories: (1) preclusion based on res judicata (claim preclusion) and/or collateral estoppel (issue preclusion); (2) the *Kessler* doctrine; and (3) laches.  On each theory, Defendants fundamentally fail to properly apply the law.  Additionally, even if Defendants had employed a correct legal analysis, they are unable to establish that all necessary facts are undisputed.  For these reasons, Defendants' Motion should be denied.

Defendants' preclusion and *Kessler* doctrine theories are flawed at a fundamental level because they are based on an erroneous legal premise.  Specifically, Defendants contend that "Petter is barred from asserting any infringement claims against the Hydropad® now that it could have asserted [during an earlier case between the parties]."  (Motion at 1.)  Hydro fails to provide any legal support for the proposition that a plaintiff must assert all possible patents against an alleged infringer, or lose the right to assert them later.  Contrary to Hydro's assertion, the law is clear that a patent owner ***who does not*** assert all possible patents against an alleged infringer ***does not*** lose the right to assert them later.

Even if a patent owner were required to assert all possible patents against an alleged infringer or lose the right to assert them later, Defendants' preclusion and *Kessler* doctrine theories still fail because genuine issues of material fact surround the elements necessary to establish these theories.  For example, in order for Defendants' preclusion and *Kessler* doctrine theories to stand, the accused products in both actions must be "essentially the same."  Based on

2

the limited discovery that Riveer has obtained in this case, it has already been established that a number of changes have been made to the accused Hydropad product since the conclusion of the earlier suit between the parties. Whether the accused products remain "essentially the same" after these changes is disputed. Construing the record in the light most favorable to Riveer, as it must be, this Court should deny Defendants' summary judgment request based on their preclusion and *Kessler* doctrine theories.

Defendants' laches theory is also legally flawed. Laches is an equitable doctrine that, when established, bars recovery of damages for any infringement (but ***not*** injunctive relief) occurring before a patent owner's lawsuit was filed. Based on their laches argument, however, Defendants seek ***complete dismissal*** of Riveer's first claim for relief. Complete dismissal of a claim is simply unavailable under a laches defense.

Even if complete dismissal were an available relief under the laches doctrine, Defendants' laches theory would still fail because genuine issues of material fact surround the elements necessary to establish this defense. To begin, when Riveer knew or reasonably should have known of its claim against Defendants (a critical element in a laches defense) is disputed. In addition, whether Riveer's delay in filing this case is reasonable and excusable is also disputed. Riveer asserts that any delay in filing this suit is both reasonable and excusable for a number of reasons, including the fact that Riveer and Hydro have been embroiled in at least one litigation with each other since 2007 (and often more than one case at the same time). Further, whether Defendants have suffered legally sufficient prejudice from any delay is also disputed. Construing the record in the light most favorable to Riveer, as it must be, this Court should deny Defendants' summary judgment request based on their laches theory.

3

## II.   BACKGROUND

In this action, Riveer alleges infringement of three United States Patents, as well as false advertising, intentional interference with prospective economic advantage, unfair competition, and non-infringement of a trademark asserted by Defendant Hydro.  *See* Docket No. 65. Because Defendants asserted counterclaims, the pleadings in this action closed with Riveer's reply, which was filed just over three months ago on March 21, 2014.  (*See* Docket No. 67.) Since then, the parties have been engaged in the initial disclosures required under Local Patent Rules 2.1 through 2.5.  This Court held its Initial Pretrial Conference on May 14, 2014, and issued its Scheduling Order on June 6, 2014, just one month ago.  (*See* Docket Nos. 71, 79.)

As this case is just beginning, Riveer could not seek any discovery from Hydro until April 1, 2014, which afforded the parties a mere two months of time to conduct discovery before Defendants filed the instant Motion.  (*See* Docket No. 79 at 2.)  Riveer promptly and diligently took its first deposition on April 28, 2014, in order to cross-examine Hydro's Alan McCormick, in his individual capacity, with respect to two declarations he had submitted discussing the accused infringing products.  (*See* Docket Nos. 26-2, 40-2; Declaration of Stephen Lobbin ("Lobbin Decl.") at Ex. D, excerpts from transcript of McCormick Deposition ("McCormick Depo).)[1]  Thereafter, on May 8, 2014, Defendants served a first set of written discovery requests on Riveer, while on May 15, 2014, Riveer served 57 document production requests on Defendants.[2]

---

[1]  Exhibits D-J cited herein are submitted with the Declaration of Stephen M. Lobbin, filed herewith.  Riveer has used "D" for its first exhibit because with its Motion, Defendants submitted A-C.

[2]  On July 7, 2014, Riveer also served a first set of interrogatories on Defendants, many of which seek to confirm the genuine issues of material fact extant on this motion, as well as the other two premature summary judgment motions Defendants have filed.  (*See* Lobbin Decl., Ex. E.)

*Before* responding to Riveer's discovery requests, however, Defendants filed this motion on May 23, 2014.  Even when it did respond to Riveer's document production requests, Hydro stated that it "refuses to produce any documents" or " will not produce any further documents" in response to 32 of the 57 requests.  (*See* Lobbin Decl., Ex. F, Responses to Requests for Production.)   Even Hydro's other responses were improperly equivocal about whether any documents would be produced, stating that "Hydro will produce relevant, non-privileged documents responsive to this Request, if any, in its possession . . . [and] to the extent not already produced." (*See, e.g., id.* at Response to Request No. 16).[3]  Thus, not only has Riveer not yet received any interrogatory responses relevant to this motion, but Riveer also has not yet received any of the documents it has requested from Hydro, many of which also are directly relevant to this motion.

As further important background relevant to this Motion, from 2007 to 2013, Riveer and Hydro were embroiled in two other patent litigation matters in the Western District of Michigan.  (*See* Declaration of Matthew J. Petter ("Petter Decl.") at ¶ 3.)  Hydro originally prompted that litigation by threatening Riveer with a September 7, 2007 "cease and desist" letter, asserting two

---

[3] Based on this response, Riveer has no way of knowing whether there exist responsive documents.  In many federal districts, this brand of hyper-equivocal response to a document request is highly improper.  *See Tanner v Johnston*, Civ. No. 11-cv-28, 2013 WL 139884, at *1 (D. Utah Jan. 10, 2013) ("Where a party provides an evasive or incomplete discovery response, the requesting party may file a motion to compel a full discovery response."); *see also Kinetic Concepts, Inc. v. ConvaTec, Inc.*, 268 F.R.D. 226 (D.N.C. 2010) ("[A] response to a request for production of documents which merely promises to produce the requested documents at some unidentified time in the future, without offering a specific time, place and manner, is not a complete answer as required by Rule 34(b) and, therefore, pursuant to [the provision now codified at Rule 37(a)(4)] is treated as a failure to answer or respond.").

of its patents directed to a "Wash Fluid Containment System." (*See* Petter Decl., Ex. 26.)[4]  In 2007, Riveer was still a young, small company with no experience with patent litigation. (*Id.* at ¶ 4.)  Because it could not risk being sued away from its Michigan home venue, and because it believed Hydro was infringing one of only two Riveer patents then existing,[5] in October 2007 Riveer filed a defensive suit against Hydro in the Western District of Michigan, including Riveer's '792 patent and the two Hydro patents. (*See* Petter Decl., Ex. 27.)

Concerning Riveer's '792 patent, in September 2008 Hydro filed a motion requesting summary judgment on grounds of equitable estoppel and non-infringement.  In December 2008, the Michigan court ***denied*** the motion on equitable estoppel grounds, and granted the motion on non-infringement grounds ***for reasons having nothing to do with the infringement allegations presented in this action concerning Riveer's '298 patent***.  *See* Lobbin Decl., Ex. G.[6]  As the court explained, in relevant part:

> A patentee is equitably estopped to assert infringement of its patent if: one, it misleads the alleged infringer through conduct, such as words, action, inaction, or silence when it had a duty to speak, to reasonably infer that the patentee does not intend to enforce its patent against the alleged infringer, and that's the prime test we're talking about; the alleged infringer relies on that

---

[4] Exhibits 26-28 cited herein are submitted with the Declaration of Matthew J. Petter, filed herewith.  Petter has used "26" for its first exhibit because with its Motion, Defendants submitted 1-25.

[5] The scope of Riveer's patent asserted in 2007, U.S. Patent No. 6,021,792 ("the '792 patent"), is different in several important respects from its U.S. Patent No. 6,164,298 ("the '298 patent"), asserted in this case.  While the claims of the '298 patent require a wash rack including the elements of a "frame," a "basin," a "grate," a "drainage fitting," a "coupling means," a "tube," and a "pump," the '792 patent is more broadly directed to a wash rack including a "drainage fitting," a "coupling means," a "tube," and a "filtering system" comprising a "vacuum pump" and an associated "filter."  The '792 patent does not specifically require a "frame," a "basin," or a "grate."

[6] Because the substance of the Michigan court's summary judgment rulings undercuts Hydro's present motion, Hydro conveniently ignores the actual rulings and fails even to include the court's transcript among the 29 exhibits Hydro submitted with this motion.

conduct; and the alleged infringer will be prejudiced by its reliance if the patentee is allowed to proceed with its claim. That's Scholle Corporation against Blackhawk Molding Company, Inc., 133 F.3d 1469, 1471, Federal Circuit, 1998.

Petter warned Hydro in May 1998 that it would infringe its pending '792 patent, and informed Hydro that Petter had forwarded the matter to its attorney and would, quote, "pursue whatever means were available," end quote, to protect its intellectual property.  Petter wrote Hydro again a couple of months after it received the '792 patent in February 2000.  That letter suggested that Hydro was infringing the '792 patent, stated that Petter preferred an amicable resolution, and raised the possibility of granting Hydro a license.   The parties exchanged information about their products for several months.  On September 6, 2000, Petter requested Hydro to provide more information about its product line by October 1, 2000, and communications ceased shortly thereafter.  Hydro contends that Petter threatened immediate litigation and subsequently lulled Hydro into believing it had abandoned its claim through seven years of silence.

While threatening conduct followed by silence may establish estoppel, silence will not suffice, quote, "unless there was a clear duty to speak or the patentee's continued silence reinforces the defendant's inference from the plaintiff's known acquiescence that the defendant will be unmolested. Furthermore, this inference must be the only possible" one to merit summary judgment. That's A.C. Aukerman Company v. R.L. Chaides Construction Co., 960 F.2d 1020, 1043-44, Federal Circuit, 1992.   To demonstrate reliance, the parties must have had, quote, "a relationship or communication that lulls the infringer into a sense of security," end quote.  That's Aukerman at 1043.  Petter made no affirmative representation that it had abandoned any claim against it, nor did it remain silent when it had a duty to speak.  Hydro's reliance on Petter's silence, then, does not rise to the point where summary judgment should be granted, and it's a good question whether it was reasonable if there was reliance.

. . .

Hydro did not inform Petter that it would proceed unless Petter determined Hydro had infringed Petter's patent, and there was no suggestion that Petter regarded someone else liable for the alleged infringement.  The Federal Circuit has held that silence following an attempt to negotiate a license was insufficient. That's Meyers against Asics Corp., 974 F.2d 1304, 1308-09, Federal Circuit, 1992.

. . .

Although Petter stated it would pursue whatever means were available to protect its interest, Hydro knew at the time that Petter's patent was merely pending.  A suit for infringement was not possible at that time.  When the parties renewed communication after the '792 patent was issued, Petter did not threaten

suit, but it instead explained that it preferred an amicable solution.

. . .

Hydro has not provided sufficient evidence that it relied on its belief that Petter had abandoned any claim against it. Hydro contends it invested substantial capital to expand its operations, significantly increasing sales and profits from its Hydropad products. However, when initially warned of potential infringement in 1998, Hydro replied that it had been selling wash pads since 1980 and asserted that the '792 patent would be unenforceable against Hydro because its allegedly infringing activities long predated Petter's patent application. This evidence suggests that Hydro would have continued its capital investment even if it believed Petter would continue to pursue its claim. Hydro had been conducting business in this field for years. There is no indication it suspended operations when it was contacted by Petter only to resume them after a time because it believed Petter had relinquished its claim. It appears that Hydro merely continued along a course it had charted years before receiving any of these letters.

At the least, whether Hydro relied on its belief in expanding its business operations is a genuine issue of material fact which you can look at again later, but at this point in time I don't think that there's been any clear showing for summary judgment, and that's the reason for the ruling that I announced earlier. So there we are on that, which brings us then to the claim construction of the '792 patent. On that, I think the critical term is "vacuum pump" . . .

(*See* Lobbin Decl., Ex. G at 17:13-23:5.)

That brings us to the motion for summary judgment [for non-infringement], and that, the parties agree that the construction that I just gave should lead to summary judgment on the complaint for Hydro. Just bear with me a minute. Regarding the proposed construction by Petter and the argument that it worked by suction, I think quite frankly that that's the wrong use of the word "suction" under the circumstances of this case. As we talked about before, for example, if you had a spigot or you had water taken out of the second chamber, there would be a movement of the water, and that's the same thing that could occur with a motor in the second chamber, but that does not amount to suction. That amounts to gravity and water seeking its own level, which we all learned about in probably the ninth-grade science class we all had to take and I hated at the time. But anyway, removing water from the second box increases the flow rate, increases the velocity, but there certainly is no vacuum and no space has been evacuated, no gases have been evacuated from that chamber, so water moves from one container to the other by virtue of the difference in the weight of the water per unit. In other words, that's why it evens out at five and a half gallons in my prior example. . . . [T]he action that is being talked about here cannot be regarded as a vacuum. Moving the water from the second container increases the flow rate, but any pump regardless of the action would create suction as it's

> defined by Petter.  But that does not equate to a vacuum.  That's true no matter how broadly that's construed.
>
> So regarding the complaint, summary judgment will be entered on behalf of Hydro, and we will now go forward with the counterclaims under the circumstances that I outlined earlier . . . .

(*Id.* at 42:13-43:20.)  Based on the rulings of the Michigan court, the equitable defense of laches Hydro presents in this motion should be denied based on similar reasoning, particularly in view of the additional genuine disputes of material fact concerning the events occurring since the time of the Michigan court's decision, as well as the lack of reasonably sufficient discovery from Hydro so far in this action regarding facts further material to the laches issue.

Ultimately, four of Hydro's patents were litigated in the Michigan proceedings, which did not conclude until 2013.  (*See* Petter Decl. at ¶ 6.)  Until the Michigan proceedings concluded, Riveer did not have the financial resources, means, or ability to fight another patent lawsuit against Hydro, especially because Hydro also filed another lawsuit against Riveer in Utah in 2011, which is still pending.  (*See id.* at ¶ 6.)  Moreover, two other factors came to light only since 2011, convincing Riveer that Hydro indeed was infringing Riveer's '298 patent.

First, in November 2011 the Michigan court greatly expanded its view of the breadth of the "impervious top" limitation of Hydro's patents, causing Riveer to revisit the appropriate breadth of its '298 patent-in-suit.  (*See* Petter Decl. at ¶ 7.)  Specifically, in a July 2011 ruling the Michigan court stated, "Consistent with the discussion in the Court's September 8, 2009 Opinion, the impervious top is the area on which the vehicle rests—the surface—and not the area below the surface."  (*See* Lobbin Decl., Ex. H at 12.)  In a subsequent November 16, 2011, Claim Construction Memorandum, however, the court changed its prior reasoning and determined anew that the term "impervious top" is more broadly defined as "the impervious structure resting on the support base that can consist of a combination of elements with upper

and lower portions." (*See* Lobbin Decl., Ex. I at 8.)  Based on reasoning consistent with the court's revised and much broader interpretation of the term "impervious top," only a year or so before filing this action did Riveer conclude that Hydro's recent wash rack designs must infringe the '298 patent, under a consistently broad interpretation of the claims of the '298 patent. Specifically, as compared to the grate/basin modular wash rack design covered by the claims of the '298 patent, Hydro simply collapsed its grate and basin together and called it an "impervious structure . . . with upper and lower portions" as the Michigan court agreed.



## III.   RESPONSE TO STATEMENT OF ELEMENTS AND UNDISPUTED MATERIAL FACTS

### A.   Riveer's Response To Hydro's Statement Of Elements

Pursuant to DUCivR 56-1(c)(2)(A), Riveer responds to the legal elements that Defendants identify in their Motion.

#### 1.   *Claim Preclusion (Res Judicata)*

Riveer agrees with Defendants that three elements must be satisfied in order to establish res judicata, or claim preclusion, in the Tenth Circuit.  These elements are: (a) a final judgment on the merits in the earlier action; (b) identity of the parties or their privies in both suits; and (c)

identity of the cause of action in both suits.[7]  *Pelt v. Utah*, 539 F.3d 1271, 1281 (10th Cir. 2008).
Riveer also agrees with Defendants that claim preclusion applies to accused activities pre-dating
the final judgment in the prior action.  (Motion at 5.)

With regard to the third element, Defendants assert that "[t]wo claims for patent
infringement will be considered 'identical' for purposes of claim preclusion where the accused
devices in both actions are 'essentially the same[.]'"  (*Id.*)  Riveer agrees that application of
claim preclusion in a patent case requires that accused products be "essentially the same,"
however, this **alone** does not establish "identity of the cause of action."  In addition to accused
devices that are essentially the same, identity of the cause of action also requires that **the same**
**patents** be involved in both suits.  *See Kearns v. Gen. Motors Corp.*, 94 F.3d 1553 (Fed. Cir.
1996) (discussed below); *Foster v. Hallco Mfg. Co.*, 947 F.2d 469, 476 (Fed. Cir. 1991)
(defining "cause of action" in a patent context as "a suit on the same device alleged to infringe
**the same patent**."); *Senju Pharm. Co. v. Apotex Inc.*, 746 F.3d 1344, 1349 (Fed. Cir. 2014)
("Claim preclusion will generally apply when a patentee seeks to assert **the same patent** against
the same party and the same subject matter.").

The Federal Circuit addressed this very issue in *Kearns*, where it affirmed a district
court's ruling that res judicata applied to five patents asserted in an earlier suit between the
parties but overturned the district court's dismissal of sixteen additional patents asserted for the

---

[7] Because claim preclusion is not an issue exclusive to patent law, the law of the regional circuit
is used to identify the general elements of the doctrine.  *Brain Life, LLC v. Elekta Inc.*, 746 F.3d
1045, 1052 (Fed. Cir. 2014).  However, the Federal Circuit has held that "[w]hether two claims
of infringement constitute the same claim or cause of action is an issue particular to patent law
and we apply our own law without reference to the regional circuit law on that issue."  (*Id.*)
(citing *Hallco Mfg. Co. v. Foster*, 256 F.3d 1290, 1294 (Fed. Cir. 2001)); *see also Senju Pharm.
Co. v. Apotex Inc.*, 746 F.3d 1344, 1348 (Fed. Cir. 2014) ("[W]hether a particular cause of action
in a patent case is the same as or different from another cause of action has special application to
patent cases, and we therefore apply our own law to that issue.").)  Thus, Federal Circuit law is
applied to determine whether the third element of claim preclusion is met.

first time in a second suit. *Kearns*, 94 F.3d 1553.  Given its relevance to the present case (and the fact that Defendants do not even mention this case in their Motion), a summary of the *Kearns* case is appropriate.[8]

The plaintiff in *Kearns* asserted five patents against General Motors in a first suit, which it filed in Michigan. (*Id.* at 1554.)  That suit was dismissed with prejudice. (*Id.*)  Thereafter, in a suit filed in Virginia, the same plaintiff asserted against General Motors the same five patents from the first suit, plus an additional sixteen patents. (*Id.*)  The district court held that all twenty-one patents "should have been litigated in the Detroit litigation and they're barred by not having been so." (*Id.*)

While the Federal Circuit agreed "that the Michigan decision was res judicata in Virginia as to the five patents that were before the Michigan court," it concluded "that the Michigan decision was not res judicata as to the sixteen patents that were presented for the first time in the Virginia complaint." (*Id.* at 1555.)  According to the Federal Circuit, "Each of the sixteen additional patents in the Virginia complaint is, by law, directed to a separate invention. 35 U.S.C. § 101. . . . By statutory and common law, each patent establishes an independent and distinct property right." (*Id.*)  Because of this:

> Each patent asserted raises an independent and distinct cause of action. Just as infringement of one patent is not a ground of liability for infringement of a different patent, so an involuntary dismissal of a suit regarding one patent is not a ground for dismissal of a different suit on a different patent.

(*Id.* at 1555-56.)  The Federal Circuit overturned the Virginia court's dismissal of the sixteen patents that were presented for the first time in the Virginia complaint stating that the Michigan

---

[8] As an aside, the patents at issue in the *Kearns* case relate to the invention of intermittent windshield wipers.  The story of the inventor, Mr. Kearns, and these patents was the subject of the Hollywood movie "Flash of Genius."

court "did not, because it could not, reach out to extinguish substantive patent rights that were not before it." (*Id.* at 1556.)[9]

The Federal Circuit re-affirmed its position in *Kearns* in an unpublished opinion, *Abbey v. Mercedes Benz of N. Am., Inc.*, No. 05-1050, 138 Fed. Appx. 304, 2005 WL 1109603 (Fed. Cir. May 11, 2005), where the Federal Circuit stated:

> In *Kearns*, the district court applied claim preclusion, dismissing a suit because five of the twenty-one patents asserted in the suit had been involuntarily dismissed in a prior lawsuit.  *See* 94 F. 3d at 1554– 55. We rather emphatically disagreed, relying on the principle that "[e]**ach patent asserted raises an independent and distinct cause of action**."  94 F. 3d at 1555.  *Kearns* provides that normally when patents are not included in a suit, they are not before a court, and while preclusion may attach to certain issues, causes of action based on patents that are not included in a suit are ordinarily not captured, and therefore precluded, by judgments that pertain to other patents.

(*Id.* at **3 (emphasis in original, footnotes omitted).)  The holding in the *Kearns* case has also been cited, discussed, and relied upon in a numerous district court opinions where (like this case), whether a patent owner should be precluded from asserting against a defendant in a second suit a patent that was not asserted during a first suit between the parties is at issue.  *See, e.g.*, *SciMed Life Sys. v. Advanced Cardiovascular Sys., Inc.*, No 99 C 112, 1999 WL 33244568 (D. Minn. May 17, 1999); *Stratos Lightwave, Inc. v. Picolight, Inc.*, No. 03 C 917, 2005 WL 681308 (D. Del. Mar. 23, 2005); *Trading Tech. Int'l, Inc. v. BCG Partners, Inc.*, No. 10 C 715, 2011 WL 3157304 (N.D. Ill. July 26, 2011).

---

[9] The Federal Circuit also notes that "[w]hen applying res judicata to bar causes of action that were not before the court in the prior action, due process of law and the interest of justice require cautious restraint."  (*Id.* at 1556.)

2.      *Issue Preclusion (Collateral Estoppel).*

In various part of their Motion, Defendants refer to collateral estoppel, or issue preclusion. For example, the first heading in the Argument section of Defendants' Motion is "Petter's First Claim For Relief Is Barred By **Collateral Estoppel** And The *Kessler* Doctrine." (Motion at 13 (emphasis added).) Defendants, however, do not discuss collateral estoppel in the Statement of Elements. Nonetheless, for the sake of completeness, Riveer provides herein a statement of elements containing the applicable law on collateral estoppel.

In the Tenth Circuit, collateral estoppel applies where: (1) the party against whom issue preclusion is asserted was a party to or in privity with a party to the prior adjudication; (2) the issue decided in the prior adjudication was identical to the one presented in the instant action; (3) the issue in the first action was completely, fully, and fairly litigated; and (4) the first suit resulted in a final judgment on the merits. *Commonwealth Property Advocates, LLC v. Mortgage Elec. Registration Sys., Inc.*, 680 F.3d 1194, n. 11 (10th Cir. 2011) (citing *Jensen v. Cunningham*, 250 P.3d 465, 477 (Utah 2011)).

"Issue preclusion, of narrower scope than res judicata, requires that the identical issue was decided on the merits between the same parties." *Kearns*, 94 F.3d at 1554, 1556 (citing 1B James W. Moore et al., Moore's Federal Practice ¶¶ 0.401, 0.405, 0.441 (2d ed.1992)). The Federal Circuit has held that this "identical issue" requirement of collateral estoppel can only be met if the **same patents** are asserted in both actions. Indeed, in the *Kearns* case (summarized above), the Federal Circuit stated:

> In the case at bar it is not possible to show that the identical issue was presented in the sixteen patents that were not before the Michigan court, as in the five patents that were; for each patent, by law, covers an independent and distinct invention. Further, infringement must be separately proved as to each patent.

14

(*Id.* at 1556.)

### 3.    *The Kessler Doctrine.*

Defendants assert that "[a] patent infringement claim is barred under the *Kessler* doctrine where (a) there was a judgment of non-infringement in a prior action, (b) the presently asserted patent claims were brought or could have been brought in the prior action, and (c) the presently accused product is essentially the same as the adjudicated non-infringing product in the prior action." (Motion at 6.)  Defendants cite to *Brain Life, LLC v. Elekta, Inc.*, 746 F.3d 1045 (Fed. Cir. 2014), to support their position on what factors must be evaluated to determine whether to apply the *Kessler* doctrine.  The factors that Defendants identify do not appear in the *Brain Life* case and for this reason Riveer disputes Defendants' assertion.

The *Kessler* doctrine "precludes some claims that are not otherwise barred by claim or issue preclusion." (*Id.* at 1055-56.)  The *Kessler* doctrine is intended to "fill a gap between these preclusion doctrines" and allow "an adjudged non-infringer to avoid repeated harassment for continuing its business as usual post-final judgment in a patent action ***where circumstances justify that result***." (*Id.* at 1056 (emphasis added).)

In order to determine what circumstances justify application of the *Kessler* doctrine, it is necessary to review the cases in which this doctrine has been applied.  The Supreme Court established the *Kessler* doctrine in *Kessler v. Eldred*, 206 U.S. 285 (1907).  In *Kessler*, a patent owner filed suit against a competitor in Indiana alleging infringement of a single patent. (*Id.*)  After a finding of non-infringement in that case, the patent owner filed a second suit in New York ***asserting the same patent*** against a customer of the defendant in the first case, who was selling the same products that were at issue in the first case. (*Id.*)  The defendant in the first case filed a separate suit in Illinois to enjoin the patent owner from filing suit in any court alleging

15

infringement of the same patent against products that had been found to be non-infringing in the first case. (*Id.*) The Illinois court granted the injunction and the Supreme Court affirmed that decision. (*Id.*)

Since the Supreme Court established the *Kessler* doctrine, the Federal Circuit has recognized and applied the *Kessler* doctrine in two cases: *MGA, Inc. v. General Motors Corp.*, 827 F.2d 729 (Fed. Cir. 1987) and *Brain Life*, 746 F.3d 1045. In *MGA*, a patent owner sued a licensee in state court for failing to make royalty payments on new machines, which the licensee claimed were outside the scope of the licensed patent. *MGA*, 827 F.2d 729. The state court determined that the new machines were not subject to the license agreement, implicitly finding that the new machines were not covered by the licensed patent. (*Id.*) The patent owner filed a second suit in federal district court claiming that the new machines infringed ***the same patent*** that the state court had previously found did not cover the new machines. (*Id.*) The district court held that the infringement action was barred by the final judgment of the state court, which was upheld by the Federal Circuit under the *Kessler* doctrine. (*Id.*)

Finally, in *Brain Life*, a patent owner filed a first suit against a competitor alleging infringement of both apparatus claims and method claims of a patent. *Brain Life*, 746 F.3d 1045. Prior to trial, the method claims were dismissed from the case without prejudice. (*Id.*) Eventually, the apparatus claims were found to be not infringed. (*Id.*) Thereafter, the patent owner licensed the patent and that licensee filed a second suit alleging infringement of the method claims of ***the same patent*** against the defendant in the first case. The Federal Circuit found that the second suit was barred under the *Kessler* doctrine.

16

### 4.    *Laches.*

Defendants assert that the defense of laches "requires proof that (a) the plaintiff unreasonably delayed in asserting a claim, and (b) that the defendant was materially prejudiced by that delay." (Motion at 12.)  In support of their assertion, Defendants cite to the Tenth Circuit case of *Jacobsen v. Deseret Book Co.*, 287 F.3d 936 (10th Cir. 2002).  *Jacobsen* is not a patent case and Riveer disagrees that *Jacobsen* correctly identifies the elements of a laches defense in patent cases, such as this.  In patent cases, "to invoke the laches defense, a defendant has the burden to prove two factors: (1) the plaintiff delayed filing suit for an unreasonable and inexcusable length of time from the time the plaintiff knew or reasonably should have known of its claim against the defendant, and (2) the delay operated to the prejudice or injury of the defendant." *A. C. Aukerman Co. v. R. L. Chaides Construction Co.*, 960 F.2d 1020, 1032 (Fed. Cir. 1992).

In the Argument section of their Motion, Defendants cite to additional legal authority and make other statements regarding the law on laches.  For example, Defendants assert that "[l]aches presents an additional and independent ground *for dismissal* of Petter's First Claim for Relief." (Motion at 17 (emphasis added).)  Defendants also assert that "[l]aches bars claims" where the elements of laches are established.  (*Id.*)  Riveer disagrees that the equitable doctrine of laches provides a ground to dismiss or bar any claims.

The equitable defense of laches, when established by an accused infringer, bars recovery of damages only (not injunctive relief) for any infringement occurring before a patent owner's lawsuit was filed.  *Meyers v. Brooks Shoe, Inc.*, 912 F.2d 1459, 1461 (Fed. Cir. 1990) ("Laches bars recovery of damages for any infringement occurring before suit was filed."); *accord Adelberg Labs., Inc. v. Miles, Inc.*, 921 F.2d 1267, 1270 (Fed. Cir. 1990) ("In patent

infringement actions, the equitable defense of laches bars the recovery of damages for any patent infringement occurring prior to the filing of the lawsuit when a patent owner sits on his rights for an unreasonable period of time to the prejudice of an accused infringer.").

In addition, the Supreme Court recently held that, "we adhere to the position that, in the face of a statute of limitations enacted by Congress, laches cannot be invoked to bar legal relief." *Petrella v. MGM*, 134 S. Ct. 1962, 1974 (2014). While the Supreme Court's comments are from a case that deals with statues of limitations in copyright law, the Court's commentary on laches can and should be considered by courts evaluating laches issues in patent cases.[10]   In *Patrella*, the Supreme Court expressed its general caution "against invoking laches to bar legal relief." (*Id.*)   Indeed, commenting on the dissenting opinion, the majority states that "tellingly, the dissent has come up with no case in which this Court has approved the application of laches **to bar a claim for damages** brought within the time allowed by a federal statute of limitations." (*Id.* at 1974 (emphasis added).)   In a footnote addressing the analogous statute of limitations in the Patent Act, the Court indicated that the same holding may apply:

> In contrast to the Copyright Act, the Lanham Act, which governs trademarks, contains no statute of limitations . . . .   The Patent Act states: "[N]o recovery shall be had for any infringement committed more than six years prior to the filing of the complaint." 35 U.S.C. § 286.   The Act also provides that "[n]oninfringement, absence of liability for infringement or unenforceability" may be raised "in any action involving the validity or infringement of a patent."   § 282(b) (2012 ed.).   Based in part on § 282 and commentary thereon, legislative history, and historical practice, the Federal Circuit has held that laches can bar damages incurred prior to the commencement of suit, **but not injunctive relief**. *A.C. Aukerman Co. v. R.L. Chaides Constr. Co.*, 960 F.2d 1020, 1029-1031, 1039-1041 (1992) (en banc).   We have not had occasion to review the Federal Circuit's position.

---

[10] Indeed, Defendants rely on *Jacobsen v. Deseret Book Co.*, 287 F.3d 936 (10th Cir. 2002), a case that relates to copyright law, not patent law.

*Petrella*, 134 S. Ct. 1974 n.15 (emphasis added).[11]

**B.      Riveer's Response To Defendants' Statements Of Undisputed Facts**

Pursuant to DUCivR 56-1(c)(2)(B), Riveer disputes many of Defendants' purportedly "undisputed material facts" as immaterial, and also as improperly premature under Fed. R. Civ. P. 56(d)(2), which requires:

> Rule 56(d).  When Facts Are Unavailable to the Nonmovant.  If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) defer considering the motion or deny it; ***(2) allow time to obtain affidavits or declarations or to take discovery***; or (3) issue any other appropriate order.

*Id.* (emphasis added).   The declarations submitted herewith explain in specific detail the discovery Riveer still requires before being able to present all of the material facts necessary to prove the infringing conduct at issue on this motion.

Accordingly, Riveer responds to Defendants' Paragraphs 1-25 (at Pages 7-14 of Defendants' Motion) as follows:

1.      On February 8, 2000, Petter was granted U.S. Patent No. 6,021,792 (the "'792 patent") entitled "Modular Cleaning Facility." *See* McCormick Decl. at Ex. 6. Although the figures and written description of the '792 patent describe a grate/basin wash pad design, the claims of the '792 patent do not explicitly state that the "wash rack" includes a "grate." *Id.*

<u>Riveer's Response</u>:  Undisputed.

2.      On December 26, 2000, Petter was granted the '298 patent also entitled "Modular Cleaning Facility." *Id.* at Ex. 19. Unlike the claims of the '792 patent, the claims of the '298

---

[11] Although no court has yet so held, no reasoned basis should exist to distinguish the holding in *Petrella* for patent cases.  Indeed, as noted in one commentary from a prominent IP firm, "Given *Petrella's* discussion of the preemptive effect of statutory limitations periods and its reinforcement of the distinction between equitable and legal forms of relief, the Federal Circuit's rule on laches [from *Auckerman*] may not survive much longer."  (*See* Lobbin Dec., Ex. J.)

patent expressly require the use of a "grate" over a collection "basin for collecting water." *Id.* at col. 6.

Riveer's Response:  Undisputed.

3.     The '792 patent is the parent of the '298 patent, and the two patents share the same specification. *Id.* at Exs. 6, 19.

Riveer's Response:  Undisputed.

4.     In about the year 2000, Hydro began making and selling its patented Hydropad wash pad system, which incorporates an impervious, corrugated steel top surface and a side collection trough as depicted below. *Id.* at ¶¶ 7-10, Exs. 2-3.

Riveer's Response:  Disputed to the extent that the term "Hydropad wash pad system" is vague and ambiguous.   Additional discovery is required to confirm the accuracy of this statement.  Riveer requires responsive documents and interrogatory responses from Hydro, and deposition testimony from other Hydro employees (including Rule 30(b)(6) testimony for which preparation is required by Hydro) and potentially third parties, to confirm whether the design differences between the accused infringing products in the Michigan case and the present case are material *vis-à-vis* the different asserted Riveer patents in the two cases. ████████████

████████████████████████████████████████

Concurrently with this Opposition, Riveer is filing a Motion for Relief Pursuant to Rule 56(d) of the Federal Rules of Civil Procedure wherein Riveer identifies and requests relevant discovery necessary to provide a complete response to Defendants' Motion.

5.      In March 2000, Petter's patent counsel sent Hydro a letter suggesting that Hydro's Hydropad product infringed the '792 patent.  *Id.* at ¶ 13, Ex. 6.  From March through September 2000, Petter's counsel corresponded with Hydro concerning Petter's infringement allegations. *Id.* at Exs. 6-14. Petter did not sue Hydro for infringement at that time. *Id.*

Riveer's Response:  Disputed to the extent that the letter shown in Exhibit 7 invited licensing discussions rather than "suggesting" infringement.  Otherwise undisputed.

6.      Seven years later in the Fall of 2007, Hydro learned that Petter was offering and selling wash pads with impervious tops and side gutters and sent Petter a letter demanding that it cease and desist from selling wash pad systems that infringe Hydro's patents. *Id.* at ¶¶ 14-15, Exs. 15-16.

Riveer's Response:  Disputed to the extent that Defendants mischaracterize the structure and features of Riveer's wash pads.  Otherwise undisputed.

7.      In response, Petter filed a complaint on October 12, 2007 in the United States District Court for the Western District of Michigan titled Petter Investments, Inc. v. Hydro Engineering, Inc., Case No. 1:07-cv-1033 ("the Michigan case") and alleging that Hydro infringes Petter's '792 patent. *Id.* at ¶ 16, Ex. 17.

Riveer's Response:  Undisputed.

8.      On December 17, 2008, the Western District of Michigan entered summary judgment in Hydro's favor on Petter's infringement claims, finding as a matter of law that the Hydropad does not infringe the '792 patent claims. *Id.* at ¶ 21, Ex. 24.

_Riveer's Response_:  Undisputed.

9.      By October 6, 2009, the Western District of Michigan had entered summary judgment on all issues of liability in Hydro's favor, establishing that Petter was liable for infringing Hydro's patents and that Hydro did not infringe Petter's patent. _Id._ at Ex. 25. To avoid a trial on damages, the parties resolved all remaining issues via settlement. _Id._

_Riveer's Response_:  Undisputed.

10.     On November 6, 2009, the Michigan case was finally resolved with the Western District of Michigan issuing a permanent injunction against Petter pursuant to the parties' settlement agreement. _Id._ at ¶ 23, Ex. 25.

_Riveer's Response_:  Undisputed.

11.     Having prevailed against Petter's patent infringement claims in the Michigan case, Hydro moved forward confidently continuing to market and sell its Hydropad wash pad systems knowing they did not infringe any patent rights then-owned by Petter. _Id._ at ¶ 24.

_Riveer's Response_:  Disputed for lack of information necessary to ascertain Hydro's knowledge regarding infringement.  Additional discovery is required to confirm the accuracy of this statement.  Riveer requires responsive documents and interrogatory responses from Hydro, and deposition testimony from other Hydro employees (including Rule 30(b)(6) testimony for which preparation is required by Hydro) and potentially third parties, in order to determine Hydro's belief concerning its potential infringement of Riveer's '298 patent, now at issue. Concurrently with this Opposition, Riveer is filing a Motion for Relief Pursuant to Rule 56(d) of

the Federal Rules of Civil Procedure wherein Riveer identifies and requests relevant discovery necessary to provide a complete response to Defendants' Motion.

12.    On May 24, 2013—and more than twelve years after the '298 patent was granted—Petter commenced the present action alleging for the first time that the Hydropad wash pad system infringes the '298 patent. Dkt. 1.

Riveer's Response:  Disputed to the extent that the term "Hydropad wash pad system" is vague and ambiguous.  Additional discovery is required to confirm the accuracy of this statement.  Riveer requires responsive documents and interrogatory responses from Hydro, and deposition testimony from other Hydro employees (including Rule 30(b)(6) testimony for which preparation is required by Hydro) and potentially third parties, to confirm whether the design differences between the accused infringing products in the Michigan case and the present case are material *vis-à-vis* the different asserted Riveer patents in the two cases.

Concurrently with this Opposition, Riveer is filing a Motion for Relief Pursuant to Rule 56(d) of the Federal Rules of Civil Procedure wherein Riveer identifies and requests relevant discovery necessary to provide a complete response to Defendants' Motion.

13.    Shortly before filing the Michigan case complaint, Petter's owners, Matt and Doug Petter, formally assigned ownership of both the '792 and '298 patents to Petter. *Id.* at ¶ 16, Exs. 20-21. However, Petter only asserted infringement of the '792 patent in the Michigan case; it did not assert infringement of the '298 patent though it could have. *Id.* at ¶¶ 14-18.

Riveer's Response:  Disputed as to whether Riveer "could have" asserted infringement in the Michigan case.  Additional discovery is required to confirm the accuracy of this statement. Riveer requires responsive documents and interrogatory responses from Hydro, and deposition testimony from other Hydro employees (including Rule 30(b)(6) testimony for which preparation is required by Hydro) and potentially third parties, to confirm whether the design differences between the accused infringing products in the Michigan case and the present case are material *vis-à-vis* the different asserted Riveer patents in the two cases. ████████████████████ █████████████████████████████████████████████████████████████████████████████ Concurrently with this Opposition, Riveer is filing a Motion for Relief Pursuant to Rule 56(d) of the Federal Rules of Civil Procedure wherein Riveer identifies and requests relevant discovery necessary to provide a complete response to Defendants' Motion.

14.     In the Michigan case, Petter relied on its '298 patent to support its invalidity defenses against Hydro's patent infringement claims and also produced several copies of the '298 patent during discovery. *Id.* at ¶¶ 17-18, Exs. 22-23.

Riveer's Response:  Undisputed.

15.     If Petter believed that the Hydropad infringed any claim of its '298 patent, it could have and should have asserted such a claim in the Michigan case along with its infringement allegations based on the parent '792 patent. *Id.* at ¶¶ 15-18.

Riveer's Response:  Disputed to the extent that the term "Hydropad" is vague and ambiguous.  Also disputed as to what Riveer "could have and should have" done in the Michigan case.  Additional discovery is required to confirm the accuracy of this statement.  Riveer requires

responsive documents and interrogatory responses from Hydro, and deposition testimony from other Hydro employees (including Rule 30(b)(6) testimony for which preparation is required by Hydro) and potentially third parties, to confirm whether the design differences between the accused infringing products in the Michigan case and the present case are material *vis-à-vis* the different asserted Riveer patents in the two cases. ██████████████████████

██████████████████████████████████████████████████████████

████████████████████████████████████████ Concurrently with this Opposition, Riveer is filing a Motion for Relief Pursuant to Rule 56(d) of the Federal Rules of Civil Procedure wherein Riveer identifies and requests relevant discovery necessary to provide a complete response to Defendants' Motion.

16.      Since it was first introduced in 2000, the Hydropad has comprised a support frame with an impervious, undulating top washing surface and a side collection trough as depicted above under paragraph 4. *Id.* at ¶¶ 7-11, 25.

Riveer's Response:  Disputed to the extent that the term "Hydropad" is vague and ambiguous.  Additional discovery is required to confirm the accuracy of this statement.  Riveer requires responsive documents and interrogatory responses from Hydro, and deposition testimony from other Hydro employees (including Rule 30(b)(6) testimony for which preparation is required by Hydro) and potentially third parties, to confirm whether the design differences between the accused infringing products in the Michigan case and the present case are material *vis-à-vis* the different asserted Riveer patents in the two cases. █████████████████████

████████████████████████████████████████████████████████████

Concurrently with this Opposition, Riveer is filing a Motion for Relief Pursuant to Rule 56(d) of

the Federal Rules of Civil Procedure wherein Riveer identifies and requests relevant discovery necessary to provide a complete response to Defendants' Motion.

17.     The Hydropad products accused of infringing Petter's '792 patent in the Michigan case are essentially the same as the Hydropad design that has been offered for sale and sold since the Michigan case ended in November 2009. *Id.*

Riveer's Response:  Disputed.  Additional discovery is required to confirm the accuracy of this statement.   Riveer requires responsive documents and interrogatory responses from Hydro, and deposition testimony from other Hydro employees (including Rule 30(b)(6) testimony for which preparation is required by Hydro) and potentially third parties, to confirm whether the design differences between the accused infringing products in the Michigan case and the present case are material vis-à-vis the different asserted Riveer patents in the two cases. Concurrently with this Opposition, Riveer is filing a Motion for Relief Pursuant To Rule 56(d) of the Federal Rules of Civil Procedure wherein Riveer identifies and requests relevant discovery necessary to provide a complete response to Defendants' Motion.

18.     The complete design history of the Hydropad was produced to Petter in the Michigan case. See Declaration of Mark Miller ("Miller Decl.") at Ex. A (filed separately under seal).

Riveer's Response:  Disputed.  Additional discovery is required to confirm the accuracy of this statement.   Riveer requires responsive documents and interrogatory responses from Hydro, and deposition testimony from other Hydro employees (including Rule 30(b)(6)

testimony for which preparation is required by Hydro) and potentially third parties, to confirm whether the design differences between the accused infringing products in the Michigan case and the present case are material *vis-à-vis* the different asserted Riveer patents in the two cases. Concurrently with this Opposition, Riveer is filing a Motion for Relief Pursuant to Rule 56(d) of the Federal Rules of Civil Procedure wherein Riveer identifies and requests relevant discovery necessary to provide a complete response to Defendants' Motion.

19.     Petter's Initial Infringement Contentions relating to the '298 patent in this case could have been made without variation using the Hydropad design drawings produced in the Michigan case, as illustrated in the table below. *Id.* at Exs. A-C.

Riveer's Response:  Disputed.  Additional discovery is required to confirm the accuracy of this statement.   Riveer requires responsive documents and interrogatory responses from Hydro, and deposition testimony from other Hydro employees (including Rule 30(b)(6) testimony for which preparation is required by Hydro) and potentially third parties, to confirm whether the design differences between the accused infringing products in the Michigan case and the present case are material *vis-à-vis* the different asserted Riveer patents in the two cases. Concurrently with this Opposition, Riveer is filing a Motion for Relief Pursuant to Rule 56(d) of the Federal Rules of Civil Procedure wherein Riveer identifies and requests relevant discovery necessary to provide a complete response to Defendants' Motion.

20.     Given the relevance of the documents produced in the Michigan case, the parties stipulated that all documents and testimony from the Michigan case be "deemed produced" in this action. Dkt. 68, p. 3.

Riveer's Response:  Disputed to the extent that Hydro mischaracterizes Riveer's opinion of the "relevance" of the "documents and testimony from the Michigan case."   Otherwise undisputed.

21.     Petter was aware of Hydro's impervious top/side gutter Hydropad product as early as March 2000 when Petter sent a letter to Hydro alleging that the Hydropad infringed the '792 patent. McCormick Decl. at ¶ 13, Exs. 6-14.

Riveer's Response:  Disputed to the extent that Hydro implies that its Hydropad product in 2000 is in all respects the same as the Hydropad product sold after the Michigan case. Undisputed to the extent that Riveer was aware of *a* Hydropad product as early as March of 2000.

22.     The '298 patent was granted shortly thereafter in December 2000. *Id.* at ¶ 17, Ex. 19. Thus, on the day the '298 patent was granted, Petter had notice of its potential infringement claim against Hydro. *Id.*

Riveer's Response:  Disputed to the extent that Hydro implies that its Hydropad product in 2000 is in all respects the same as the Hydropad product sold after the Michigan case.  Riveer requires responsive documents and interrogatory responses from Hydro, and deposition testimony from other Hydro employees (including Rule 30(b)(6) testimony for which preparation is required by Hydro) and potentially third parties, to confirm whether the design differences

between the accused infringing products in the Michigan case and the present case are material *vis-à-vis* the different asserted Riveer patents in the two cases. ██████████████████████

██████████████████████████████████████████████████████████████

Concurrently with this Opposition, Riveer is filing a Motion for Relief Pursuant to Rule 56(d) of the Federal Rules of Civil Procedure wherein Riveer identifies and requests relevant discovery necessary to provide a complete response to Defendants' Motion.

23.    Despite engaging in significant patent litigation with Hydro from 2007 to 2009 over other patent claims, Petter did not assert infringement of the '298 patent against Hydro for over twelve years before initiating this action in May 2013. *Id.* at ¶¶ 17-25.

Riveer's Response:  Disputed.  Riveer requires responsive documents and interrogatory responses from Hydro, and deposition testimony from other Hydro employees (including Rule 30(b)(6) testimony for which preparation is required by Hydro) and potentially third parties, to confirm whether the design differences between the accused infringing products in the Michigan case and the present case are material *vis-à-vis* the different asserted Riveer patents in the two cases. ████████████████████████████████████████

███████████████████████████████████████████████████████ Concurrently with this Opposition, Riveer is filing a Motion for Relief Pursuant to Rule 56(d) of the Federal Rules of Civil Procedure wherein Riveer identifies and requests relevant discovery necessary to provide a complete response to Defendants' Motion.

24.    Because Petter never raised the '298 patent against Hydro for the 12 years it has held that patent, and because Hydro prevailed in proving the Hydropad does not infringe Petter's

29

'792 patent, Hydro has moved forward in promoting and selling the Hydropad as currently configured without consideration of any of Petter's patent rights existing at the time of the Michigan case and before. *Id.* ¶¶ 24-26.

Riveer's Response:  Undisputed as to Hydro's moving forward without consideration of any of Riveer's patent rights existing at the time of the Michigan case and before.  Otherwise disputed to the extent that the term "Hydropad as currently configured" is vague and ambiguous. Additional discovery is required to confirm the accuracy of this statement.  Riveer requires responsive documents and interrogatory responses from Hydro, and deposition testimony from other Hydro employees (including Rule 30(b)(6) testimony for which preparation is required by Hydro) and potentially third parties, to confirm whether the design differences between the accused infringing products in the Michigan case and the present case are material *vis-à-vis* the different asserted Riveer patents in the two cases ███████████████████████████████ █████████████████████████████████████████████████████████████ ███████████████████████████████████████████████ Concurrently  with  this Opposition, Riveer is filing a Motion for Relief Pursuant to Rule 56(d) of the Federal Rules of Civil Procedure wherein Riveer identifies and requests relevant discovery necessary to provide a complete response to Defendants' Motion.

25.     Over the last fourteen years, Hydro has developed significant goodwill and brand recognition in the Hydropad design that would be materially harmed if it had to alter the design based on Petter's belatedly asserted patent rights. *Id.*

Riveer's Response:  Disputed to the extent that the term "Hydropad design" is vague and ambiguous.  Additional discovery is required to confirm the accuracy of this statement.  Riveer

requires responsive documents and interrogatory responses from Hydro, and deposition testimony from other Hydro employees (including Rule 30(b)(6) testimony for which preparation is required by Hydro) and potentially third parties, to confirm whether the design differences between the accused infringing products in the Michigan case and the present case are material *vis-à-vis* the different asserted Riveer patents in the two cases. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

Concurrently with this Opposition, Riveer is filing a Motion for Relief Pursuant to Rule 56(d) of the Federal Rules of Civil Procedure wherein Riveer identifies and requests relevant discovery necessary to provide a complete response to Defendants' Motion.

## IV.    ARGUMENT

Summary judgment is only proper where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "At summary judgment, of course, . . . the facts in the record are viewed in the light most favorable to . . . the non-movant." *Yellowbear v. Lampert*, 741 F.3d 48, 56-57 (10th Cir. 2014). Moreover, the court is "obliged to give a party opposing summary judgment an adequate opportunity to obtain discovery." *Dowling v. City of Philadelphia*, 855 F.2d 136, 139 (3d Cir. 1988) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). In particular, on a motion (like this one) which essentially attacks the pleadings under Rule 12(c) before a realistic opportunity for necessary discovery, Rule 12(d) requires that in the summary judgment context, "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." *See id.* ("Result of Presenting Matters Outside the Pleadings"); *see also Cisco Sys. v. United States*, 804 F. Supp. 2d 1326, 1337 n.18 (Ct. Int'l Trade 2011) (citing *Easter v. United States*, 575 F.3d 1332, 1336 (Fed. Cir. 2009)) ("[W]hether a party has had a 'reasonable

opportunity' to present pertinent summary judgment materials . . . depends on whether the party has had notice and time to respond.").

### A.  Riveer's First Claim For Relief Is Not Barred By Res Judicata Or Collateral Estoppel

> **1.     *Hydro's suggestion that a procedural bar should lie against Riveer under a "could have been raised" theory is legally incorrect.***

Defendants rely on case law holding that "a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action."  (Motion at 13.)  In light of this precedent, Defendants assert that because the '298 patent existed at the time of the Michigan case, it *could have been raised* in the Michigan case.  Because it wasn't asserted in that case, Defendants argue that Riveer is barred from asserting it now.  Defendants are wrong.

The "could have been raised" theory in patent cases does not apply to a subsequent suit ***on a different patent*** because "[e]ach patent asserted raises an independent and distinct cause of action."  *Kearns*, 94 F.3d at 1555-56; *Foster*, 947 F.2d at 476 (Fed. Cir. 1991) (defining "cause of action" in a patent context as "a suit on the same device alleged to infringe the same patent."); *Trading Tech. Int'l, Inc.*, No. 10 C 715, 2011 WL 3157304 at *4 ("In other words, where the patents involved in the two suits are different, *Kearns* takes the view that each patent creates a unique set of 'transactional facts' for purposes of claim preclusion. By implication, the Federal Circuit rejects the view that a plaintiff must include in a single suit, at the risk of claim preclusion, every patent allegedly infringed on by the product at issue."); *SciMed Life Sys. v. Advanced Cardiovascular Sys., Inc.*, No 99 C 112, 1999 WL 33244568 at *1 ("*Kearns* is thus dispositive of defendants' suggestion that a procedural bar should lie against this suit under a 'should have been brought' theory, because each patent constitutes its own independent cause of

action."); *PPC Broadband, Inc. v. Corning Gilbert Inc.*, 5:13-CV-538 GLS/DEP, 2013 WL 6145799 (N.D.N.Y. Nov. 21, 2013).

In addition to its legal holding, the facts of the *Kearns* case also confirm that a patent owner is not required to assert all possible patents against an alleged infringer in order to avoid losing the right to assert them later. In *Kearns*, only four patents were issued to the patent owner after he filed the first case in January of 1985. All other patents that he owned issued prior to the filing of the first case. In the second case, the patent owner was allowed to proceed on sixteen patents that had not been asserted in the first case. Therefore, ***at least twelve*** of the sixteen patents that were allowed to remain in the second case had issued ***prior to*** the filing of the first case. Defendants' "could have been raised" theory, if legally sound, would have barred the assertion of all patents that existed at the time of the first suit.

### 2. *Res judicata and collateral estoppel do not apply when different patents are asserted in a second case.*

Claim preclusion requires, *inter alia*, identity of the cause of action in both suits. *Pelt*, 539 F.3d at 1281. Issue preclusion requires, *inter alia*, that the issue decided in the prior adjudication was identical to the one presented in the instant action. *Commonwealth Property Advocates, LLC*, 680 F.3d at n. 11. In order to satisfy these requirements, the same patents must be involved in both suits (*Kearns*, 94 F.3d 1553) ***and*** the accused devices in both suits must be essentially the same (*Acumed LLC v. Stryker Corp.*, 525 F.3d 1319 (Fed. Cir. 2008)).

In the prior Michigan case, Riveer asserted the '792 patent against Hydro. Riveer ***did not*** assert against Hydro in the Michigan case, or in any case prior to the present case, the '298 patent. This is the first case in which Riveer has asserted the '298 patent against either of the Defendants in this case. Because the '298 patent has not been asserted against Defendants previously, there is no identity of the cause of action between the present case and the Michigan

case. Thus, as a matter of law, there can be no claim preclusion. *Kearns*, 94 F.3d 1553. Similarly, the issue decided in the Michigan case was not identical to the issue presented in the present case. Thus, as a matter of law, there can be no issue preclusion.

   **3.   *There exist genuine issues of material fact concerning whether the elements of res judicata and collateral estoppel are met.***

   Even if the doctrines of claim preclusion or issue preclusion did require a patent owner to assert all possible claims in a first case, Defendants' Motion should still be denied because there exist genuine issues of material fact regarding whether the Hydropad product that was accused in the Michigan case is "essentially the same" as the Hydropad product that is accused in the present case. Hydro itself acknowledges that the Hydropad product accused in this case is not exactly the same as the product accused in the Michigan case. (*See* Motion at 9 ("The Hydropad® products accused of infringing Riveer's '792 patent in the Michigan case are essentially the same as the Hydropad® design that has been offered for sale and sold since the Michigan case ended in November 2009.").)



These post-Michigan case changes to the Hydropad product alone are sufficient to deny Hydro's Motion.

   To the extent that these changes are not sufficient to establish a material fact concerning whether the Hydropad product accused in the present case is "essentially the same" as the Hydropad product accused in the Michigan case, Riveer should be granted the discovery

necessary to learn of all changes that have been made to the Hydropad product since the Michigan case.  Due to Defendants' haste in filing the instant Motion only a few months after discovery opened, discovery on these issues is incomplete.   As addressed in Riveer's contemporaneously filed Motion for Fed. R. Civ. P. 56(d) relief, Defendants' Motion should be denied to allow the parties time to conduct discovery as to these and other materials facts.  However, regardless of Riveer's pending Motion for Fed. R. Civ. P. 56(d) Relief, when the record is construed in the light most favorable to Riveer, Defendants' Motion must be denied since Defendants have not shown they are entitled to relief, as a matter of law, and disputed material facts remain.

> **B.     Riveer's First Claim For Relief Is Not Barred By The *Kessler* Doctrine**

Defendants again rely on the "should have been raised" theory to support their *Kessler* doctrine assertion.  Because all patents raise an independent and distinct cause of action (as provided in Section IV(A)(1)), above), Defendants' "should have been raised" theory does not apply.

In addition, neither the Supreme Court nor the Federal Circuit have ever applied the *Kessler* doctrine to a case where a patent owner asserts *a different patent* in a second suit against a defendant from a first suit.  To the contrary, the Federal Circuit in *Brain Life* makes clear that the *Kessler* doctrine only grants products noninfringing status for patents that were *actually asserted* in a case.  For example, in *Brain Life* the Federal Circuit states:

- "The principle that, when an alleged infringer prevails in demonstrating noninfringement, the specific accused device(s) acquires the ***"status" of a noninfringing device vis-à-vis the asserted patent claims*** is an essential fact of a

patent infringement claim." (746 F.3d at 1057 (internal quotations omitted, emphasis added).)

- "Consequently, some of the accused devices in this suit have acquired a ***noninfringing status vis-à-vis the '684 patent*** by virtue of the first case[.]" (*Id.* at 1058 (emphasis added).)

- "[T]he accused devices acquired a status as noninfringing devices, and *Brain Life* is barred from asserting that they infringe ***the same patent claims*** a second time. (*Id.* (emphasis added).)

- "Elekta's GammaKnife, GammaPlan, and SurgiPlan products have acquired the status of noninfringing products ***as to the '684 patent***[.]" (*Id.* at 1058-59 (emphasis added).)

Even if the *Kessler* doctrine did apply to a situation where a patent owner sues a defendant for infringement of a patent that has not previously been asserted against the defendant, Hydro's Motion should still be denied because there exist genuine issues of material fact regarding whether the Hydropad product that was accused in the Michigan case is "essentially the same" as the Hydropad product that is accused in the present case. Hydro itself acknowledges that the Hydropad product accused in this case is not the same as the product accused in the Michigan case. (*See* Motion at 9 ("The Hydropad® products accused of infringing Petter's '792 patent in the Michigan case are essentially the same as the Hydropad® design that has been offered for sale and sold since the Michigan case ended in November 2009.").)

36

These post-Michigan case changes to the Hydropad product alone are sufficient to deny Hydro's Motion.

To the extent that these changes are not sufficient to establish a material fact concerning whether the Hydropad product accused in the present case is "essentially the same" as the Hydropad product accused in the Michigan case, Riveer should be granted the discovery necessary to learn of all changes that have been made to the Hydropad product since the Michigan case.  Due to Defendants' haste in filing the instant Motion only a few months after discovery opened, discovery on these issues is incomplete.   As addressed in Riveer's contemporaneously filed Motion for Fed. R. Civ. P. 56(d) relief, Defendants' Motion should be denied to allow the parties time to conduct discovery as to these and other materials facts. However, regardless of Riveer's pending Motion for Fed. R. Civ. P. 56(d) Relief, when the record is construed in the light most favorable to Riveer, Defendants' Motion must be denied since Defendants have not shown that they are entitled to relief, as a matter of law, and disputed material facts remain.

### C.      Riveer's First Claim For Relief Is Not Barred By Laches

Defendants' request that Riveer's first claim for relief be dismissed based on laches should be denied for two separate reasons.  First, laches is a defense that operates to limit damages; not dismiss claims.  Thus, the relief that Defendants request under the laches doctrine (*i.e.* dismissal of Riveer's first claim for relief) is unavailable.  Second, even if the relief that Defendants request under the laches doctrine was available, Defendants' Motion should still be

denied because Defendants have not met their burden of showing an absence of any genuine issues of material fact that Riveer's delay in filing this suit was unreasonable and inexcusable or that any prejudice has arisen from this delay.  Facts concerning these issues exist.

> ## 1.      *The remedy that Defendants seek is unavailable under the laches doctrine.*

The equitable defense of laches, when established by an accused infringer, bars recovery of damages for any infringement occurring before a patent owner's lawsuit was filed.  *See, e.g.*, *Meyers v. Brooks Shoe, Inc.*, 912 F.2d 1459, 1461 (Fed. Cir. 1990); *Adelberg Labs., Inc. v. Miles, Inc.*, 921 F.2d 1267, 1270 (Fed. Cir. 1990).  Consistent with this case law, the Supreme Court recently held that "[l]aches cannot be invoked to preclude adjudication of a claim for damages[.]"  *Petrella v. Metro-Goldwyn-Mayer, Inc.*, 134 S. Ct. 1962, 1973 (2014).  The Supreme Court also noted that "the Federal Circuit has held that laches can bar damages incurred prior to the commencement of suit, but not injunctive relief." (*Id.* at n. 15.)  Simply put, the doctrine of laches does not bar recovery of damages accruing after its lawsuit is filed (an may not apply to damages accrued during the six year period prior to the date a patent suit is filed based on the holding in *Petrella*), it does not bar injunctive relief, and it definitely does not justify a complete dismissal of a patent owner's claim for relief.

Contrary to this well-established precedent on laches, Defendants assert that "[l]aches presents an additional and independent ground *for dismissal* of Petter's First Claim for Relief." (Motion at 17 (emphasis added).)  Defendants' request, if granted, would bar all damages stemming from Riveer's first claim for relief.  Such a holding would violate Supreme Court and Federal Circuit precedent.

Defendants cite to the Tenth Circuit's *Jacobsen v. Deseret Book Co.* case to support its assertion that laches can operate to bar a claim for relief.  287 F.3d 936 (10th Cir. 2002).  This

case, however, does not support Defendants' assertion. The Tenth Circuit in *Jacobsen* **reversed**
a district court's summary judgment ruling that laches barred the plaintiff's claims. (*Id.* at 949-
51.) Defendants' request that Riveer's first claim for relief be dismissed based on laches should
be denied. The relief that Defendants seek is simply not available under the equitable defense of
laches.

> **2.      *Defendants have failed to establish the elements necessary to prove laches.***

Even if the relief that Defendants seek was available, their motion should be denied
because numerous factual issues exist. In reversing the district court's ruling of laches, the Tenth
Circuit in *Jacobsen* stated: "We disagree with the district court's conclusion that summary
judgment was appropriate on the issue of laches. Although a district court can make factual
findings related to laches after a bench trial, the court should not make factual findings when
addressing a summary judgment motion based on laches." (*Id.* at 949.)

"[T]o invoke the laches defense, a defendant has the burden to prove two factors: 1. the
plaintiff delayed filing suit for an unreasonable and inexcusable length of time from the time the
plaintiff knew or reasonably should have known of its claim against the defendant, and 2. the
delay operated to the prejudice or injury of the defendant." *A. C. Aukerman Co. v. R. L. Chaides
Construction Co.*, 960 F.2d 1020, 1032 (Fed. Cir. 1992). There are material issues of fact
surrounding each of these issues.

> a.      *Riveer's delay in filing this suit was neither unreasonable nor inexcusable.*

Defendants assert that "it is undisputed that Petter had notice of Hydro's Hydropad®
systems at the time the '298 patent was granted in December 2000." (Motion at 18.)
Defendants' assertion about when Riveer had notice of the Hydropad system, however, is
irrelevant to the issue of laches. The relevant time for laches begins when the plaintiff knew or

reasonably should have known *of its claim against the defendant*.  Defendants fail to make any allegation regarding when Riveer knew or reasonably should have known of its claim against Hydro.  Rather, Defendants focus on when Riveer became aware of the accused product.  In some cases, the date that a party learns of a product is also the date that it knows or reasonably should know of its claim against that product.  In this case, however, Riveer did not know and could not have reasonably known of Hydro's infringement of the '298 patent until much after it first became aware of the Hydropad product.

During the Michigan case, the court greatly expanded its view of the breadth of the "impervious top" limitation of Hydro's patents, which caused Riveer to revisit the appropriate breadth of the claims of its '298 patent.  (*See* Petter Decl. at ¶ 7.)  Specifically, in a July 2011 ruling the Michigan court stated, "Consistent with the discussion in the Court's September 8, 2009 Opinion, the impervious top is the area on which the vehicle rests—the surface—and not the area below the surface."  (*See* Lobbin Decl., Ex. H at 12.)  In a subsequent November 16, 2011, Claim Construction Memorandum, however, the court changed its prior reasoning and determined anew that the term "impervious top" is more broadly defined as "the impervious structure resting on the support base that can consist of a combination of elements with upper and lower portions."  (*See* Lobbin Decl., Ex. I at 8.)

Based on reasoning consistent with the court's revised and much broader interpretation of the term "impervious top" in the Michigan case, Riveer concluded that Hydropad system must infringe the '298 patent, under a consistently broad interpretation of the claims of the '298 patent.  Specifically, as compared to the grate/basin modular wash rack design covered by the claims of the '298 patent, Hydro simply collapsed its grate and basin together and called it an "impervious structure . . . with upper and lower portions" as the Michigan court agreed.

Thus, the earliest that Riveer could have reasonably been aware of its '298 patent claim against Hydro was November of 2011.  Riveer filed the present action in May of 2013.  Thus, the relevant "delay" period for the laches inquiry is 1½ years – from November of 2011 and May of 2013.  The presumption of laches therefore does not apply in this case and Defendants have not established (or even argued) that 1½ years of "delay" is unreasonable.

Even if a presumption of laches did apply in this case (which it doesn't), Defendants have still failed to meet their summary judgment burden because there are a myriad of unresolved factual issues concerning whether Riveer's delay in filing suit is excusable.  "A patentee can rebut the presumption of laches 'by offering evidence to show an excuse for the delay or that the delay was reasonable' or by offering evidence 'sufficient to place the matters of [evidentiary] prejudice and economic prejudice genuinely in issue.'"  *Serdarevic v. Advanced Med. Optics, Inc.*, 532 F.3d 1352, 1359-60 (Fed. Cir. 2008).

For example, courts have held that a plaintiff's involvement in other litigations may provide an excuse for a laches presumption.  *See, e.g., Vaupel Textilmaschinen KG v. Meccanica Euro Italia S.P.A.*, 944 F.2d 870 (Fed. Cir. 1991); *Studiengesellschaft Kohle v. Eastman Kodak Co.*, 616 F.2d 1315, 1330 (5th Cir. 1980); *Moore v. Schultz*, 491 F.2d 294, 300-01 (10th Cir. 1974); *Maxon Premix Burner Co. v. Eclipse Fuel Eng'g Co.*, 471 F.2d 308 (7th Cir. 1972); *RCA Corp. v. Data General Corp.*, 701 F. Supp. 456, 476 (D. Del. 1988).

In the present case, the parties have been embroiled in several litigation matters with each other since 2007.  Indeed, even Defendants acknowledge that it and Riveer have "engag[ed] in significant patent litigation . . . from 2007 to 2009 over other patent claims[.]"  (Motion at 12.)  In 2007, Riveer was still a young, small company with no experience with patent litigation.  (*See* Petter Decl. at ¶ 4.)  Ultimately, four of Hydro's patents were litigated in the Michigan

proceedings, which did not conclude until 2013.  (*See id.* at ¶ 6.)  Until the Michigan proceedings concluded, Riveer did not have the financial resources, means, or ability to fight another patent lawsuit against Hydro, especially because Hydro also filed another lawsuit against Riveer in Utah in 2011, which is still pending.  (*See id.* at ¶ 6.)

Viewing these facts in the light most favorable to Riveer, factual issues exist concerning whether any delay in Riveer's filing of this suit is excused due to its involvement in other litigations.

> b.   *The prejudice that Defendants identify is insufficient to establish laches.*

"Material prejudice to adverse parties resulting from the plaintiff's delay is essential to the laches defense. Such prejudice may be either economic or evidentiary." *A. C. Aukerman Co. v. R. L. Chaides Construction Co.*, 960 F.2d 1020, 1033 (Fed. Cir. 1992) (in banc).  "Evidentiary, or 'defense' prejudice, may arise by reason of a defendant's inability to present a full and fair defense on the merits due to the loss of records, the death of a witness, or the unreliability of memories of long past events, thereby undermining the court's ability to judge the facts."  (*Id.*) "Economic prejudice may arise where a defendant and possibly others will suffer the loss of monetary investments or incur damages which likely would have been prevented by earlier suit. . . . Such damages or monetary losses are not merely those attributable to a finding of liability for infringement. . . . The courts must look for a change in the economic position of the alleged infringer during the period of delay."  (*Id.*)

In their Motion, Defendants do not argue any evidentiary prejudice that has resulted from the alleged delay in filing suit.  Rather, Defendants prejudice argument is based on Hydro's investment of "significant amount of fees and costs in successfully defending against Petter's infringement claims in the Michigan case."  (Motion at 18.)  The fees and costs that Hydro

invested in the Michigan case, however, would not have been avoided had Riveer asserted the '298 patent in that case. Indeed, had the '298 patent been asserted in the Michigan case, Hydro would have incurred additional fees and costs defending against that claim. The fact that Riveer did not assert the '298 patent in the Michigan case, and instead asserted it in a Utah action will likely result in a smaller investment for Hydro since Hydro is headquartered in Utah.

Hydro also argues that it "has spent fourteen years marketing and building goodwill in its Hydropad® product with the understanding that it does not infringe Petter's wash pad patents." (Motion at 18.) This, however, is insufficient to establish economic prejudice for laches. "To succeed under the standards of *Aukerman*, however, [the accused infringer] must establish that the delay in filing suit led it to change its position to its detriment. It is not enough that the alleged infringer changed his position—i.e., invested in production of the allegedly infringing device. The change must be because of and as a result of the delay, not simply a business decision to capitalize on a market opportunity." *In re Mahurkar Patent Litig.*, 831 F. Supp. 1354, 1379-80 (N.D. Ill. 1993), aff'd, 71 F.3d 1573 (Fed. Cir. 1995) (internal citations omitted); *accord Globe-Union, Inc. v. Tiegel Mfg. Co.*, 228 USPQ 58, 60 (N.D. Calif. 1985) ("Continued operation of an infringing business, standing alone, does not constitute prejudice.").

Hydro's purported investment in marketing and building goodwill in its product is based on its decision to capitalize on a market opportunity, not because of any delay in filing this suit. Even if a defendant's efforts in marketing and building goodwill in a product *could* constitute a basis for prejudice, granting Defendants Motion would still be improper because Riveer has not had the opportunity to conduct discovery to determine the extent of Hydro's efforts to market and build the goodwill associated with the Hydropad product.

Hydro made a similar argument regarding prejudice in its summary judgment motion on equitable estoppel in the Michigan case. The Michigan court noted that "Hydro contends it invested substantial capital to expand its operations, significantly increasing sales and profits from its Hydropad products." (*See* Lobbin Decl., Ex. G at 17:13-23:5.) In denying its motion for summary judgment, the court held that "Hydro has not provided sufficient evidence that it relied on its belief that Petter had abandoned any claim against it." (*Id.*) As with the Michigan case, Hydro's purported investment in marketing and building goodwill in this case should not be found to be based on any action or inaction by Riveer.

To the extent that a genuine issue of material fact concerning Hydro's alleged "prejudice" has not been established based on the foregoing, then Riveer should be allowed to conduct discovery on these issues and determine whether Hydro's efforts in marketing and building goodwill in the Hydropad product are sufficient to establish the required prejudice. Due to Defendants' haste in filing the instant Motion only a few months after discovery opened, discovery on these issues is incomplete. As addressed in Riveer's contemporaneously filed Motion for Fed. R. Civ. P. 56(d) relief, Defendants' Motion should be denied to allow the parties time to conduct discovery as to these and other materials facts. However, regardless of Riveer's pending Motion for Fed. R. Civ. P. 56(d) Relief, when the record is construed in the light most favorable to Riveer, Defendants' Motion must be denied since Defendants have not shown entitlement to relief, as a matter of law, and disputed material facts remain.

## V.     CONCLUSION

For each of the foregoing reasons, Plaintiff Riveer respectfully requests that this Court deny Defendants' Motion.

Dated:  July 7, 2014                    Respectfully submitted,

                                        **Maschoff Brennan**

                                        /s/ *Mark W. Ford*
                                            Mark W. Ford

<u>DECLARATION</u>

I hereby certify that the sealed exhibits, memoranda, and/or other documents filed under seal are entitled to protection under the law and that the sealed filing(s) have been narrowly tailored to protect only the specific information truly deserving protection.


Dated:  July 7, 2014                              Respectfully submitted,

                                                  **Maschoff Brennan**

                                                  /s/ *Mark W. Ford*
                                                  Mark W. Ford

## CERTIFICATE OF SERVICE

I hereby certify that I served the foregoing document—**PLAINTIFF RIVEER'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ON PLAINTIFF'S FIRST CLAIM FOR RELIEF**—pursuant to Fed. R. Civ. P. 5(b)(2)(E) on the parties as follows:

Brett L. Foster, 6089
bfoster@hollandhart.com
Mark A. Miller, 9563
mmiller@hollandhart.com
Christopher B. Hadley, 14055
cbhadley@hollandhart.com
**Holland & Hart LLP**
222 S. Main Street, Suite 2200
Salt Lake City, Utah 84101

Dated:  July 7, 2014

/s/ Jessica D. Garcia, ACP

47