Stephen M. Lobbin (admitted *pro hac vice*)
**The Eclipse Group LLP**
2020 Main Street, Suite 600
Irvine, California  92614
Tel:  949.851.5000

Mark W. Ford (10659)
Rachel Jacques (13250)
**Maschoff Brennan**
1389 Center Drive, Suite 300
Park City, Utah  84098
Tel:  435.575.1387

*Attorneys for Plaintiff Petter Investments, Inc. d/b/a RIVEER*

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF UTAH**

| | |
|---|---|
| **PETTER INVESTMENTS, INC.** d/b/a **RIVEER**, a Michigan corporation,<br><br>Plaintiff,<br><br>vs.<br><br>**HYDRO ENGINEERING, INC.**, a Utah corporation, and **CALIFORNIA CLEANING SYSTEMS**, a California company,<br><br>Defendants. | **PLAINTIFF RIVEER'S REPLY IN SUPPORT OF ITS MOTION FOR FED. R. CIV. P. 56(d) RELIEF**<br><br>Civil Case No. 2:14-CV-00045<br><br>Judge Dee Benson |
| AND RELATED COUNTERCLAIMS | |

The opposition presented by Defendant Hydro—principally, the contention that "there has been adequate time for discovery"—reflects a fundamental misunderstanding of the Federal Rules of Civil Procedure, and additionally is meritless for several other reasons.

First, Hydro seemingly is ignorant of Rule 26(d)(1), which specifies explicitly the "Timing" prerequisite of the discovery process in federal court, *i.e.*, "A party may not seek discovery from any source before the parties have conferred as required by Rule 26(f) . . . ." Rule 26(f)(1), in turn, specifies that a Rule 26(f) "Conference of the Parties" does not take place until just before "a scheduling conference is to be held." Here, although this action indeed was filed originally in May 2013 in the Southern District of California, Judge Benitez in San Diego never set a scheduling conference because the pleadings never closed. Instead, the defendants filed a series of Rule 12 motions, which remained pending until the case was transferred to this Court on January 17, 2014. *See* Dkt. Nos. 12, 39, 40, and 51-52.[1] After the transfer and a round of amended pleadings, in April 2014 this Court scheduled an Initial Pretrial Conference for May 14, 2014. *See* Dkt. No. 69. Rather than seeking to delay anything, Plaintiff Riveer actually (a) had filed already the parties' Rule 26(f) Report on April 3, 2014, (b) promptly took a preliminary deposition on April 28, 2014,[2] and (c) on May 16, 2014, Riveer served a comprehensive set of

---

[1] Hydro's misunderstanding of the Federal Rules is apparent from its argument that "[a]t no time did [Riveer] seek any discovery during the eight month pendency of th[is] suit in California." Opp'n at 3. Of course, during that entire period, the mandate of Rule 26(d)(1) required that Riveer "may not seek discovery from any source."

[2] Hydro suggests that this deposition of Alan McCormick was of "the person most knowledgeable concerning these issues" relevant to Riveer's Motion. Opp'n at 10. Neither McCormick's actual testimony nor the documents produced by Hydro so far supports this contention entirely, but even if so, this was not a Rule 30(b)(6) deposition for which McCormick had to prepare or answer any questions on behalf of (and binding on) Hydro the corporation, which explains his many inexact, incomplete, and obviously unprepared responses.

document production requests on Hydro.  *See* Dkt. No. 68 (noting the parties' Rule 26(f) conference on April 1, 2014).  Just a few weeks later—and ***before*** Riveer received any of the requested document production—Hydro filed the premature summary judgment motion at issue.  *See* Dkt. Nos. 82-85.[3]  Riveer already has explained in detail (in its Motion and Opposition to Hydro's summary judgment request) the merits and substance of the discovery it needs to fully oppose summary judgment under Rule 56(d), but ***purely as a matter of procedural fairness***, the Federal Rules surely do not contemplate summary adjudication being proper on a motion filed just a few weeks after discovery opens, particularly in a complex intellectual property action having three patents-in-suit as well as several different Lanham Act claims.[4]

---

[3] Hydro notes that it finally produced *some* documents on June 25, 2014, which was only a few weeks before Riveer's summary judgment oppositions were due.  All the while, Riveer also was responding to Hydro's two other premature motions for summary adjudication.  Even if Hydro had made a full and complete document production—which not even Hydro contends it was—Riveer never had a reasonable opportunity to marshal this new evidence (including taking necessary depositions) into the fabric of its opposition to the motion for summary adjudication.

[4] Hydro cites to its Exhibit 3 for a contention that Riveer "agree[d] to [Hydro's] terms" of granting Riveer's counsel the professional courtesy of an extension of time under a condition that Riveer not file a Rule 56(d) motion.  Not only did Riveer's counsel never agree to any such condition, but Hydro's mischaracterization would not be a fair reading of the e-mail exchange between counsel.  As noted in a May 27th e-mail, Riveer's counsel sought a simple extension, as a professional courtesy, because he was then "in the middle of pre-trial on another patent case."  In a follow up June 11th e-mail, Riveer's counsel proposed particular dates for the extension, and stated that Riveer "would agree to whatever extensions you might need for your replies."  Riveer's counsel ***did not address*** Hydro's improper attempt to block Rule 56(d) motions, which Hydro's counsel never again proposed.  Instead, Hydro's counsel responded on June 12th with a counter-proposal, stating only, "We agree to the extensions if you agree to our reply deadline being August 8th," and "we would like your cooperation in seeking oral argument on the motions in October."  Riveer responded by proposing a new extension—to July 14th—in exchange for Riveer's agreement on Hydro's two terms (which did not include any proposal about Rule 56(d) motions).  Hydro responded again with a counter-proposal of a July 7th due date for Riveer's opposition papers, and only then did counsel reach agreement, on only three terms: (1) Riveer's opposition would be due July 7th, (2) Hydro's replies would be due August 8th, and (3) Riveer would not oppose Hydro's efforts to schedule a hearing on the motions.  Moreover, the parties'

Second, even Hydro's opposition brief alone demonstrates Riveer's legitimate need for specific discovery on its misrepresentation claims. For example, as to the VCI bid, Hydro claims, "The Marines [] confirmed that Hydro's quote met the minimum specifications . . . [and] Hydro delivered the equipment and the Marines accepted it as quoted." Opp'n at 2. To support its opposite contention, obviously Riveer needs documents and testimony from those third parties who supposedly evaluated the details of Hydro's quote—and evaluated the actual system delivered—as compared to the bid specification. That is, did these individuals perform an actual, substantive, competent technical evaluation, or did they simply rely on Hydro's self-serving "confirmation" as sufficient basis to "rubber stamp" Hydro's bid as compliant? Moreover, would an objective evaluation of the actual system Hydro delivered support or—as Riveer contends—contradict Hydro's contention that its bid met the specification? Concerning the Army bid, Hydro contends that "the Army did not agree with Hydro . . . that their equipment met the minimum specifications [but] Hydro submitted a revised bid, which the Army found to be technically acceptable." *Id.* To counter Hydro's contention that its bid was "technically acceptable," Riveer again needs to obtain documents and testimony from those who supposedly

---

final and only signed, written agreement—after all the back-and-forth—is reflected in this Court's Order Granting Motion to Extend Summary Judgment Briefing Schedule, the form of which Hydro approved without any mention about requests for discovery under Rule 56(d), stating, "This looks great." *See* Dkt. No. 81. Finally, in this District as in our profession generally, it is improper to use "a scheduling change for tactical or unfair purpose." *See Utah Standards of Professionalism and Civility* ¶ 15; *see also Civility and Professionalism Guidelines* (C.D. Cal.), Section 2 ("Scheduling") ("We will not attach to extensions unfair and extraneous conditions . . . [and] will not, by granting extensions, seek to preclude an opponent's substantive rights . . . .").

evaluated the details of Hydro's quote as compared to the specification.[5] While Hydro might wish that our federal courts followed the rules of discovery governing litigation in many other countries (*i.e.*, no discovery), that is not our civil justice system here in the United States under the Federal Rules of Civil Procedure.

Third, Hydro's arguments against several of Riveer's very specific items of requested discovery further demonstrates Hydro's general recalcitrance toward a normal litigation discovery process.[6] Concerning an inspection of the systems Hydro has delivered to customers following the bids at issue, Hydro claims that "inspection of the installed product is irrelevant . . . [and] will only confirm that Hydro supplied to the Marines exactly what Hydro bid." Opp'n at 12 (adding, "There were no misrepresentations."). This is non-sensical, because the system could have been misrepresented whether or not it was "exactly what Hydro bid."[7] Concerning Riveer's need for document production from third parties about the bidding activities and Hydro's supplied systems, Hydro proposes that any "additional documents that are not in the possession, custody or control of Hydro . . . would either be duplicative or entirely irrelevant . . .

---

[5] Hydro claims, "In both cases, the Marines and the Army performed detailed reviews of Hydro's quoted systems." Opp'n at 5. Riveer agrees that the substance of these alleged "detailed reviews" is key evidence, which is why Riveer needs documents and testimony *from the personnel who actually performed these reviews and received Hydro's misrepresented product*, not just whatever limited discovery Hydro chooses to produce.

[6] Hydro even goes so far as to suggest that "no additional discovery is possible," a statement which makes no sense whatsoever. Opp'n at 11.

[7] That is, either the system is "exactly what Hydro bid," but what Hydro bid was not a system in compliance with the specification, or the actual system delivered was sub-standard even to the relaxed standard Hydro believed unilaterally it was entitled to use. Until the discovery occurs and the system is inspected, however, the import of this evidence is unknown. This is the purpose of discovery.

." Opp'n at 13.[8]  Again this is nonsense, because if a document is not in Hydro's possession, then it cannot be "duplicative" of a non-existent document.  As to relevance, clearly a third-party document could support Riveer's allegation that Hydro bid and delivered a sub-standard system in response to a very particular bid specification.  Lastly, Hydro's argument that Riveer need only one individual deposition of Alan McCormick—and no Rule 30(b)(6) deposition or depositions of Hydro's other key employees—again misunderstands a normal litigation process.  Under no reasonable litigation scenario is an opposing party cut off from further discovery after hearing just one version of events from only one witness who is not even testifying under the obligations and requirements of Rule 30(b)(6).[9]

Fourth, Hydro's argument that Rule 9(b) limits Riveer's entitlement to a reasonable scope of discovery on its Lanham Act allegations is misplaced and incorrect.  Hydro waived any challenge to Riveer's pleading on those grounds, which may not even apply to false advertising claims.  *See, e.g., John P. Villano, Inc. v. CBS, Inc.*, 176 F.R.D. 130, 131 (S.D.N.Y. 1997) ("[A] claim of false advertising under [the Lanham Act] falls outside the ambit of Rule 9(b) and may not be subject of any heightened pleading requirement.").  Moreover, Rule 9(b) has no effect on

---

[8] Later, Hydro contradicts itself by asserting that no other documents could possibly exist: "[A]ll related communications about the bids have all been produced." Opp'n at 14.  Hydro appears not to know whether the third-party customers have additional relevant documents—as normally should be the case.  This, again, is the purpose of discovery.

[9] Hydro also argues that Riveer's "complaints about [the responses to] its interrogatories are unfounded." Opp'n at 14.  However, besides the substantive defects of Hydro's responses to Riveer's interrogatories, the main problem is that Riveer had no opportunity to utilize the responses in its opposition to Hydro's motion for summary adjudication.  This timing issue is a legitimate complaint from a party under a deadline to oppose a summary adjudication motion.

the rules of discovery; that is, once a claim is pled sufficiently under Rule 9(b), discovery on that claim has no extra constraints. As one court explained in an analogous scenario:

> Defendants' primary objection is that the SEC's allegations do not contain any specific allegations concerning their activities with entities other than the four mentioned in the Complaint—a scenario which, according to Defendants, triggers Rule 9(b) concerns. ***However, Rule 9(b)'s directive to plead fraud with particularity is a pleading rule, not a limitation on discovery and not the standard for the scope of discovery***. *Fein v. Numex Corp.*, 92 F.R.D. 94, 97 (S.D.N.Y.1981) (rejecting the position urged by Defendants here and noting that "the flaw in this argument is that Rule 9(b) tests only the sufficiency of the pleadings and not the perimeters [sic] of discovery"). In *Numex*, the court noted that Defendants had not moved under Rule 9(b) to dismiss the allegations for failure to meet the particularity requirement—a scenario identical to the procedural posture here, where Defendants answered the SEC's complaint and did not file a motion challenging the purported lack of particularity for the alleged pattern of financial misconduct. In effect, Defendants argue that a party in a fraud-related lawsuit may not obtain discovery on any matters not specifically alleged with the requisite particularity in the complaint. ***For the most part, Defendants do not cite discovery cases to support their crabbed view of discovery***. Instead, they primarily cite pleadings-related cases concerning the sufficiency of fraud allegations in the motion to dismiss context. Thus, to use a well-publicized illustration from current cases, Defendants' discovery theory would prevent any plaintiff pursuing claims against Bernard Madoff from obtaining discovery from Mr. Madoff on any of his activities other than those alleged with Rule 9(b) particularity. Given that Mr. Madoff received a 150-year sentence after entering a guilty plea to eleven (11) counts of fraud and fraud-related crimes and given that thousands of investors invested in his Ponzi scheme, a plaintiff operating under the discovery philosophy advocated by Defendants here would need to file a lawsuit of several thousand pages and include myriad allegations meeting the particularity rule for pleading fraud if he wished to obtain discovery on the full scope of Mr. Madoff's Ponzi scheme activities. ***This impractical result is illogical, of course, but it would be required by Defendants' argument. The Court is not inclined to adopt a theory which would lead to such far-fetched results, and other courts have declined to do so, as well***. *E.g., Rorer Int'l Cosmetics, Ltd. v. Halpern*, 85 F.R.D. 43, 45 (E.D. Pa. 1979) (noting that the policies underlying Rule 9(b)'s particularity requirement are inapplicable once a plaintiff demonstrates some specific basis for his fraud charges, and permitting discovery of information relating to alleged kickbacks even though the complaint contained no allegations of kickbacks). "Once a plaintiff has shown that his

charges are not frivolous or totally unsubstantiated, his suit, like any other suit, becomes subject to the Federal Rules of Civil Procedure." *Rorer*, 85 F.R.D. at 45.

*SEC v. Wall Street Capital Funding, LLC*, 2011 U.S. Dist. LEXIS 63186, at *13-16 (S.D. Fla. June 10, 2011); *see Rorer*, 85 F.R.D. at 45 ("The defendant has shown me no authority, nor have I found any, which holds that a fraud suit is subject to different discovery rules than other federal suits merely because Fed. R. Civ. P. 9(b) imposes more stringent pleading requirements."); *see also United States v. Education Mgmt. LLC*, 2013 U.S. Dist. LEXIS 104175, at *18 n.5 (W.D. Pa. May 14, 2013) ("To the extent that Defendants object to Plaintiffs' discovery requests under Rule 9 . . . the Court has already held that Plaintiffs' complaint satisfies the heightened particularity requirement [and] Rule 9 does not otherwise provide sufficient basis under which to address discovery requests . . . .") (citing *Wall Street Capital*); *Unified Container, LLC v. Mazuma*, 280 F.R.D. 632, 636 (D. Utah 2012) ("Rule 9(b) . . . does not require 'particularity to the degree so as to supplant general discovery methods.'") (quoting *Schwartz v. Celestial Seasonings, Inc.*, 124 F.3d 1246, 1254 (10th Cir. 1997)); *Staff Builders of Phila., Inc. v. Koschitzki*, 1989 U.S. Dist. LEXIS 7027, at *15 (E.D. Pa. June 26, 1989) (citing *Rorer*).

Finally, although Hydro ignores the <u>facts</u> of its cited cases, none are analogous. For example, in *Jensen*, the movant was dilatory and its supporting affidavit "merely state[d] in conclusory terms that they were unable to obtain the deposition [sought]." *Jensen v. Redevelopment Agency*, 998 F.2d 1550, 1554-55 (10th Cir. 1993). In *Bliss* (mis-cited as "*Trask*"), the court naturally found a "lack of specificity" where the movant's affidavit merely stated that "the information sought by formal discovery would include depositions of the individual defendants, and their supervisor, as well as access to records and procedure manuals or protocols that are under the exclusive control of the Defendants and/or their employer." *Bliss*

*v. Franco*, 446 F.3d 1036, 1042 (10th Cir. 2006).  In *Campbell*, the court assessed an "unverified explanation by counsel" asserting only that "certain of the defendants, including defendant Campbell, need to be deposed," and "affidavits that will establish the long history of censorship on the campus of Oklahoma State University . . . are needed to fully demonstrate the need for a permanent injunction and appropriate procedural safeguards to assure that the First Amendment will not continue to be violated."  The court concluded that (a) "[t]he affidavits ultimately produced concern evidence to which both parties conceivably had access," (b) "a vague reference to 'a long history of censorship' suggests no more than a fishing expedition," and (c) "plaintiffs certainly had ample time in which to allege specific acts of censorship." *Committee for First Amend. v. Campbell*, 962 F.2d 1517, 1522-23 (10th Cir. 1992).  Here, by contrast, Riveer's supporting declaration is nine pages long, and it explains (as exactly as possible) the facts upon which Riveer requires discovery to fully present its oppositions to Hydro's motions. *See* Dkt. No. 108.

For each of the foregoing reasons, Riveer respectfully requests that this Court grant its Motion for Rule 56(d) relief and either deny or continue Hydro's partial summary judgment motion until relevant and necessary discovery can be completed.

Dated:  September 11, 2014                                  Respectfully submitted,

**The Eclipse Group LLP**

/s/ Stephen M. Lobbin
Stephen M. Lobbin (admitted *pro hac vice*)
*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that I served the foregoing document—**PLAINTIFF RIVEER'S REPLY IN SUPPORT OF ITS MOTION FOR FED. R. CIV. P. 56(d) RELIEF**—pursuant to Fed. R. Civ. P. 5(b)(2)(E) on the parties as follows:

>Brett L. Foster, 6089
>bfoster@hollandhart.com
>Mark A. Miller, 9563
>mmiller@hollandhart.com
>Christopher B. Hadley, 14055
>cbhadley@hollandhart.com
>**Holland & Hart LLP**
>222 S. Main Street, Suite 2200
>Salt Lake City, Utah 84101

Dated: September 11, 2014                               /s/ Stephen M. Lobbin