Stephen M. Lobbin (admitted *pro hac vice*)
Edward F. O'Connor
**The Eclipse Group LLP**
2020 Main Street, Suite 600
Irvine, California 92614
Tel: 949.851.5000
Fax: 949.851.5051

Mark W. Ford (10659)
Rachel Jacques (13250)
**Maschoff Brennan**
1389 Center Drive, Suite 300
Park City, Utah 84098
Tel: 435.575.1387
Fax: 435.252.1361

*Attorneys for Plaintiff* Petter Investments, Inc. d/b/a RIVEER

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF UTAH

| | |
|---|---|
| **PETTER INVESTMENTS, INC.** d/b/a **RIVEER**, a Michigan corporation, <br><br> Plaintiff, <br><br> vs. <br><br> **HYDRO ENGINEERING, INC.**, a Utah corporation, and **CALIFORNIA CLEANING SYSTEMS**, a California company, <br><br> Defendants. | **PLAINTIFF RIVEER'S CROSS-MOTION FOR CLAIM CONSTRUCTION PURSUANT TO LPR 4.2(a)** <br><br> Civil Case No. 2:14-CV-00045 <br><br> Honorable District Judge Dee Benson |

Plaintiff Petter Investments, Inc. d/b/a RIVEER ("Riveer") submits the following Cross-Motion for Claim Construction pursuant to LPR 4.2(a).[1]

## I.    INTRODUCTION

The parties agree that all nine (9) claim terms/phrases identified for construction should be given their ordinary meanings.[2]  *See* Dkt. No. 169 at 2 (Hydro's Reply in Support of Motion to Compel) ("Hydro agrees [with Riveer] the claim terms should be given their ordinary meaning.").  It is Riveer's position that the ordinary meanings of the claim terms are clear and apparent from the claim terms themselves and as such, do not need a construction beyond simply "plain and ordinary meaning."  Riveer's position on this matter is provided in its Response to Motion to Compel Plaintiff to Comply with LPR 4.1 and 4.2.  *See* Dkt. No. 165.

While Hydro disputes that "plain and ordinary meaning" is an adequate construction for the claim terms it identifies for construction, in nearly every single definition that Hydro proposes for the claim terms, Hydro uses the term to be construed in its proposed construction. By using the term to be construed in the proposed definition, Hydro appears to concede that the terms have plain and ordinary meanings that are commonly understood.  If not, Hydro's proposed constructions would be as unclear as the terms they purport to define.

---

[1] For the reasons set forth in its November 25, 2014 Response to Defendants' Motion to Compel (*see* Dkt. No. 165), Riveer reiterates its position that LPR 4.2(a) does not require a Cross-Motion for Claim Construction from a party who, like Riveer, asserts that no claim construction is necessary.  Because the Court has not ruled on Defendants' Motion to Compel, Riveer files this "Cross-Motion" in an abundance of caution.  Also, because Hydro has not yet provided any evidence or argument as a basis for its proposed constructions, Riveer reserves its right to provide any and all relevant evidence and argument in opposition thereto, including but not limited to testimony from one or more experts, persons of ordinary skill in the art, or both.

[2] Technically, Hydro should be limited to only five (5) claim terms/phrases for consideration by this Court, because Riveer has not agreed that any of Hydro's proposed terms/phrases require any special "claim construction."  *See* LPR 4.1(b) ("If the parties are unable to agree upon ten (10) terms, then five (5) shall be allocated to all plaintiffs and five (5) to all defendants.").

While Riveer does not believe any construction beyond "plain and ordinary meaning" is necessary, Riveer has proposed alternative constructions for each of the claim terms identified by Hydro.  Riveer's proposed constructions are consistent with the plain and ordinary meanings of the claim terms.  In the event that the Court concludes a construction is required for any of the terms identified, the Court should adopt Riveer's proposed constructions and reject Hydro's. Each of Hydro's proposed constructions is much too narrow based on the intrinsic evidence, and includes restrictions that are inconsistent with the ordinary meaning of the claim terms.

## II.    BACKGROUND

### A.    Riveer's Asserted Patents

Riveer's three patents-in-suit in this action are U.S. Patent Nos. 6,164,298 ("the '298 patent"), 8,499,774 ("the '774 patent"), and 8,506,720 ("the '720 patent").  These patents are directed to inventions related to "modular wash rack" systems which enable users to wash vehicles and equipment in a manner that allows for water and debris to be efficiently collected and recycled and/or disposed in an environmentally-friendly way.  The '298 patent, titled "Modular Cleaning Facility," describes and claims a "modular cleaning system" including a "modular wash rack" including a "frame," a "basin," a "grate," a "drainage fitting" and "coupling means," as well as a "tube" and a "pump."  The '774 patent, titled "Wash Pad With Evacuator," describes and claims a "wash pad" including a "wash floor," a "catch trough," an "evacuator" including a "debris collector" and a "fluid mover," an "elevator," and a "conveyer." The '720 patent, titled "Wash Rack System With Side Trough," describes and claims a "cleaning system" including a "wash floor," a "side trough sized to accommodate a skid-steer loader," a "guide rail," and a "filtering system."

B.      **Person Of Ordinary Skill**

For each of the patents-in-suit, Hydro contends that "the hypothetical person of ordinary skill in the art is one who has several years of experience designing vehicle or equipment washing systems." *See* Appendix Exhibit A at R. App. 0006-0008.   Although Hydro has not requested a contention from Riveer on this issue, certainly Riveer's expert David Paulus, a mechanical engineer having a Bachelor's Degree, a Master's Degree, and a Ph.D., qualifies. *See* Appendix Exhibit J at R. App. 0069, ¶ 2.

III.    **LEGAL PRINCIPLES OF CLAIM CONSTRUCTION**

The claims of a patent define the invention to which the patentee is entitled the right to exclude. *In re Gabapentin Patent Litig.*, 503 F.3d 1254, 1263 (Fed. Cir. 2007).[3] Words of a claim are typically given their ordinary and customary meaning.  *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (en banc).  There is a heavy presumption in favor of the ordinary meaning of claim language as understood by one of skill in the art.  *Elbex Video Ltd. v. Sensormatic Elecs. Corp.*, 508 F.3d 1366, 1371 (Fed. Cir. 2007).  "[T]he context in which a term is used in the asserted claim can be highly instructive" and, thus, the "claims themselves provide substantial guidance as to the meaning of particular claim terms."  *Phillips*, 415 F.3d at 1314. The Court must also interpret the claims in view of the specification which "is the single best guide to the meaning of a disputed term."  *Id.*

---

[3] Proper claim construction necessarily precedes a determination of whether the claims read on the accused devices for infringement purposes. *Id.* at 1259; *see Cohesive Techs., Inc. v. Waters Corp.*, 543 F.3d 1351, 1367 (Fed. Cir. 2008) ("A claim is construed in the light of the claim language . . . not in light of the accused device.").

The ordinary meaning is not the proper definition of a claim term or phrase in only four limited circumstances: (1) the patentee acted as his own lexicographer;[4] or (2) the patentee clearly distinguished that term from prior art on the basis of a particular embodiment, expressly disclaimed subject matter, or described a particular embodiment as important to the invention; or (3) the term chosen by the patentee so deprives the claim of clarity as to require resort to the other intrinsic evidence for a definite meaning; or (4) as a matter of statutory authority, a claim term may cover nothing more than the corresponding structure or step disclosed in the specification, as well as equivalents thereto, if the patentee phrased the claim in step- or means-plus function.  *CCS Fitness, Inc. v. Brunswick Corp.*, 288 F.3d 1359, 1366-67 (Fed. Cir. 2002).

When the ordinary meaning is found to be the proper construction for a claim term (*i.e.*, the inventor has not imparted a "novel meaning" to a claim term), a court need not provide a construction if the plain and ordinary meaning of the term is clear and apparent from the claims themselves and the patent specification.  *See, e.g., ActiveVideo Networks, Inc. v. Verizon Commc'ns, Inc.,* 694 F.3d 1312, 1325 (Fed. Cir. 2012) ("The district court did not err in concluding that these terms have plain meanings that do not require additional construction."); *Typhoon Touch Techs., Inc. v. Dell, Inc.*, 659 F.3d 1376, 1381 (Fed. Cir. 2011) (affirming district court's holding that "no construction was necessary because the meaning was clear" for claim phrase "operating in conjunction with said processor to execute said application and said libraries to facilitate data collection operations"); *Finjan, Inc. v. Secure Computing Corp.*, 626 F.3d 1197, 1206-07 (Fed. Cir. 2010) (affirming jury instruction to "give . . . words in the claims

---

[4] A patentee acts as his or her own lexicographer when the patentee *clearly* gives a "special definition" to a claim term that differs from the meaning it would otherwise possess. *Schoenhaus v. Genesco, Inc.*, 440 F.3d 1354, 1358 (Fed. Cir. 2006).

their ordinary meaning" where "defendant's proposed construction would unjustifiably narrow the term's broad scope, which was not explicitly limited or redefined by the specification").

Alternatively, when the inventor does not "impart a novel meaning" to a claim term but a construction that identifies the ordinary meaning of that term is necessary, dictionary definitions are proper. *Wilson Sporting Goods Co. v. Hillerich & Bradsby Co.*, 442 F.3d 1322, 1330 (Fed. Cir. 2006); *Phillips*, 415 F.3d at 1314. Indeed, the Federal Circuit has recognized "that dictionaries or comparable sources are often useful to assist in understanding the commonly understood meaning of words and have the value of being an unbiased source accessible to the public in advance of litigation." *Praxair, Inc. v. ATMI, Inc.*, 543 F.3d 1306, 1325 (Fed. Cir. 2008) (internal quotations and citations omitted).

## IV.   ARGUMENT

In the present case, the parties agree that the "ordinary meaning" is the proper construction for each of the identified claim terms. *See* Dkt. No. 169 at 2 (Hydro's Reply in Support of Motion to Compel Plaintiff to Comply with LPR 4.1 and 4.2) ("Hydro agrees [with Riveer] the claim terms should be given their ordinary meaning."). Thus, neither party is asserting that the patentee departed from the ordinary meaning or imparted a novel meaning to any identified claim term. Thus, the issues to be decided by this Court are (1) whether a construction identifying the ordinary meaning of one or more of the claim terms is necessary, and (2) if a construction is necessary, what the ordinary meaning is.

### A.   U.S. Patent No. 6,164,298

#### 1.   "frame"

| Riveer's Proposed Construction | Hydro's Proposed Construction |
|---|---|
| No construction of this term is necessary; however, should the court determine the "plain and ordinary meaning" of this term requires further definition, Riveer proposes: "a rigid | "a weight-bearing frame made up of four interconnected walls that define a single enclosed area such that each wall has an inner surface facing toward the enclosed area and an |

| structure joined so as to provide support" | outer surface facing away from the enclosed area" |
|---|---|

The intrinsic evidence of the '298 patent supports a construction of the term "frame" that is consistent with the term's plain and ordinary meaning.  As such, no construction is necessary for the term "frame."  *See also* Appendix Exhibit J at R. App. 0070-0071, ¶ 5.  Consistent with Riveer's proposal, at least two district courts have considered the term "frame" and found that the plain and ordinary meaning of this term is sufficient and no specific construction is necessary.  *See, e.g.*, *ScriptPro LLC v. Innovation Assocs., Inc.*, Case No. 06-2468-CM, 2011 U.S. Dist. LEXIS 44743 at *11-12 (D. Kan. April 26, 2011) (unpublished) (declining to adopt a construction for the term "frame" because this term "can be understood by the court and by lay people by their ordinary meaning") (Appendix Exhibit C at R. App. 0033-0039); *IA Labs CA, LLC v. Nintendo Co.*, Case No. 8:10-CV-00833-PJM (D. Md. Feb. 6, 2012) (unpublished) (declining to construe "a frame to support a user" beyond its plain and ordinary meaning) (Appendix Exhibit D at R. App. 0042-0043).

Significantly, Hydro's proposed definition for the term "frame" ***itself*** uses the term "frame."  By using the term "frame" in its proposed definition, Hydro appears to concede that the term "frame" has a plain and ordinary meaning that is commonly understood.  If not, Hydro's proposed construction would be as unclear as the term "frame" itself.  *See also* Appendix Exhibit J at R. App. 0071, ¶ 6.  Should the Court decide that providing a construction for the term "frame" is necessary, Riveer's alternate construction should be adopted.  Riveer's alternate construction is consistent with definitions for the term "frame" that existed in dictionaries around the time of the inventions of the '298 patent.  For example, one such dictionary defines the term "frame" to mean "a rigid structure formed of relatively slender pieces, joined so as to surround sizable empty spaces or nonstructural panels, and generally used as a major support in building

or engineering works, machinery, furniture, etc." Random House Webster's Unabridged

Dictionary at 760 (2d ed. 1998) (Appendix Exhibit B at R. App. 0026).

Hydro's proposed construction should be rejected because it is too narrow and departs

from the ordinary meaning of the term. Specifically, Hydro attempts to improperly limit the

term "frame" to the subset of frames that (1) are "weight bearing," (2) are "made up of four

interconnected walls" and (3) "define a single enclosed area." However, Hydro's use of the term

"frame" in its proposed construction for the term "frame" is an acknowledgement that (1) not all

frames are weight bearing, (2) not all frames are made up of four interconnected walls, and (3)

not all frames define a single enclosed area. If the plain and ordinary meaning of the term

"frame" included each of the restrictions that Hydro includes in its proposed construction, then

specifying that the term "frame" includes these limitations—as Hydro does in its proposed

construction—would be completely redundant.

> **2.     "bottom surface"**

| Riveer's Proposed Construction | Hydro's Proposed Construction |
|---|---|
| No construction of this term is necessary; however, should the court determine the "plain and ordinary meaning" of this term requires further definition, Riveer proposes: "a face or boundary that defines the lowest or deepest part of something" | "a surface that fills a horizontal cross-section of the enclosed area and intersects the bottom portion of the inner surfaces of all four frame walls" |

The intrinsic evidence of the '298 patent supports a construction of the term "bottom

surface" that is consistent with the term's plain and ordinary meaning. As such, no construction

is necessary for the term "bottom surface." *See also* Appendix Exhibit J at R. App. 0070-0071, ¶

5. Significantly, Hydro's proposed definition for the term "bottom surface" *itself* uses the term

"bottom" and the term "surface." By using the terms "bottom" and "surface" in its proposed

definition, Hydro appears to concede that the term "bottom surface" has a plain and ordinary

meaning that is commonly understood.  If not, Hydro's proposed construction would be as unclear as the term "bottom surface" itself.

Should the Court decide that providing a construction for the term "bottom surface" is necessary, Riveer's alternate construction should be adopted.  Riveer's alternate construction is consistent with definitions for the terms "bottom" and "surface" that existed in dictionaries around the time of the inventions of the '298 patent.  For example, one such dictionary defines the term "surface" to mean "the outer face, outside, or exterior boundary of a thing" and the term "bottom" to mean "the lowest or deepest part of anything, as distinguished from the top." Random House Webster's Unabridged Dictionary at 245, 1914 (2d ed. 1998) (Appendix Exhibit B at R. App. 0023, 0030).

Hydro's proposed construction should be rejected because it is too narrow and departs from the ordinary meaning of the term.  Specifically, Hydro attempts to improperly limit the term "bottom surface" to a surface that "fills a horizontal cross-section of [an] enclosed area" and that "intersects the bottom portion of the inner surfaces of all four frame walls."  There is nothing in the ordinary meaning of the term "bottom surface" that requires the specific size or intersections that Hydro proposes.

### 3.       "grate"

| Riveer's Proposed Construction | Hydro's Proposed Construction |
|---|---|
| No construction of this term is necessary; however, should the court determine the "plain and ordinary meaning" of this term requires further definition, Riveer proposes: "a framework of parallel or crossed bars, used as a partition, guard, cover, or the like" | "a porous framework of parallel or crossed bars that fills a horizontal cross-section of the enclosed area and engages the top portion of the inner surfaces of all four frame walls" |

The intrinsic evidence of the '298 patent supports a construction of the term "grate" that is consistent with the term's plain and ordinary meaning.  As such, no construction is necessary for the term "grate."  *See also* Appendix Exhibit J at R. App. 0070-0071, ¶ 5.

Should the Court decide that providing a construction for the term "grate" is necessary, Riveer's alternate construction should be adopted.  Riveer's proposed construction is consistent with definitions for the term "grate" that existed in dictionaries around the time of the inventions of the '298 patent.  For example, one such dictionary defines the term "grate" to mean "a framework of parallel or crossed bars, used as a partition, guard, cover, or the like."  Random House Webster's Unabridged Dictionary at 833 (2d ed. 1998) (Appendix Exhibit B at R. App. 0027).

Hydro's proposed construction should be rejected because it is too narrow and departs from the ordinary meaning of the term.  Specifically, Hydro attempts to improperly limit the term "grate" to include the term "porous."  If one compares the definition in the dictionary that Riveer relies upon in support of its construction with Hydro's proposed construction, it is clear that Hydro's inclusion of the term "porous" is improper and unsupported.[5]  Hydro's proposed construction also suggests that the term "grate" imparts a required position and attachment within an enclosed area.  There is nothing in the ordinary meaning of the term "grate" that requires the specific position or attachment that Hydro proposes.

4.      "sloped tray"

| Riveer's Proposed Construction | Hydro's Proposed Construction |
|---|---|
| No construction of this term is necessary; | "a slanted tray positioned within the enclosed |

---

[5] Hydro has improperly taken the ordinary definition of "grate" and inserted an extra word—"porous"—in the middle of the definition, as well as other narrowing phrases at the end of the ordinary definition.  Moreover, many grates are non-porous, such as the well-known "George Foreman Grill" and many other cooking grates.  *See* Appendix Exhibit J at R. App. 0071, ¶ 6; *see also* Appendix Exhibits F-I at R. App. 0048-0066.

| | |
|---|---|
| however, should the court determine the "plain and ordinary meaning" of this term requires further definition, Riveer proposes: "a flat shallow container positioned at an inclined angle considered with reference to a vertical or horizontal plane" | area at a level above the bottom surface and below the grate" |

The intrinsic evidence of the '298 patent supports a construction of the term "sloped tray" that is consistent with the term's plain and ordinary meaning. As such, no construction is necessary for the term "sloped tray." *See also* Appendix Exhibit J at R. App. 0070-0071, ¶ 5. Consistent with Riveer's proposal, at least one district court has considered the term "tray" and found that the plain and ordinary meaning of this term is sufficient and no specific construction is necessary. *See CleanCut v. Rug Doctor*, Case No. 2:08-cv-00836, 2012 U.S. Dist. LEXIS 36212 at *4-5 (D. Utah March 16, 2012) (unpublished) (declining to construe the term "debris tray" and stating that the term "is already adequately defined by the patent claims and that there is no need to provide additional construction") (Appendix Exhibit E at R. App. 0045-0047).

Significantly, Hydro's proposed definition for the term "sloped tray" ***itself*** uses the term "tray." By using the term "tray" in its proposed definition, Hydro appears to concede that at least the term "tray" has a plain and ordinary meaning that is commonly understood. If not, Hydro's proposed construction would be as unclear as the term "sloped tray" itself.

Should the Court decide that providing a construction for the term "sloped tray" is necessary, Riveer's alternate construction should be adopted. Riveer's alternate construction is consistent with definitions for the terms "sloped" and "tray" that existed in dictionaries around the time of the inventions of the '298 patent. For example, one such dictionary defines the term "tray" to mean "a flat, shallow container or receptacle made of wood, metal, etc., usually with slightly raised edges" and the term "slope" to mean "to have or take an inclined or oblique direction or angle considered with reference to a vertical or horizontal plane." Random House

Webster's Unabridged Dictionary at 1800, 2015 (2d ed. 1998) (Appendix Exhibit B at R. App. 0029, 0031).

Hydro's proposed construction should be rejected because it is too narrow and departs from the ordinary meaning of the term. Specifically, Hydro's proposed construction suggests that the term "sloped tray" imparts a required position within an enclosed area. Specifically, Hydro's proposed construction requires not only that the tray be "slanted" but also that it be "positioned within the enclosed area at a level above the bottom surface and below the grate." There is nothing in the ordinary meaning of the term "sloped tray" that requires the specific position that Hydro proposes.

**B.    U.S. Patent No. 8,499,774**

**1.    "evacuation end"**

| Riveer's Proposed Construction | Hydro's Proposed Construction |
|---|---|
| No construction of this term is necessary; however, should the court determine the "plain and ordinary meaning" of this term requires further definition, Riveer proposes: "the last part lengthwise of something that is longer than it is wide, where contents of that thing may be discharged" | "an end of the catch trough at which the evacuator (including the fluid mover and the debris collector) and the elevator are located, as shown in Figure 6 of the '774 patent" |

The intrinsic evidence of the '774 patent supports a construction of the term "evacuation end" that is consistent with the term's plain and ordinary meaning. As such, no construction is necessary for the term "evacuation end." *See also* Appendix Exhibit J at R. App. 0071-0072, ¶ 7. Significantly, Hydro's proposed definition for the term "evacuation end" ***itself*** uses the term "end." By using the term "end" in its proposed definition, Hydro appears to concede that at least the term "end" has a plain and ordinary meaning that is commonly understood. If not, Hydro's proposed construction would be as unclear as the term "evacuation end" itself.

Should the Court decide that providing a construction for the term "evacuation end" is necessary, Riveer's alternate construction should be adopted. Riveer's alternate construction is consistent with definitions for the terms "evacuation" and "end" that existed in dictionaries around the time of the inventions of the '774 patent. For example, one such dictionary defines the term "end" to mean "the last part or extremity, lengthwise, of anything that is longer than it is wide or broad" and the term "evacuation" to mean "discharge or expulsion, as of contents." Random House Webster's Unabridged Dictionary at 641, 670 (2d ed. 1998) (Appendix Exhibit B at R. App. 0024, 0025).

Hydro's proposed construction should be rejected because it is too narrow and departs from the ordinary meaning of the term. Specifically, Hydro's proposed construction suggests that the term "evacuation end" requires that an "evacuator (including the fluid mover and the debris collector)" and an "elevator" be located at the "evacuation end." There is nothing in the ordinary meaning of the term "evacuation end" that requires the presence of these specific components.

Hydro's proposed construction should also be rejected because it attempts to limit the scope of the term "evacuation end" to a specific embodiment disclosed in the specification. The Federal Circuit has repeatedly admonished against this. *See Phillips*, 415 F.3d at 1323; *Renishaw PLC v. Marposs Societa' Per Azioni*, 158 F.3d 1243, 1248 (Fed. Cir. 1998); *SciMed Life Sys., Inc. v. Advanced Cardiovascular Sys., Inc.*, 242 F.3d 1337, 1340 (Fed. Cir. 2001) (describing "one of the cardinal sins of patent law—reading a limitation from the written description into the claims.").

2.      **"an elevator disposed in fluid communication with the evacuator"**

| Riveer's Proposed Construction | Hydro's Proposed Construction |
|---|---|
| No construction of this term is necessary; | "an elevator connected to the evacuator such |

| | |
|---|---|
| however, should the court determine the "plain and ordinary meaning" of this term requires further definition, Riveer proposes that the Court construe the term "in fluid communication with" to mean: "at least a liquid is permitted to flow from one position to another, for example from an elevator to an evacuator" | that debris can be moved from the debris collector directly into the elevator" |

The intrinsic evidence of the '774 patent supports a construction of the term "an elevator disposed in fluid communication with the evacuator" that is consistent with the term's plain and ordinary meaning.  As such, no construction is necessary for this term.  *See also* Appendix Exhibit J at R. App. 0071-0072, ¶¶ 7-8.  Significantly, Hydro's proposed definition for this term *itself* uses the terms "elevator" and "evacuator."  By using the terms "elevator" and "evacuator" in its proposed definition, Hydro appears to concede that at least these terms have a plain and ordinary meanings that are commonly understood.  If not, Hydro's proposed construction would be as unclear as the term "an elevator disposed in fluid communication with the evacuator" itself. Based on Hydro's use of the terms "elevator" and "evacuator" in its proposed construction, it appears that what is really at issue is the ordinary meaning of the term "in fluid communication with."

Should the Court decide that providing a construction for the term "in fluid communication with" is necessary, Riveer's alternate construction should be adopted.  Riveer's alternate construction constitutes the ordinary meaning of the term "in fluid communication with" and is consistent with the specification of the '774 patent.  For example, the '774 states:

> In some implementations, the wash floor defines channels for receiving at least one of wash fluid and debris.  The channels are arranged in fluid communication with the catch trough and can be inclined at an angle of between about 1 degree and about 60 degrees with respect to level ground for promoting at least one of wash fluid and debris to move toward the catch trough.

(Col. 2, lines 43-49.)  Consistent with its plain meaning, the term "in fluid communication with," as used in this part of the '774 specification, simply means that a fluid is permitted to flow from the "channels" to the "catch trough."  Riveer's alternate construction of the term "in fluid communication with" is consistent with the ordinary meaning and the specification of the '774 patent.

Hydro's proposed construction should be rejected because it is too narrow and departs from the ordinary meaning of the term.  Specifically, Hydro's proposed construction suggests that the term "in fluid communication with" requires a "connection" between two things (the elevator and the evacuator) "such that debris can be moved from the debris collector directly into the elevator."  There is nothing in the ordinary meaning of the term "in fluid communication with" that requires a connection or that debris be moved directly from one place to another.

> **3.**     **"the elevator removing debris from the debris collector and elevating the removed debris from a collection height to a dump height for dumping"**

| Riveer's Proposed Construction | Hydro's Proposed Construction |
|---|---|
| No construction of this term is necessary; however, should the court determine the "plain and ordinary meaning" of this term requires further definition, Riveer proposes: "the elevator includes a means to elevate debris to a dump height" | "the elevator includes a means to elevate debris to a dump height independent of the conveyor" |

The intrinsic evidence of the '774 patent supports a construction of the term "the elevator removing debris from the debris collector and elevating the removed debris from a collection height to a dump height for dumping" that is consistent with the term's plain and ordinary meaning.  As such, no construction is necessary for this term.  *See also* Appendix Exhibit J at R. App. 0071-0072, ¶¶ 7-8.  Significantly, Hydro's proposed definition for this term *itself* uses many of the terms that are included in the term that it identifies to be construed.  By using the

words to define the term that are used in the term to be defined itself, Hydro appears to concede

that at least a portion of this term has a plain and ordinary meaning that is commonly understood.

If not, Hydro's proposed construction would be as unclear as the term to be construed.

Should the Court decide that providing a construction for the term "the elevator removing

debris from the debris collector and elevating the removed debris from a collection height to a

dump height for dumping" is necessary, Riveer's alternate construction should be adopted.

Riveer's alternate construction is consistent with the ordinary meaning of the term.

Hydro's proposed construction should be rejected because it is too narrow and departs

from the ordinary meaning of the term.  Specifically, Hydro's proposed construction requires the

elevator to elevate debris to a dump height "independent of the conveyor."  There is nothing in

the ordinary meaning of the term "the elevator removing debris from the debris collector and

elevating the removed debris from a collection height to a dump height for dumping" that

requires the elevator to elevate debris to a dump height "independent of the conveyor."

## C.   U.S. Patent No. 8,506,720

### 1.   "a side trough adjacent the wash floor"

| Riveer's Proposed Construction | Hydro's Proposed Construction |
|---|---|
| No construction of this term is necessary; however, should the court determine the "plain and ordinary meaning" of this term requires further definition, Riveer proposes that the Court construe the term "adjacent" to mean: "lying near" | "a side trough abutting the wash floor such that wash fluid and/or debris flows directly from the wash floor into the side trough" |

The intrinsic evidence of the '720 patent supports a construction of the term "a side

trough adjacent the wash floor" that is consistent with the term's plain and ordinary meaning.  As

such, no construction is necessary for this term.  *See also* Appendix Exhibit J at R. App. 0072-

0073, ¶¶ 9-10.  Significantly, Hydro's proposed definition for this term ***itself*** uses the terms "side

trough" and "wash floor."  By using the terms "side trough" and "wash floor" in its proposed

16

definition, Hydro appears to concede that at least these terms have a plain and ordinary meanings that are commonly understood.  If not, Hydro's proposed construction would be as unclear as the term "a side trough adjacent the wash floor" itself.  Based on Hydro's use of the terms "side trough" and "wash floor" in its proposed construction, it appears that what is really at issue is the ordinary meaning of the term "adjacent."

Should the Court decide that providing a construction for the term "adjacent" is necessary, Riveer's alternate construction should be adopted.  Riveer's alternate construction is consistent with definitions for the term "adjacent" that existed in dictionaries around the time of the inventions of the '720 patent.  For example, one such dictionary defines the term "adjacent" to mean "lying near, close, or contiguous."  Random House Webster's Unabridged Dictionary at 25 (2d ed. 1998) (Appendix Exhibit B at R. App. 0022).

Hydro's proposed construction should be rejected because it is too narrow and departs from the ordinary meaning of the term.  Specifically, Hydro's proposed construction suggests that the term "adjacent" requires a "side trough abutting the wash floor."  Hydro's proposed construction also requires that "wash fluid and/or debris" be allowed to flow "directly from the wash floor into the side trough."  There is nothing in the ordinary meaning of the term "adjacent" that requires an abutment between two things or fluid/debris to be allowed to flow directly from one place to another.

### 2.   "a guide [rail] separating the side trough from the wash floor"

| Riveer's Proposed Construction | Hydro's Proposed Construction |
|---|---|
| No construction of this term is necessary; however, should the court determine the "plain and ordinary meaning" of this term requires further definition, Riveer proposes that the Court construe the term "separating" to mean: "keeping apart" | "a guide rail positioned near the intersection of the side trough and the wash floor to divide the side trough from the wash floor" |

The intrinsic evidence of the '720 patent supports a construction of the term "a guide [rail] separating the side trough from the wash floor" that is consistent with the term's plain and ordinary meaning.[6] As such, no construction is necessary for this term. *See also* Appendix Exhibit J at R. App. 0072-0073, ¶¶ 9-10. Significantly, Hydro's proposed definition for this term *itself* uses the terms "guide rail," "side trough" and "wash floor." By using these terms in its proposed definition, Hydro appears to concede that at least these terms have a plain and ordinary meanings that are commonly understood. If not, Hydro's proposed construction would be as unclear as the phrase itself. Based on Hydro's use of the terms "guide rail," "side trough" and "wash floor" in its proposed construction, it appears that what is really at issue is the ordinary meaning of the term "separating."

Should the Court decide that providing a construction for the term "separating" is necessary, Riveer's alternate construction should be adopted. Riveer's alternate construction is consistent with definitions for the term "separating" that existed in dictionaries around the time of the inventions of the '720 patent. For example, one such dictionary defines the term "separate" to mean "to keep apart or divide, as by an intervening barrier or space." Random House Webster's Unabridged Dictionary at 1746 (2d ed. 1998) (Appendix Exhibit B at R. App. 0028).

Hydro's proposed construction should be rejected because it is too narrow and departs from the ordinary meaning of the term. Specifically, Hydro's proposed construction suggests that the term "separating" requires a being "positioned near . . . to divide the side trough from the wash floor." There is nothing in the ordinary meaning of the term "separating" that requires being "near" or "dividing."

---

[6] Claim 1 of the '720 patent contains a mis-print; the word "[rail]" should be included in the claim where noted, and this mis-print has been (or will be) fixed via Certificate of Correction.

## V.      CONCLUSION

Riveer respectfully submits that this Court should adopt the claim construction positions advocated herein by Riveer, which confirm the plain and ordinary meaning of the claim terms and phrases at issue, as they would be understood by a person of ordinary skill in the art.


Dated:  December 8, 2014                    Respectfully submitted,

                                            **Maschoff Brennan**

                                            /s/ *Mark W. Ford*
                                            Mark W. Ford