1              IN THE UNITED STATES DISTRICT COURT

2                       DISTRICT OF UTAH

3                       CENTRAL DIVISION

4

5    PETTER INVESTMENTS, a Michigan    )

6    corporation doing business as     )

7    Riveer,                           )

8              Plaintiff,              )

9    vs.                               )   CASE NO. 2:14-CV-45DB

10   HYDRO ENGINEERING, a Utah         )

11   corporation, et al.               )

12             Defendants.             )

13   _____ )

14

15            BEFORE THE HONORABLE DEE BENSON

16            -------------------------------

17                    November 13, 2014

18

19                     Motion Hearing

20

21

22

23

24

25

1                        A P P E A R A N C E S

2

3

     For Plaintiff:                STEPHEN M. LOBBIN (Telephone)
4                                  2020 Main Street
                                   Suite 600
5                                  Irvine, California

6

                                   MARK FORD
7                                  1389 Center Drive
                                   Suite 300
8                                  Park City, Utah

9

10

     For Defendant:                MARK MILLER
11                                 BRETT FOSTER
                                   222 South Main Street
12                                 Suite 2200
                                   Salt Lake City, Utah

13

14

15

16

17

18

19

20

21

     Court Reporter:               Ed Young
22                                 351 South West Temple
                                   Room 3.302
23                                 Salt Lake City, Utah 84101-2180
                                   801-328-3202
24

25

```
 1   November 13, 2014                              2:30 p.m.

 2                   P R O C E E D I N G S

 3

 4        THE COURT:  Good afternoon.

 5        We'll turn to Petter Investments, Inc. doing

 6   business as Riveer, plaintiff, versus Hydro Engineering,

 7   Inc. and California Cleaning Systems.  The case number is

 8   14-CV-45.

 9        For the defendants we have here Mr. Brett Foster

10   and Mr. Mark Miller.

11        Do I have that right?

12        MR. MILLER:  That is correct.

13        THE COURT:  For the plaintiff I know I have Mr.

14   Lobbin on the telephone.

15        Can you hear us, Mr. Lobbin?

16        MR. LOBBIN:  Yes, I can.  Thank you.

17        THE COURT:  That is Mr. Stephen Lobbin.

18        Is this Mr. Ford?

19        MR. FORD:  It is, Your Honor.

20        THE COURT:  Mr. Mark Ford is here in person.

21        This is a hearing that the Court scheduled on its

22   own request a couple of days ago after reading a motion that

23   has been filed by the plaintiff seeking additional time to

24   conduct discovery and to be relieved of the current deadline

25   for the initial discovery phase, which is the 1st of
```

1    December, as I recall.

2            That is what I wanted to have a hearing on today

3    and see if we can't get things moving.  I have read all of

4    the briefs.  I know also that there is a pending motion for

5    partial summary judgment which is scheduled to be argued

6    next Thursday, I think.  I have taken some time to acquaint

7    myself generally with what is being presented in those

8    motions brought by the defense, but I have not concluded my

9    reading of those.  It just made sense to me to try to give

10   you some understanding today, and I would like to rule from

11   the bench if I can, so that you know what the framework is.

12           Before I hear from either Mr. Lobbin or Mr. Ford

13   on the matter, it might be helpful for you to hear my

14   inclination.

15           From what I have read in the briefing that has

16   been submitted, it appears to me that the plaintiff has not

17   been diligent in pursuing its discovery efforts.  The

18   eight-month period is consistent with the local rules of

19   this court in this type of a case.  It appears to me that

20   the plaintiff has known about this deadline for months.  I

21   don't understand why the plaintiff has not been more

22   diligent in pursuing discovery.

23           I know there were objections raised by the defense

24   to certain requests for production of documents because the

25   defendant claims that they are not relevant and that they

1    deal with matters that are outside of the realm of the

2    allegations in the complaint.

3              Those are the kinds of things that happen all the

4    time in discovery and they need to get sorted out.  What I

5    really don't understand is why the plaintiff has not taken

6    more depositions than just the one deposition they took last

7    April.  The plaintiff has known about this deadline, and the

8    most curious thing to me is why, when the defendants filed

9    motions for summary judgment in July or June, whenever it

10   was, that the plaintiff responded in July with a motion

11   under Rule 56(d) indicating that they would need more

12   discovery before they could respond to the summary judgment

13   motions.  The curiosity comes from the fact that that

14   clearly tells me that the plaintiffs knew that they needed

15   factual material or wanted factual discovery from the

16   defendants as early as last July, and yet waited until just

17   a few days ago or a week or two ago to file the current

18   motion seeking an extension of a deadline that is only about

19   ten days from now.

20             All of that tells me that the plaintiff, and maybe

21   you have been busy with your other case involving Target, I

22   don't know, but I'm inclined not to grant your motion for an

23   extension of time.

24             But having said that, I recognize that you have

25   indicated in your papers that there are four or five or six

1   or seven depositions that you feel have to be taken, and

2   that that is going to pose a real hardship if you need to

3   get all of those taken in the next ten days, and especially

4   when I think there is a deposition or maybe two that have

5   been already scheduled by the defendants and those are

6   coming up relatively soon I think.

7          I have a fairly good understanding of the

8   background.  I just need some explanation from the plaintiff

9   that might cause me to give you some relief, but it is going

10  to have to be better than what I have read in the briefs.

11         Who is going to address this for the plaintiff,

12  Mr. Lobbin or Mr. Ford?

13         MR. LOBBIN:  Thank you, Your Honor.  Mr. Lobbin

14  here.

15         Unfortunately, I am in a hospital waiting room

16  right now.  My daughter, my three-year-old is having her

17  tonsils and adenoids out, and because there may be an

18  interruption and for clarity of communication, I would like

19  to have Mr. Ford --

20         THE COURT:  Okay.

21         MR. LOBBIN:  -- address the Court.

22         THE COURT:  Well, he is here and he is up at the

23  lectern and we'll let him go forward.

24         If there comes a time, Mr. Lobbin, when you have

25  to leave, feel free, of course, and tell us if there is

1   something that you're not able to hear and understand.

2   Okay.

3          MR. LOBBIN:  Thank you, Your Honor.

4          I certainly wanted to be on the call to answer any

5   clarifying questions that come up and I am available for

6   that as well.

7          THE COURT:  I will hear now from Mr. Ford.

8          MR. FORD:  Thank you, Your Honor.

9          As you indicated correctly, the close of discovery

10  in this case is set for December 1st which, if my math is

11  correct, is two weeks from this coming Monday.  Really the

12  reason for the motion is an extension of the discovery

13  deadline in order to complete several important tasks.  One

14  of those is to complete depositions of Hydro witnesses,

15  specifically 30(b)(6) depositions, and the second reason is

16  to conduct and complete some third-party discovery that we

17  have not been able to complete as of yet.

18         Steve can correct me if I am wrong, but I think

19  there are eight different third parties that we are seeking

20  discovery from.  Several of those are governmental entities.

21  We have run into several roadblocks in terms of getting

22  these governmental entities to produce documents and make a

23  witness available for deposition.  There are lots of

24  time-consuming red tape and bureaucratic issues that we have

25  been having to deal with for several months now.

1          Turning to the first issue regarding the

2  depositions of Hydro's witnesses, it is true this case has

3  been pending for a while and that we have known about this

4  December 1st deadline since the scheduling order in this

5  case came out, but I think it is important to remember that

6  this case started -- these two parties, Hydro and Riveer,

7  have been in lawsuits for a long time.

8          At the initial point in this case, the parties

9  stipulated that -- let me make sure I get this correct.

10  They stipulated that all of the documents and depositions

11  and testimony and exhibits that were produced in three other

12  cases between the parties would be deemed produced in this

13  case.  That resulted in the production of hundreds of

14  thousands of pages of relevant documents from Hydro's files

15  as well as testimony from dozens of prior depositions.  When

16  we first started the discovery phase in this case, we had to

17  take all that information and assimilate it and understand

18  it, and what do we have and what do we still need in order

19  to proceed in this case.

20          Six weeks into the discovery period we served our

21  first set of discovery requests.  I feel we were diligent

22  during that time to figure out what it was that we had and

23  what is relevant from the other cases that is deemed

24  produced in this case and what more do we need so that we

25  are not asking for things that we may already have.  Like I

1    said, six weeks after the discovery period initiated we

2    served our first set of discovery.

3         Now, in response to that discovery there has been

4    quite a bit of back and forth between the parties over what

5    is relevant and what is not relevant and have you produced

6    everything that you should have produced?  Are your

7    interrogatory responses complete?  In fact, the parties are

8    still continuing to negotiate over whether the production

9    and interrogatory responses are complete.

10        In fact, I think just this morning I saw an e-mail

11   from Mr. Lobbin to Mr. Miller regarding some interrogatory

12   responses that they have indicated that they would be

13   supplementing but that they have not supplemented yet.  What

14   is critical in this case is in the last three weeks Hydro

15   has produced to Riveer over 10,000 pages of documents.  We

16   should be allowed the opportunity to get that information

17   and understand it and digest it and read it and incorporate

18   it into the deposition outline in a meaningful way.

19        We shouldn't be forced to have to take a

20   deposition either without having complete production from

21   Hydro, or having to take a deposition the day after we have

22   received 10,000 pages of documents.  Like I said, that

23   production -- I can get you the exact amounts and the exact

24   dates.  Hydro produced 10,316 pages on October 20th, and

25   they produced another 167 pages on October 29.

1          Now, what else has been happening in this case

2   from the time that the discovery period opened until now?

3   Well, Hydro has also filed three motions for summary

4   judgment.  We have responded to those motions.  We have also

5   filed Rule 56(d) motions.  There has been a lot that has

6   gone on in this case during the discovery period.  It is not

7   as if the plaintiff has been sitting back and watching

8   things happening and been doing nothing in this case.

9          Quite the opposite.  We have been very active in

10  responding to their summary judgment motions and filing our

11  own 56(d) motions and also pursuing discovery that we feel

12  is necessary.  I could be mistaken, but I believe there was

13  also a motion to compel filed during that time.  Anyway, to

14  say the least, this has been a very, very active case, one

15  of the most active cases during discovery in terms of motion

16  practice that I have been involved in.  There has been a lot

17  going on, especially with the three summary judgment

18  motions.

19         In my opinion the plaintiff has been diligent in

20  seeking this discovery.  We have had numerous phone calls

21  and conversations with the defendants to try to work out

22  these issues and to try to avoid the necessity of a motion

23  to compel.  And, like I said, we have been successful in

24  part, and part of that success has been this very recent

25  production of nearly 10,500 documents from the defendants.

```
 1    From that standpoint, the depositions of Hydro's witnesses,
 2    you know, we need an opportunity to be able to read that
 3    information and prepare adequately our depositions.
 4            With regard to the third-party witnesses, there
 5    really was not much we could have done to get that ball
 6    rolling any sooner.  We learned about these individuals from
 7    Hydro's -- I believe all of them are Hydro customers, and we
 8    didn't know who all their customers were until we got the
 9    production and could confirm who their customers were to
10    identify the appropriate people to seek third-party
11    discovery from.  We have been working on these third-party
12    subpoenas for several months now.
13            Like I said, we have just been hit with a lot of
14    red tape and problems from these third parties in actually
15    getting the information and the documents that we have asked
16    for and the witness that we have also asked for.
17            THE COURT:  Give me an example.
18            MR. FORD:  I'm sorry?  Say that again.  I didn't
19    hear you.
20            THE COURT:  Give me an example.
21            MR. FORD:  Sure.
22            Steve, I know you sent me an e-mail this morning,
23    an e-mail that you recently received.
24            MR. LOBBIN:  Yes.  I'm sorry.  I was trying to
25    find a quiet space here.
```

1        With regard to the third-party discovery, Your

2   Honor, the intention of getting documents from Hydro was to

3   figure out whether and which third parties we had to bother

4   for discovery.  My practice is generally to get discovery

5   from the parties before you go out and bother these third

6   parties who are going to resist discovery in the first

7   place.  So we have been pursuing third-party discovery since

8   September, because it was clear that Hydro was stalling and

9   not producing their documents and they just produced two

10  weeks ago these 10,000 pages.

11       While we have been waiting for Hydro to finish the

12  document production we have been pursuing these third

13  parties, and all we're asking for is a little more time for

14  the third-party discovery.  We don't need any more party

15  discovery.  We have got the depositions, Hydro and Riveer

16  have agreed on dates and we're working on dates for the

17  party depositions, and we're finished with party discovery,

18  written discovery, and all we are really asking for here is

19  a little more time to complete our third-party discovery.

20  We have been at it for two and a half months and we need

21  another month and we'll be done.

22       We are not asking for, you know, a broad extension

23  of discovery.  All we're asking for here is a little more

24  time to finish what we started on the third-party discovery

25  and we don't need any more time for party stuff.

```
 1              THE COURT:  How do these depositions that you want
 2    to take relate to this extension?  Do they have to be done
 3    by the 1st of December?  Help me understand that.
 4              MR. FORD:  With regard to the party depositions,
 5    it appears that Hydro has taken the position that the party
 6    depositions -- it is okay for those to happen after the
 7    close of discovery because --
 8              THE COURT:  After December 1?
 9              MR. FORD:  That is exactly right.
10              THE COURT:  Do you agree with that?
11              MR. MILLER:  Yes.
12              We were willing to schedule those during the first
13    two weeks of December to accommodate everybody's schedules,
14    so those are being scheduled right now.
15              MR. FORD:  What is interesting is that with regard
16    to the third parties, Hydro has taken the position that, no,
17    we are not going to allow those to happen after the close of
18    discovery.  In an e-mail from November 5th --
19              THE COURT:  Allow what?
20              MR. FORD:  For the depositions of third parties to
21    happen after the December 1st close of discovery date.  What
22    Hydro has said in the e-mail on November 5th was that with
23    regard to third parties, we expect any depositions to take
24    place prior to the discovery cutoff date.  I am not quite
25    sure why it is okay for party depositions to happen after
```

144

```
 1    the close of discovery, but they have taken sort of a
 2    hard-line on nonparty depositions.  But, in any event, you
 3    know, like I said, I really feel like we have been diligent
 4    in trying to schedule these third-party depositions.  It has
 5    just been difficult.
 6              THE COURT:  All right.  Let me hear from Mr.
 7    Miller.
 8              Thank you.
 9              MR. MILLER:  Thank you, Your Honor.
10              It sounds like the only issue in this motion now
11    is just this third-party discovery.  Mr. Lobbin indicates
12    that they don't need anything more from my client, and I
13    think we have been very generous to allow scheduling of our
14    party depositions beyond the deadline to accommodate
15    everybody.  It is only a couple weeks, no big deal.
16              With regard to this third-party discovery, I
17    disagree that they have been diligent in pursuing that and
18    that it would be okay to go out and bother some of our
19    customers and things like that after the deadline.  As Mr.
20    Lobbin indicated, they didn't start sending subpoenas to
21    anybody until September.  In fact, September 23rd was the
22    first time they sent some subpoenas to us for the prior
23    notice function that they are required to do.
24              And, by the way, those subpoenas were sent to us
25    September 23rd, and that is prior to I believe our most
```

```
 1    recent document production, so they can't blame that on
 2    saying we couldn't have sent those subpoenas any earlier
 3    until you gave us the most recent document production.  The
 4    subpoenas they have been pursuing started before the most
 5    recent document production.  If you look at the time line,
 6    these subpoenas were sent over six months after discovery
 7    started in an eight-month discovery period.  They could have
 8    sent them in April, May, June, July, August or early
 9    September and they didn't.  So they begin third-party
10    discovery six months into an eight-month discovery deadline.
11            The third parties they are going after are some
12    military entities, and to subpoena the military takes a long
13    time, and these are entities they knew they could have
14    subpoenaed or were relevant to the case way, way back at the
15    time.  They could have started early and gone through this
16    process they are trying to go through.  The other third
17    parties are entities that we identified in our invalidity
18    contentions where we talk about a prior sale of a wash rack.
19            They recently sent an e-mail saying, oh, we might
20    want to depose these three entities or people.  They were
21    identified as relevant to our invalidity contentions back in
22    May, and this is the first time they have reached out to us
23    and said we may want to depose these guys too.  I don't know
24    why they didn't work towards deposing them in May, June,
25    July, August or September or October.
```

 1            With regard to third-party discovery, Mark says if

 2    it is okay to extend the party depositions a little bit,

 3    why not third party?  Well, I think we are being kind and

 4    we're being accommodating to go ahead and schedule these

 5    witnesses from our company out of time, but that does not

 6    mean we have some obligation to say you can take third-party

 7    discovery however you want, it is okay that you started six

 8    months into the game, and go ahead and subpoena our

 9    customers and bother them and that is going to hurt our

10    relationship and, you know, they had adequate time and they

11    waited too long.  I don't think third-party discovery is

12    justified.

13            Mr. Ford also indicated that there is -- he tried

14    to suggest there are some unresolved issues and that we are

15    still negotiating.  There was an e-mail this morning talking

16    about unresolved issues.  I did get an e-mail from Mr.

17    Lobbin this morning.  What he said is there is a range, a

18    Bates number range in our document production that he said

19    did you ever figure out what that was, and we have already

20    told him what that was.  We sent them a privilege log.

21    Those are privileged documents that were withheld and they

22    are identified on the privilege log.  The other thing they

23    have raised are interrogatories eight and nine, and those

24    interrogatories asked for the identity of witnesses that are

25    knowledgeable about these sales transactions.

```
 1              In our responses we referred to documents under

 2    Rule 33(d) to say you'll find out who is participating in

 3    these documents.  There is e-mail communications and things

 4    that show who in our company is knowledgeable.  Then when

 5    Mr. Lobbin followed up with us weeks ago on these issues, in

 6    the telephone call we informed him it is Cary Smith and Doug

 7    Felice and Alan McCormick, who they have already deposed,

 8    and we told them on the phone that is who it is.  If you

 9    want us to just say that in the interrogatory response we

10    can, but that is who it is, and that is who we have

11    scheduled for depositions the first two weeks of December.

12    So the issue they sent an e-mail on this morning to create

13    the idea that there are some unresolved issues is not true.

14    None of the issues that he raised in the e-mail today are

15    unresolved.

16              The 10,000 pages we recently produced, I want to

17    clarify one thing.  In their reply brief they try to make

18    that sound bigger than it is.  They claim it is 76 percent

19    of our total production.  Well, it is not, because they are

20    ignoring the production we made at the beginning of the case

21    incorporating all of the documents from the other cases that

22    are relevant and that show our design history, that show

23    Riveer's design history, that testimony.  It is 1.5 percent

24    of the total document production we have made.  10,000 pages

25    of documents in this day and age, Your Honor, is not
```

```
 1   difficult to review.  It does not take a lot of time.

 2          You can review that and get ready for a

 3   deposition, and they have proven that by scheduling these

 4   depositions in early December.  That is not an issue.

 5          I don't think that filing and responding to

 6   summary judgment motions during discovery absolves anybody

 7   of their responsibility to pursue discovery by writing a

 8   letter, getting on a phone call, serving some more document

 9   requests, and none of that has to be supplanted by just

10   having to file another brief.  They have got two good law

11   firms on this case.  They have not been diligent and there

12   is no justification for extending the deadline beyond

13   December 1st, especially with regard to just allowing them

14   to just go out and do some third-party discovery that we

15   don't think is that necessary anyway.

16          We certainly don't want to have to deal with

17   third-party discovery and subpoenas beyond December 1st or

18   depositions of third parties beyond December 1st.

19              THE COURT:  Thank you, Mr. Miller.

20              Anything to respond?

21              MR. LOBBIN:  This is Steve Lobbin here.  If I may

22   respond, Your Honor, just briefly to a couple of the points

23   here.  I found a quiet space here.

24          Regarding Hydro's depositions of Riveer's folks,

25   they did serve notices a couple weeks ago and we have agreed
```

```
 1    to schedule those depositions after December 1st.  It is not
 2    just us that needs to go a little bit past December 1st to
 3    complete these party depositions.
 4          The second point is Mr. Miller thinks that we
 5    could have taken a better discovery approach at the
 6    beginning of the discovery period by not only serving party
 7    discovery but serving third-party subpoenas in April.  To me
 8    it is just not consistent with the way I practice, and I
 9    don't think it is consistent with the federal rules to start
10    serving third-party subpoenas for documents and depositions
11    when that information should be available from the party
12    that is involved in the lawsuit.
13          My approach to litigation has always been that if
14    your opponent should have the documents you're looking for,
15    and if your opponent should be able to identify in their
16    discovery who the key people are that you need to depose,
17    well, then you engage in good faith in your party discovery
18    and you figure out who you really need to talk to and you
19    figure out what the documents are that you really need, and
20    then, if necessary, after that you go out and bother third
21    parties with the subpoena process under Rule 45.
22          Your Honor, you know, if I had known that the
23    tactics that they are employing in this litigation were
24    going to be to delay and stall the document production until
25    two weeks before the end of discovery and give us 10,000
```

```
1    pages of documents, then maybe he is right and I should have

2    served the third-party discovery sooner than September.  I

3    was not expecting that.

4           Your Honor, we are in the position of having the

5    third-party discovery that we had to serve because we were

6    not getting the information that we needed from Hydro.  Why

7    weren't we getting that information?  Because they were

8    sitting on it until two weeks ago.  So now we are in the

9    position of having government entities, and they say it is

10   their customers, well, it is our customer too.  These two

11   companies are competitors in a market and they share a lot

12   of customers and they go after the same customers.  These

13   customers, government entities and others, are the third

14   parties that we're seeking documents from and that we'll

15   seek depositions from in short order.

16          All this motion boils down to is will this Court

17   allow us just a little more time to complete our document

18   gathering and to schedule these third-party depositions.  We

19   don't need any more time for party discovery.  So that is

20   really what it boils down to.  We don't think it is improper

21   for us to make that request, and we think that we can

22   complete that in very short order and that is why we brought

23   the motion.

24          If Mr. Ford has anything else to add on some of

25   the other points, that would be fine.
```

```
 1              MR. FORD:  The only thing I was going to add, your

 2     Honor, is just the fact that --

 3              THE COURT:  I think he can hear you better there.

 4              MR. LOBBIN:  The only thing I would add, Your

 5     Honor, is that the extension that we have requested is not

 6     going to have any effect on any other deadlines in this

 7     case.  All the other deadlines -- we are not asking that

 8     this have sort of a domino effect on the other deadlines in

 9     this case and everything else can proceed as it is in the

10     scheduling order.

11              THE COURT:  I have not heard any specificity about

12     what it is that you really feel that you need to do by way

13     of third-party depositions.

14              MR. LOBBIN:  Your Honor, this is Steve Lobbin and

15     I can address that.

16              There are two basic claims in this case.  The

17     first is for patent infringement and the second is for

18     misrepresentations concerning these contract bids that the

19     parties compete with each other against.  The third parties

20     are the companies that award these bids.  We need the

21     documents related to those bids and related to those

22     contracts, which presumably Hydro has now produced two weeks

23     ago, in which the same documents are also in the possession

24     of these third parties, which we are seeking through the

25     subpoena process.
```

```
 1              Now that we're finally getting some of these
 2     documents, we need to take depositions of certain of these
 3     third parties, not all of them, but certain of the third
 4     parties to answer questions regarding the documents, to
 5     answer questions regarding the bid process for those
 6     contracts, and to answer questions regarding how the bids
 7     were evaluated and how those contracts were awarded, and
 8     basically just to confirm our position which justified
 9     bringing those misrepresentation claims under the Lanham Act
10     for how these third parties handled these contracts and
11     these bids and these awards.  That is what it is all about.
12              The patent issues don't have anything to do with
13     it.  The patent issues -- we are ready to go on that.  We
14     don't need any more discovery on those issues.  That is all
15     party discovery.
16              THE COURT:  I still don't have any specificity.
17     Whose deposition do you want to take of a third party?  Can
18     you even give me a name or a title?  Mr. Lobbin, Mr. Ford,
19     either one of you --
20              MR. LOBBIN:  I'm sorry, Your Honor.  There is some
21     noise that is going on here.
22              The third parties that we need depositions of are
23     the Marine Corps at Camp Lejeune, the Army in Barstow,
24     California, the Army at Fort Riley, Kansas -- (inaudible) --
25     which is in Houston, the F.D.I.C., which is in Washington,
```

1    D.C., and C.H.D.I., Inc., which is also in Washington, D.C.

2    Those are the third parties that we'll be subpoenaing for

3    depositions.

4            THE COURT:  Tell me, how many of those have you

5    taken steps to subpoena a witness?

6            MR. LOBBIN:  I have been discussing with their

7    counsel what documents we will be getting in short order,

8    and once I get those documents I will be scheduling the

9    depositions.  I didn't want to impose the burden of

10   deposition subpoenas until I got the documents to make sure

11   that they have some responsive information, so those will be

12   going out today or tomorrow if it would help this situation

13   we're discussing here.  But I was planning on getting those

14   subpoenas out as soon as I got the documents.

15           THE COURT:  As soon as you get the documents?  I

16   thought that you already had the documents.

17           MR. LOBBIN:  I have some.  I have some, but not

18   all, so within this week those deposition subpoenas will go

19   out.

20           THE COURT:  Okay.  Any response to that,

21   Mr. Miller?

22           MR. MILLER:  Yes.

23           Your Honor, the third parties they have identified

24   are not third parties that suddenly became relevant in this

25   case very recently.  Mr. Lobbin says his style of litigation

1    is let's see what we can get from the defendant or the

2    parties before we get to the third parties.  That means you

3    plan your discovery activity accordingly based on the

4    approaching deadline, and you say if that is the case, we

5    need to make sure that we know what we're going to get from

6    Hydro by this date and start third-party subpoenas.

7            In our briefing we highlight that there is this

8    three plus month lag between them saying we think we're

9    going to need to follow up on some of your objections and

10   then actually following up.  If they had been diligent, the

11   most recent production likely would have been made in July

12   and they could have started subpoenaing third parties in

13   July.

14           Now we find out he wants to subpoena them for

15   depositions and has not yet even served a deposition

16   subpoena.  He served document subpoenas on them, but why not

17   serve the deposition at the same time to expedite the

18   matter?  There is not a single third-party deposition

19   subpoena that has actually been prepared on their side.  We

20   have not seen notice of one and we are required to get

21   notice of them before they serve them.

22           The only subpoenas we have seen are requesting

23   documents from third parties.  Whatever subpoenas they have

24   served to get documents from third parties, that is great,

25   and whatever documents they get from those that is great,

1    and if documents come in after the deadline, that is fine.

2    They did their stuff early, but to allow them to start

3    serving third-party subpoenas now for the first time and

4    schedule depositions probably in January or February, that

5    is going to -- it does affect the other deadlines in the

6    case.  When you have got open discovery, the record changes

7    and your ability to move for summary judgment is impacted

8    and everything gets impacted.  Maybe not a trial deadline,

9    but how soon my client can pursue summary judgment is

10   certainly impacted on some of these claims that may still be

11   there following whatever motions we currently have on file.

12         I agree with the Court on the question on no

13   specificity.  They rely on their Rule 56(d) motions to show

14   some sort of diligence, but the law in the Tenth Circuit is

15   pretty clear.  Rule 56(d) requires you to be very specific.

16   You have to say this is the fact we think that we need.

17   This is where we think we can get it.  Here is our plan to

18   get it.  All they really come forward with is there is a lot

19   more discovery to do from some of these entities and that is

20   it.  That does not satisfy Rule 56(d) and it does not

21   satisfy their burden here.

22         I keep hearing comments that these documents we

23   just produced two weeks ago, they say two weeks ago, but our

24   production of documents was October 17th.  It was not just

25   two weeks ago.  It was a little bit longer than that.  They

1  have had plenty of time, and from now they have until the

2  depositions, plenty of time to review all of that.  The

3  third-party discovery is not justified.  They have not been

4  diligent in that respect.

5             THE COURT:  All right.

6             The motion for an extension of time is denied.

7             It would help the Court, by the way, if I did have

8  some kind of specifics.  I hear a lot of speeches about how

9  diligent the plaintiffs have been, but then I don't get any

10  specificity as to what the problem is with getting discovery

11  from any given third party.  When I asked for an example, I

12  didn't get an answer.  When I asked for specificity just a

13  few moments ago as to deponents, the people that needed to

14  be deposed, I got some general references to things like the

15  Army in Barstow.  I need something more than that to ignore

16  and extend a deadline that was set I think almost eight

17  months ago.

18             We have a hearing scheduled for next week.  Let me

19  ask counsel in light of this ruling will that motion be

20  going on as scheduled?

21             MR. MILLER:  That is our plan, yes.

22             MR. LOBBIN:  I believe so, yes.

23             THE COURT:  I may need to move that an hour or two

24  one way or the other on Thursday.  I will let Ron work with

25  you on that.

1      If I could ask the defendants to prepare an order

2  reflecting the Court's ruling today I would appreciate that.

3      We are in recess.

4      MR. MILLER:  Your Honor, do you mind if I raise

5  one issue?

6      THE COURT:  Go ahead.

7      MR. MILLER:  We have been talking about claim

8  construction deadlines, the parties have, and we filed this

9  motion this morning.  It is a motion to compel regarding

10  claim construction deadlines.  Our brief deadline is

11  December 8th, but we have come into something that I think

12  needs some immediate attention from the Court.  Mr. Lobbin

13  indicated that he would let me know when he could file an

14  opposition on an expedited basis, and my request would be

15  that maybe the Court could take it up at the end of the

16  summary judgment hearing next week or whenever it could.  I

17  have courtesy copies.

18      THE COURT:  Your request is that I move that up

19  and allow a speedier process and handle it at oral argument?

20      MR. MILLER:  I just wanted to let you know that it

21  had been filed and it is kind of a time sensitive issue.  It

22  was just filed this morning.  They are going to file an

23  opposition, but if we could maybe get the Court's attention

24  on it early next week, or maybe at the latest at the end of

25  the summary judgment hearing next week, that would be great.

```
 1              THE COURT:  By attention, what do you mean?

 2              MR. MILLER:  Well, I mean, sometimes you file a

 3    motion and then you don't expect the opposition for two

 4    weeks and then a reply in --

 5              THE COURT:  You're going to get the opposition

 6    quicker.  Are you going to be filing a reply?

 7              MR. MILLER:  We won't need to file a reply.

 8              THE COURT:  Then what do you want the Court to do?

 9              MR. MILLER:  If we can get a ruling on it sometime

10    next week --

11              THE COURT:  Okay.

12              MR. MILLER:  -- is what I mean.  It deals with --

13              THE COURT:  You're asking that I rule on it at the

14    latest at the end of the hearing next week?

15              MR. MILLER:  That would be the best, because it

16    deals with a deadline for the summary judgment briefing.

17              THE COURT:  Would that be the best or the worst?

18    Do you want it before that?

19              MR. MILLER:  The best case scenario would be

20    before that, sure.

21              THE COURT:  You're not specific either.  You would

22    like my attention --

23              MR. MILLER:  I could hand this to you now, and --

24              THE COURT:  The most important thing to know is

25    that when the opposition comes in, then it is ripe.
```

1          MR. MILLER:  Yes.

2          THE COURT:  And you're not going to respond with a

3     reply?

4          MR. MILLER:  Correct.

5          THE COURT:  You would like me to look at it as

6     soon as that opposition is in.  Today is Thursday.  Your

7     hearing is next Thursday, right?

8          MR. MILLER:  Right.

9          THE COURT:  Well, I will look at it as soon as the

10    opposition comes in.  I'll rule on it either before the

11    hearing or at the end of the hearing or during the hearing

12    or sometime that Thursday.

13         I have taken just a peek at your summary judgment

14    motions, and I have to say they seem like they might be a

15    tad premature.  Wouldn't it help me a lot to know more about

16    the claim construction issues before I know whether you're

17    entitled to the relief you seek on summary judgment?  You

18    want to tell me that they could have sued us earlier, and I

19    have read that one, at least, and they didn't, and so we

20    have got laches and we have got this Kessler Doctrine coming

21    into play, and we have got this other requirement that they

22    should have sued us then under res judicata or whatever it

23    is.  I just barely scanned them.

24         Then their opposition says, well, it is not

25    exactly the same invention and you need to know about the

30

```
 1   differences in the Hydro product since that previous
 2   lawsuit.  I am thinking to myself, well, that does sound
 3   like an issue of fact, and unless I know more about the
 4   inventions that existed back during the earlier litigation,
 5   and the changes that have been made to your apparatus after
 6   that, I don't know how I'm going to be able to rule on those
 7   res judicata and laches type of motions.  I just wondered if
 8   it wasn't all related to things like claim construction.
 9            MR. MILLER:  I don't think it is.  We put in the
10   affidavit we attached to that motion, we put in the history
11   of our products to explain this is what our product is and
12   how it has changed over the years so that you know that
13   there is no material change that relates to any patent
14   claims.
15            THE COURT:  That is what you say, but that is not
16   what they say.
17            MR. MILLER:  Sure.
18            Well, they are not going to agree with our
19   position, but the way we did our summary judgment strategy
20   is we picked issues that didn't require claim construction
21   to file early, and then the local patent rules require us to
22   file the summary judgment motions that depend on claim
23   construction with our claim construction briefs.  So we have
24   got motions for summary judgment coming in December on
25   noninfringement, but these were more procedural type things
```

1    that we are just saying they have known about our products

2    and this patent for 12 years and didn't sue us.

3            THE COURT:  All right.  Just as a general

4    proposition if their opposition is that they are using

5    something different now than they used before, in order for

6    me to figure that out, I have got to know what your

7    invention or what your machine or what your apparatus was

8    before and see if the one that they are complaining about

9    now is different enough to make this suit different from the

10   first lawsuit, and that seems to me a lot like I'm going to

11   get into examining the machine and examining the apparatus,

12   and not just the apparatus itself, but, as you would know

13   better than me, that that may involve seeing what was

14   actually patented and what was claimed in their patent and

15   whether your apparatus appears to infringe that.  I don't

16   know.  I am just thinking out loud, and I was yesterday when

17   I read these, and I don't know that this is going to be easy

18   to do.

19           MR. MILLER:  That is helpful.

20           I think on that front when they are talking about

21   changes, I think one thing is we can go back to that

22   specificity requirement, and they have got to identify a

23   specific change they think is made that is materially

24   different.  We can talk about a specific change if they

25   identify one beyond just saying, well, there have been some

```
 1    changes and we can't identify them, but there have been some
 2    changes.  That is not going to be sufficient.
 3            I plan to have some very punchy, colorful charts
 4    that will go through the history of these products over
 5    time, and it is in the declaration there, but I'm going to
 6    put together a good argument chart binder that will go
 7    through chart by chart and say 1990s, and here are the wash
 8    pads, and 2000s --
 9            THE COURT:  Do I have that now in the briefing?
10            MR. MILLER:  No.  Those are going to be
11    demonstratives that I'm preparing right now.
12            THE COURT:  So you expect me to sort this all out
13    while you are arguing?
14            MR. MILLER:  I promise I will make it easy.
15            THE COURT:  I don't know about this summary
16    judgment strategy of yours.  Tell me this.  If, and I surely
17    haven't, but if I ruled in your favor on res judicata, and
18    that is how you style it, right?
19            MR. MILLER:  Right.  Claim preclusion, laches or
20    Kessler Doctrine.
21            THE COURT:  Okay.
22            MR. MILLER:  Three options.
23            THE COURT:  I didn't know if you said res judicata
24    or claim preclusion.  It is the same thing.  It could have
25    been brought earlier and it wasn't, right?
```

```
1              MR. MILLER:  Right.

2              THE COURT:  If I rule in your favor on that, what

3    is left?

4              MR. MILLER:  Well, there are three patents and

5    only one of them is at issue in the laches --

6              THE COURT:  Okay.

7              MR. MILLER:  -- only one of the three.

8              That brings up a good point.  One thing we're

9    struggling with here is if that summary judgment motion

10   prevails, then the parties don't need to go through claim

11   construction on that patent anymore.

12             THE COURT:  Well, that is what had me mostly

13   confused.

14             MR. MILLER:  Right.

15             That is why we filed it early.  This is our

16   thought process.  If we file this early enough and find out

17   if we can win on the claim preclusion and laches arguments,

18   then we can avoid briefing claim construction which starts

19   December 8th.  So if the Court has any inclination of

20   granting that at the hearing next week, I think one request

21   we would have is could we postpone claim construction for

22   just that patent and not the other two --

23             THE COURT:  Until I have ruled?

24             MR. MILLER:  -- until you have ruled, so that the

25   parties don't unnecessarily waste their time doing that
```

1   stuff?

2          THE COURT:  Well, I obviously need to read more to

3   get better educated on how many patents there are, but I

4   will do that between now and next Thursday.

5          Thank you for your arguments today.

6          Anything else?

7          MR. MILLER:  No.

8          THE COURT:  Thank you.

9          We'll be in recess.

10          (Proceedings concluded.)

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25