Stephen M. Lobbin (admitted *pro hac vice*)
**The Eclipse Group LLP**
2020 Main Street, Suite 600
Irvine, California  92614
Tel:  949.851.5000

Mark W. Ford (10659)
Rachel Jacques (13250)
**Maschoff Brennan**
1389 Center Drive, Suite 300
Park City, Utah  84098
Tel:  435.575.1387

*Attorneys for Plaintiff Petter Investments, Inc. d/b/a RIVEER*

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF UTAH

| | |
|---|---|
| **PETTER INVESTMENTS, INC.** d/b/a **RIVEER**, a Michigan corporation,<br><br>        Plaintiff,<br><br>vs.<br><br>**HYDRO ENGINEERING, INC.**, a Utah corporation, and **CALIFORNIA CLEANING SYSTEMS**, a California company,<br><br>        Defendants. | **PLAINTIFF RIVEER'S OPPOSITION TO DEFENDANTS' (SECOND) MOTION FOR SUMMARY JUDGMENT ON PLAINTIFF'S FIRST CLAIM FOR RELIEF**<br><br><br>Civil Case No. 2:14-CV-00045<br><br>Honorable District Judge Dee Benson |
| AND RELATED COUNTERCLAIMS | |

## TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ................................................................................................ 1

II.   BACKGROUND ................................................................................................ 3

  III.   RESPONSE TO STATEMENT OF ELEMENTS AND UNDISPUTED
  MATERIAL FACTS ............................................................................................ 4

    A.   Riveer's Response To Hydro's Statement Of Elements ................................. 4

    B.   Riveer's Response To Hydro's Statements Of Undisputed Facts ................. 5

IV.   ARGUMENT .................................................................................................... 9

    A.   The Accused Infringing Hydropad System Includes The Claimed "Frame" ............. 11

    B.   The Hydropad System Includes The Claimed "Bottom Surface" .............................. 11

    C.   The Hydropad System Includes The Claimed "Grate" ............................................... 12

    D.   The Hydropad System Includes The Claimed "Pump [that] is a vacuum" ................ 13

    E.   The Hydropad System Includes The Claimed "Sloped Tray" .................................... 14

    F.   The Hydropad System Includes The Remaining Elements Of Claim 1 ..................... 15

    G.   There Is No Waiver Or Estoppel Concerning The Doctrine Of Equivalents ............. 15

V.    CONCLUSION .................................................................................................. 17

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Atlas Powder Co. v. E.I. Dupont de Nemours & Co.*
   750 F.2d 1569 (Fed. Cir. 1984) .................................................................................. 4

*Carter v. Variflex, Inc.*
   2000 U.S. Dist. LEXIS 22999 (C.D. Cal. Apr. 18, 2000) ...................................... 17

*Exxon Chemical Patents v. Lubrizol Corp.*
   137 F.3d 1475 (Fed. Cir. 1998) .................................................................. 2, 15, 16

*Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*
   535 U.S. 722 (2002).............................................................................................. 5, 10

*Gemalto S.A. v. HTC Corp.*
   754 F.3d 1364 (Fed. Cir. 2014) .................................................................................. 5

*Intervet Inc. v. Merial Ltd.*
   617 F.3d 1282 (Fed. Cir. 2010) ................................................................................ 10

*Lifescan, Inc. v. Home Diagnostics*
   76 F.3d 358 (Fed. Cir. 1996) ...................................................................................... 9

*National Presto Industry, Inc. v. West Bend Co.*
   76 F.3d 1185 (Fed. Cir. 1996) .................................................................................... 4

*Nazomi Communications, Inc. v. Samsung Telcoms., Inc.*
   2013 U.S. Dist. LEXIS 122869 (N.D. Cal. Aug. 28, 2013) ................................ 2, 16

*Optical Disc Corp. v. Del Mar Avionics*
   208 F.3d 1324 (Fed. Cir. 2000) ................................................................................ 10

*Robocast, Inc. v. Microsoft Corp.*
   21 F. Supp. 3d 320 (D. Del. 2014).................................................................... 1, 15

*Warner-Jenkinson Co. v. Hilton Davis Chemical Co.*
   520 U.S. 17 (1997)....................................................................................................... 5

*Yellowbear v. Lampert*
   741 F.3d 48 (10th Cir. 2014) ...................................................................................... 9

**Other Authorities**

DUCivR 56-1 ....................................................................................................... 9, 10

Fed. R. Civ. P. 56.................................................................................................... 13

Pursuant to DUCivR 56-1(c), Plaintiff Petter Investments, Inc. d/b/a RIVEER ("Riveer") hereby opposes the (Second) Motion for Summary Judgment on Plaintiff's First Claim for Relief (Dkt. 179) filed by Defendants ("Hydro").

## I.   INTRODUCTION

Although Hydro agrees with Riveer that "the asserted patent claims [are] very simple" (*see* Dkt. 176 at 4), by its motion Hydro proposes that the equally-simple mechanical structure of its accused infringing "Hydropad" modular wash rack systems cannot satisfy three particular limitations of the asserted claims of Riveer's asserted '298 patent—a "frame," a "bottom surface," and a "grate."[1]   Hydro presumes incorrectly that its proposed claim construction already has been adopted,[2] and ignores the infringement analysis if this Court adopts Riveer's proposed claim construction.[3]   Also, despite never asserting non-infringement under the doctrine of equivalents in its contentions under LPR 2.4(a) or LPR 3.2,[4] Hydro proposes that no

---

[1] Riveer agrees with Hydro that "Claim 1 is the only independent claim of the '298 patent" (Dkt. 179 at 24), and as such, the non-infringement motion necessarily fails if a reasonable jury—viewing the evidence in the light most favorable to Riveer—could find infringement of Claim 1.

[2] Riveer is concerned about statements by Hydro and its counsel at recent depositions suggesting that the outcome of this entire case is a foregone conclusion.  Riveer is unaware of any views of this Court on the merits of this case which would support Hydro's unprofessional "warnings" about prejudicial favor toward Hydro's contentions in this litigation.

[3] Because Hydro includes several claim construction arguments in its motion, particularly concerning the patent prosecution history, Riveer incorporates herein all of its opposition arguments from its Response to Defendants' Motion for Claim Construction, also filed today.

[4] Hydro complains about the detail provided in Riveer's LPR 2.3 and LPR 3.1 infringement contentions, but Riveer made clear its assertion of the doctrine of equivalents as an *alternative* infringement theory—*only if* Riveer's proposed claim construction was not adopted by the Court.  As one court explained recently, "given the Court's claim construction, a doctrine of equivalents argument might be available as an alternative to literal infringement." *Robocast, Inc. v. Microsoft Corp.*, 21 F. Supp. 3d 320, at *11-16 (D. Del. 2014) ("Microsoft [] argues that Robocast cannot put forth a doctrine of equivalents argument [as] untimely . . . [but] Robocast's *doctrine of equivalents arguments are based on the Court's claim construction rulings*, and Microsoft was on notice.") (emphasis added); *see also Exxon Chem. Patents v. Lubrizol Corp.*,

reasonable jury—viewing the evidence in the light most favorable to Riveer—could find the Hydropad contains structurally equivalent features to these three elements recited in the claims.

What is not simple is the illogical and legally-flawed reasoning Hydro postulates as supporting non-infringement.  For example, Hydro improperly proposes that the claim terms at issue should be further limited by (a) the details of the particular structure of the preferred embodiment disclosed in the patent, (b) self-serving and irrelevant statements from Hydro's own subsequent, unrelated patent, and (c) irrelevant statements—again about Hydro's patents, not Riveer's '298 patent—from the Michigan court in a prior case.  In appropriate context, each of Hydro's arguments fails to negate the evidentiary support for a jury finding of literal infringement of Claim 1, or at the very least, infringement under the doctrine of equivalents.  Based on a proper claim construction and infringement analysis concerning the features of

---

137 F.3d 1475, 1479 (Fed. Cir. 1998) ("Once the district judge construed the claim language in Exxon's favor, the doctrine-of-equivalents issue in the case became moot [and] Exxon could not realistically be expected to request alternative jury instructions asking for an advisory verdict on whether the patent would be infringed under the doctrine of equivalents on Lubrizol's proposed claim construction.").  As LPR 2.3(d) states, the party asserting infringement should state "whether each element of each asserted claim is claimed to be present . . . literally **_or_** under the doctrine of equivalents."  At the contention stage, presuming its proposed claim construction would be confirmed as correct, only literal infringement (not the doctrine of equivalents) was at issue.  As Riveer made clear in its contentions, "If a particular element cannot be satisfied literally under whatever claim construction is reached, Plaintiff reserves the right to assert the doctrine of equivalents (*i.e.*, that the accused and claimed elements are equivalent because of only insubstantial differences between them, and/or because the accused element matches the function, way, and result of the claimed element)."  Without a claim construction, or even the contentions of the parties regarding claim construction, Riveer could not possibly provide a complete, alternate "doctrine of equivalents" analysis under the innumerable possible outcomes of the claim construction process.  *See Nazomi Communs., Inc. v. Samsung Telcoms., Inc.*, 2013 U.S. Dist. LEXIS 122869, at *20 (N.D. Cal. Aug. 28, 2013) (noting that Patent Local Rule (N.D. Cal.) 3-6 allows amendments to infringement contention by order of the court upon a timely showing of good cause, including "a claim construction by the [c]ourt different from that proposed by the party seeking amendment"); *see also Exxon* (vacating denial of motion for a new trial on infringement under the doctrine of equivalents).  Moreover, Hydro never complained about the detail provided in Riveer's infringement contentions (which were served eight months ago on April 28, 2014), nor did Hydro ever request further explanation or supplementation.

Hydro's accused infringing wash rack systems[5]—particularly when viewed in the light most favorable to Riveer—Hydro's summary judgment request should be denied.

## II.    BACKGROUND

Hydro makes several misleading statements in its "Background" section requiring clarification and correction.  *See* Dkt. 179 at 10.  First, Hydro states that "[i]n 2000, Hydro developed a new wash pad design that used an impervious, corrugated top wash surface rather than a grate."  *Id.*  While this may be true, it is undisputed that Hydro repeatedly redesigned its Hydropad in the years since, in several respects resulting in the infringement asserted here.  For example, whereas older designs had a separate "side trough," Hydro now integrates its side trough within a unitary frame for its wash pad systems.  Also, Hydro has used a much tighter "grate" structure in recent years.  It is these new designs, implemented since 2007, that are the accused infringing products.  *See* Dkt. 96 at 10; *see also* Dkt. No. 93 at 4 ¶ 8.  Second, Hydro implies that the claims of the '298 patent "require[] the operator to interrupt the washing process, remove all vehicles or equipment from the wash pad, and lift up the grate (or a portion of the grate) to access the basin and clean out the solid debris that had accumulated."  Dkt. 179 at 10.  Hydro does not cite to the '298 patent for this proposition, however, because there is no such requirement limiting the asserted claims.

Third, Hydro implies that its subsequent patents supposedly "protecting its novel impervious top, side gutter design" insulate Hydro from infringement of Riveer's prior '298 patent.  *Id.*  This proposition is legally flawed, as a matter of fundamental patent law, because

---

[5] While Riveer appreciates Hydro's recent willingness to disclose in its opening brief (not filed under seal) the technical details of its accused infringing Hydropad wash rack systems, Riveer's infringement analysis has been hampered by Hydro's improper over-designation as "Attorneys' Eyes Only" of the same information when it was produced in discovery. For example, Riveer could not even review its own infringement contentions because Hydro improperly designated its own system "installation manual" as AEO.  *See* A1-29.

even a patentable "improvement" to a prior patented design does not dictate non-infringement. Rather:

> The grant of a separate patent on the accused device does not automatically avoid infringement, either literal or by equivalency.  Improvements or modifications may indeed be separately patentable if the requirements of patentability are met, yet the device may or may not avoid infringement of the prior patent.

*National Presto Indus., Inc. v. West Bend Co.*, 76 F.3d 1185, 1191-92 (Fed. Cir. 1996); *see also*

*Atlas Powder Co. v. E.I. Dupont de Nemours & Co.*, 750 F.2d 1569, 1580-81 (Fed. Cir. 1984)

(finding equivalent infringement despite the fact that the accused device was separately

patented).  Instead of developing a non-infringing design for its own wash rack systems, as

compared to the grate/basin modular wash rack design covered by the claims of the '298 patent,

Hydro simply collapsed its grate and basin together and calls it an "impervious structure . . . with

upper and lower portions" as the Michigan court had agreed was the same, or at least an

equivalent, design.  *See* Dkt. 96 at 10.

## III.  RESPONSE TO STATEMENT OF ELEMENTS AND UNDISPUTED MATERIAL FACTS

### A.  Riveer's Response To Hydro's Statement Of Elements

Pursuant to DUCivR 56-1(c)(2)(A), Riveer agrees with Hydro that the inquiry for **literal**

**infringement** is "whether the claimed invention is infringed (*i.e.*, whether the claim as properly

interpreted covers the accused product)."[6]  Dkt. 179 at 11.  As the Supreme Court has made

clear, however, "a product or process that does not literally infringe upon the express terms of a

patent claim may nonetheless be found to infringe if there is 'equivalence' between the elements

of the accused product or process and the claimed elements of the patented invention."  *Warner-*

---

[6] Hydro's motion presumes that this Court will adopt Hydro's proposed claim construction in all respects.  By contrast, while Riveer's opposition presents its case for literal infringement pursuant to Riveer's proposed claim construction, the doctrine of equivalents may apply depending on the claim construction adopted by the Court; thus, Riveer may assert the doctrine of equivalents as well.  *See supra* note 3.

*Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 21 (1997).  As the doctrine of equivalents

recently was explained further by the Federal Circuit:

> A device that does not literally infringe a claim may infringe under the doctrine of equivalents.  *Energy Transp. Grp., Inc. v. William Demant Holding A/S*, 697 F.3d 1342, 1352 (Fed. Cir. 2012).  We have held that "a patentee may prove that a particular claim element is met under the doctrine of equivalents . . . by showing that 'the accused product performs substantially the same function in substantially the same way with substantially the same result' as claimed in the patent."  *Id.* (quoting *Crown Packaging Tech., Inc. v. Rexam Bev. Can Co.*, 559 F.3d 1308, 1312 (Fed. Cir. 2009)); *see also Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 39-40, 117 S. Ct. 1040, 137 L. Ed. 2d 146 (1997).

*Gemalto S.A. v. HTC Corp.*, 754 F.3d 1364, 1373 (Fed. Cir. 2014).  The purpose of the doctrine

of equivalents is to prevent "simple acts of copying" or "[u]nimportant and insubstantial

substitutes for certain elements" from avoiding liability.  *Festo Corp. v. Shoketsu Kinzoku Kogyo*

*Kabushiki Co.*, 535 U.S. 722, 731 (2002).

## B.     Riveer's Response To Hydro's Statements Of Undisputed Facts

Pursuant to DUCivR 56-1(c)(2)(B), Riveer disputes many of Hydro's purportedly

"undisputed material facts," including as immaterial.  Accordingly, Riveer responds to Hydro's

Paragraphs 1-15 (Dkt. 179 at 11-21) as follows:

1.     Undisputed.

2.     Undisputed.

3.     Disputed, including Hydro's mischaracterization of the record (without citation)

in its footnote 4.  Claims 2 and 3 recite, "wherein said pump is a vacuum" rather than the

"vacuum pump" recited in the claims of the '792 patent.

4.     Undisputed.

5.     Disputed.  Claim construction is a legal not factual issue, and Riveer's claim

construction positions are set forth in its Cross-Motion for Claim Construction.  *See* Dkt. 187.

6.     Undisputed, but the features of "Hydro's 1990's products" are irrelevant.

7.       Undisputed but irrelevant to infringement.

8.       Undisputed but irrelevant to infringement.

9.       Disputed that "the top of the [sic] Hydro's new containment system" was not "a grate," but otherwise undisputed (but irrelevant to infringement).  *See* Ex. 2.[7]

10.      Undisputed but irrelevant to infringement.

11.      Disputed that the design discussed did not include a "grate" or "basin," but otherwise undisputed (but irrelevant to infringement).

12.      Undisputed but irrelevant to infringement.

13.      Undisputed but irrelevant to infringement.   Riveer disputes Hydro's mischaracterization of the record (without citation) in its footnote 6.  Hydro also cites nothing in the '298 patent for its irrelevant assertions.

14.      Undisputed but irrelevant to infringement.

15.      Disputed that the design discussed does not include a "grate" or "basin," but otherwise undisputed.

Pursuant to DUCivR 56-1(c)(2)(C)-(D), the following additional material facts demonstrate that there are genuine issues for trial:

16.      Hydro disputes that its accused infringing "Hydropad" wash rack system meets five disputed limitations recited in Claim 1-4 of the '298 patent, which are: (a) "***a frame*** having a first wall, a second wall, a third wall, a fourth wall, each wall having an inner and an outer

---

[7] Exhibit 2 (attached to the Declaration of Stephen M. Lobbin filed herewith) is a highlighted excerpt from the Deposition of Hydro's Vice President Alan McCormick (who also was Hydro's principal Rule 30(b)(6) designee).  In his testimony, McCormick admits that the wash surface of the designs shown in Deposition Exhibit 10 (at page RIV001114, included in Exhibit A hereto), which is the same design shown in Hydro's Paragraph 9—as well as the accused infringing design—indeed is a "grate."  This directly contradicts and impeaches Hydro's litigation-induced contention that the accused infringing Hydropad is missing the claimed "grate."

surface," (b) "*a bottom surface* extending between the inner surfaces of said first, second, third, and fourth walls of said frame to define a basin for collecting water used to clean the item as well as any debris removed from the item," (c) "*a grate* operatively associated with said first, second, third, and fourth walls for supporting the item to be washed above said bottom surface while allowing water and any debris to flow into said basin," (d) "*a pump [that] is a vacuum* [that] draws water and debris from said basin" (Claims 2-3), and (e) "said frame including *a sloped tray*" (Claim 4).  *See* Hydro Motion; *see also* Paulus Decl. ¶ 16.

17.     The claimed "frame" is present in the accused infringing Hydropad systems. Because of the new, integral "side trough" of the Hydropad system, the frame includes both the "inside" and "outside" longer walls of the side trough, both of which function to frame the wash rack.  The fourth wall of the frame is satisfied by the outer wall of the side trough and the inner wall of the side trough.  Both of these walls are part of the frame.  *See* Paulus Decl. ¶ 17.

18.     The claimed "bottom surface" that "define[s] a basin for collecting water" is present in the accused infringing Hydropad systems.  In the Hydropad system, the water channels or "groove" portions between and below the surface grating of the Hydropad perform the claimed function of "defining a basin for collecting water" in the same way as the basin shown in the preferred embodiment of the '298 patent, to achieve the same result of diverting wash water below the surface of the grating on which an item being washed rests, so that it may flow freely toward the side trough and thereafter through the drainage fitting and the tube by the action of the pump.  Therefore, even if not "literally" satisfied, a reasonable jury could find that the claimed "bottom surface" is satisfied by Hydro's equivalent design of its water channels or "grooves" that together "define a basin for collecting water."  *See* Paulus Decl. ¶ 18.

19.     The claimed "grate" is present in the accused infringing Hydropad systems.  In the Hydropad system, the upper portions of the grating perform the claimed function of "supporting the item to be washed above said bottom surface while allowing water and any debris to flow," in the same way as the grate shown in the preferred embodiment of the '298 patent, to achieve the same result.  ***Also, Hydro has admitted its wash rack surface is a grate***.  *See* Ex. 2 and *supra* note 7.  Therefore, even if not "literally" satisfied, a reasonable jury could find that the claimed "grate" is satisfied by Hydro's equivalent design of its support surface including lower water channels or "grooves" as the bottom surface.  *See* Paulus Decl. ¶ 19.

20.     The claimed "pump [that] is a vacuum" (Claims 2-3) is present in the accused infringing Hydropad systems.  An engineer of skill in the art would consider the pump used in the Hydropad system to be "a vacuum draw[ing] water and debris from said basin" because even a "sump pump" technically uses a vacuum in the same way as the pump disclosed in the preferred embodiment of the '298 patent, to achieve the same result, because a sump pump uses a centrifugal pump to move water.  When the motor is on, it causes a screw- or fan-like device called an impeller to turn.  Using centrifugal force, the spinning impeller forces water toward the sides of the pipe, creating a low-pressure area at its center thus drawing a vacuum.  Water from the pit (trough) rushes to fill the void, and the impeller's spinning action pushes it out through the pipe as seen on the left side of Figure 6 of the '298 patent.  Therefore, even if not "literally" satisfied, a reasonable jury could find that the claimed "pump [that] is a vacuum" is satisfied by Hydro's equivalent design of its "sump pump."  *See* Paulus Decl. ¶ 20.

21.     The claimed "sloped tray" (Claim 4) is present in the accused infringing Hydropad systems.  In the Hydropad system, the water channel groove portions between and below the surface grating of the Hydropad are sloped to allow water to flow in the direction

toward the side trough, in the same way as the basin shown in the preferred embodiment of the '298 patent, to achieve the same result of diverting wash water below the surface of the grating on which an item being washed rests, so that it may flow freely toward the side trough and thereafter through the drainage fitting and the tube by the action of the pump.  Therefore, even if not "literally" satisfied, a reasonable jury could find that the claimed "sloped tray" is satisfied by Hydro's equivalent design of its water channels or "grooves" that divert wash water below the surface of the grating and toward the side trough.  *See* Paulus Decl. ¶ 21.

22.     The remaining elements of Claim 1 of the '298 patent are not disputed by Hydro, and nonetheless are satisfied in the accused infringing Hydropad systems.  These elements are the claimed "***drainage fitting*** . . . to allow water collected in said basin to flow out," "***coupling means*** for coupling said modular wash rack to another modular wash rack," "***a tube*** having a first end connected to said drainage fitting," and "***a pump*** for causing the water to flow from the basin."  *See* Paulus Decl. ¶ 22.

## IV.     ARGUMENT

Summary judgment is proper only where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "At summary judgment, of course, . . . the facts in the record are viewed in the light most favorable to . . . the non-movant," which here is Riveer.  *Yellowbear v. Lampert*, 741 F.3d 48, 56-57 (10th Cir. 2014).

On a fact-intensive issue such as patent infringement, particularly infringement under the doctrine of equivalents, "When there is substantial evidence to support a factual conclusion, summary judgment to the contrary is improper."  *Lifescan, Inc. v. Home Diagnostics*, 76 F.3d 358, 362 (Fed. Cir. 1996).  For example, an expert's reasonable analysis finding infringement

typically defeats summary judgment.  *See Optical Disc Corp. v. Del Mar Avionics*, 208 F.3d

1324, 1336 (Fed. Cir. 2000).  As the Federal Circuit explained in *Optical Disc*:

> A reasonable fact finder could find infringement by equivalents because, based on the [expert] report, a reasonable fact finder could find the differences between the allegedly infringing device and the claimed invention to be insubstantial.  We therefore conclude that the grant of summary judgment of noninfringement under the doctrine of equivalents was improper.

*Id.*  Finally, on questions of asserted "prosecution history estoppel" concerning the doctrine of

equivalents:

> The applicability of prosecution history estoppel does not completely bar the benefit of the doctrine of equivalents from all litigation related to the amended claim.  There is no reason why a narrowing amendment should be deemed to relinquish equivalents beyond a fair interpretation of what was surrendered.  The scope of the estoppel must fit the nature of the narrowing amendment.  A district court must look to the specifics of the amendment and the rejection that provoked the amendment to determine whether estoppel precludes the particular doctrine of equivalents argument being made.

*Intervet Inc. v. Merial Ltd.*, 617 F.3d 1282, 1291 (Fed. Cir. 2010) (citing and quoting *Festo*

*Corp. v Shoketsu Kinzoku Kogyo Kabushiki Co.*, 535 U.S. 722, 740 (2002)).

    As its basis for requesting summary judgment, Hydro disputes that its accused infringing

"Hydropad" wash rack system meets five disputed limitations recited in Claim 1-4 of the '298

patent, which are: (a) "*a frame* having a first wall, a second wall, a third wall, a fourth wall, each

wall having an inner and an outer surface," (b) "*a bottom surface* extending between the inner

surfaces of said first, second, third, and fourth walls of said frame to define a basin for collecting

water used to clean the item as well as any debris removed from the item," (c) "*a grate*

operatively associated with said first, second, third, and fourth walls for supporting the item to be

washed above said bottom surface while allowing water and any debris to flow into said basin,"

(d) "*a pump [that] is a vacuum* [that] draws water and debris from said basin" (Claims 2-3), and

(e) "said frame including *a sloped tray*" (Claim 4).  The accused infringing Hydropad system, however, meets each of these limitations, at the very least under the doctrine of equivalents.

## A.    The Accused Infringing Hydropad System Includes The Claimed "Frame"

The claimed "frame" is present in the accused infringing Hydropad systems.  Because of the integral "side trough" of the Hydropad system, the frame includes both the "inside" and "outside" longer walls of the side trough, both of which function to frame the wash rack.  The fourth wall of the frame is satisfied by the outer wall of the side trough and (alternatively) the inner wall of the side trough, which is integrally installed against one of the walls of the wash floor, also part of the frame.  Both of these side trough walls are part of the frame.  *See* Paulus Decl. ¶ 17.[8]

## B.    The Hydropad System Includes The Claimed "Bottom Surface"

The claimed "bottom surface" that "define[s] a basin for collecting water" is present in the accused infringing Hydropad systems.  In the Hydropad system, the water channels or "groove" portions between and below the surface grating of the Hydropad perform the claimed function of "defining a basin for collecting water" in the same way as the basin shown in the preferred embodiment of the '298 patent, to achieve the same result of diverting wash water below the surface of the grating on which an item being washed rests, so that it may flow freely toward the side trough and thereafter through the drainage fitting and the tube by the action of

---

[8] Hydro asserts that "Element 2" in Riveer's infringement contentions did not sufficiently identify the "frame" in the accused infringing Hydropad.  *See* Dkt. 179 at 25.  But Hydro's complaint about the contentions strains credulity, because these wash racks are very simple structures, particularly the "frame" element.  As discussed in the Paulus Declaration filed herewith, "Element 2" in Riveer's infringement contentions points directly to both the outer and inner walls of the Hydropad "side trough," as well as the remaining three walls of the supporting structure of the Hydropad (obviously included by implication in the "cut-away" drawing provided by in Hydro's Operator's Manual).  *See* Paulus Decl. ¶ 17, Fig. 1.  Even Hydro gets it, admitting on the next page of its brief that "the support structures that define a perimeter around the . . . Hydropad is a frame."  Dkt. 179 at 26.

the pump.  Therefore, even if not "literally" satisfied, a reasonable jury could find that the claimed "bottom surface" is satisfied by Hydro's equivalent design of its water channels or "grooves" that together "define a basin for collecting water."  *See* Paulus Decl. ¶ 18.

      **C.**     **The Hydropad System Includes The Claimed "Grate"**

As Hydro already admitted at the outset of this litigation, the claimed "grate" is present in the accused infringing Hydropad systems.  *See supra* note 6.  Indeed, in the Hydropad system, the upper portions of the grating perform the claimed function of "supporting the item to be washed above said bottom surface while allowing water and any debris to flow into [the] basin," in the same way as the grate shown in the preferred embodiment of the '298 patent, to achieve the same result.  ***Also, Hydro admitted its wash rack surface is a grate***.  *See* Ex. 2 and *supra* note 7.  Therefore, even if not "literally" satisfied, a reasonable jury could find that the claimed "grate" is satisfied by Hydro's equivalent design of its support surface including lower water channels or "grooves" as the bottom surface.  *See* Paulus Decl. ¶ 19.

Hydro argues that its "solid piece of corrugated steel" could never be viewed by a reasonable jury as including the claimed "grate" because it "does not allow water or debris or anything to flow *through it* into a basin."  Dkt. 179 at 28 (emphasis in original).  But just like real-world cooking grates such as the popular "George Foreman Grill," which allow liquid to ***flow into*** the channels between and below the grate supports for the item being cooked (or here, washed), the claims do not require any ***flow through*** anything.  Rather, the claimed grate need only "allow[] water and any debris to ***flow into*** [the] basin."  This distinction emphasizes the error of Hydro's wishful re-construction of the claims of the '298 patent to limit the claimed "grate" to a ***porous*** structure.

Hydro also attempts to distance itself from the evolution of its own wash pad designs by disputing that its newer, accused infringing Hydropad design is simply a compressed and

collapsed (and equivalent) version of the preferred embodiment of the '298 patent, or what Hydro calls its own prior "grate/basin wash pad." As Hydro admits, "In the 1990's, both [Riveer] and Hydro made and sold . . . a grate/basin wash pad," such as the preferred embodiment of the '298 patent. *See* Dkt. 179 at 9. Claiming its current "corrugated top" as an improvement to the grate/basin design, however, does not change the fact that all Hydro's new design did was collapse the grate and basin of the prior design into one piece of steel, rather than two pieces. This singular difference does not make for a non-infringing design, just as "improvement" patents often still infringe prior, broader patents. *See supra*. Moreover, the Michigan court's discussion of Hydro's ***patent*** as compared to an embodiment in ***the '792 patent*** has no bearing on the issue of whether Hydro's ***product*** infringes ***the '298 patent***. The issues are completely unrelated, both legally and factually.

### D.   The Hydropad System Includes The Claimed "Pump [that] is a vacuum"

The claimed "pump [that] is a vacuum" (Claims 2-3) is present in the accused infringing Hydropad systems. An engineer of skill in the art would consider the pump used in the Hydropad system to be "a vacuum draw[ing] water and debris from said basin" because even a "sump pump" technically uses a vacuum in the same way as the pump disclosed in the preferred embodiment of the '298 patent, to achieve the same result, because a sump pump uses a centrifugal pump to move water. When the motor is on, it causes a screw- or fan-like device called an impeller to turn. Using centrifugal force, the spinning impeller forces water toward the sides of the pipe, creating a low-pressure area at its center thus drawing a vacuum. Water from the pit rushes to fill the void, and the impeller's spinning action pushes it out through the pipe as seen on the left side of Figure 6 of the '298 patent. Therefore, even if not "literally" satisfied, a reasonable jury could find that the claimed "pump [that] is a vacuum" is satisfied by Hydro's equivalent design of its "sump pump." *See* Paulus Decl. ¶ 20.

Hydro's sole argument for non-infringement of Claims 2 and 3 is its request that this Court "rubber-stamp" the Michigan court's discussion of a separate claim term—"vacuum pump"—from another patent (the '792 patent), as comparted to a prior accused infringing product from a case years ago. But Claims 2 and 3 of the '298 patent recite "wherein said pump is a vacuum" rather than the "vacuum pump" recited in the claims of the '792 patent. More to the point, from a technical perspective, Hydro's pump used in its accused infringing products indeed "is a vacuum." *See* Paulus Decl. ¶ 20. Hydro does not and cannot contend that the decision made by the Michigan judge precludes a technically correct decision being made here.

### E.   The Hydropad System Includes The Claimed "Sloped Tray"

The claimed "sloped tray" (Claim 4) is present in the accused infringing Hydropad systems. In the Hydropad system, the water channel groove portions between and below the surface grating of the Hydropad are sloped to allow water to flow in the direction toward the side trough, in the same way as the basin shown in the preferred embodiment of the '298 patent, to achieve the same result of diverting wash water below the surface of the grating on which an item being washed rests, so that it may flow freely toward the side trough and thereafter through the drainage fitting and the tube by the action of the pump. Therefore, even if not "literally" satisfied, a reasonable jury could find that the claimed "sloped tray" is satisfied by Hydro's equivalent design of its water channels or "grooves" that divert wash water below the surface of the grating and toward the side trough. *See* Paulus Decl. ¶ 21.

Hydro's argument about "claim differentiation" misapprehends the doctrine. While Hydro contends that "the 'sloped tray' recited in Claim 4 cannot be the same thing as the 'bottom surface' recited in Claim 1," this is not the case. For example, simply the word "sloped" distinguishes the "bottom surface" required in Claim 1 from the "sloped tray" in Claim 4, even if these elements are the same structure. In the embodiment of Claim 4, a slope is required, while

in the embodiment of Claim 1, the tray may be level.  Therefore, there is no violation of the doctrine of claim differentiation.

### F.    The Hydropad System Includes The Remaining Elements Of Claim 1

The remaining elements of Claim 1 of the '298 patent are not disputed by Hydro, and nonetheless are satisfied in the accused infringing Hydropad systems.  These elements are the claimed "*drainage fitting* . . . to allow water collected in said basin to flow out," "*coupling means* for coupling said modular wash rack to another modular wash rack," "*a tube* having a first end connected to said drainage fitting," and "*a pump* for causing the water to flow from the basin."  *See* Paulus Decl. ¶ 22.

### G.    There Is No Waiver Or Estoppel Concerning The Doctrine Of Equivalents

Without citing any authority, Hydro contends Riveer waived the doctrine of equivalents, but such an extreme result is not contemplated by this Court's Local Patent Rules.  *See supra* note 4.  As discussed *supra*, Riveer made clear the basis for its assertion of the doctrine of equivalents—*i.e.*, *only if* Riveer's proposed claim construction was not adopted by the Court.  As one court explained recently, "given the Court's claim construction, a doctrine of equivalents argument might be available as an alternative to literal infringement."  *Robocast, Inc. v. Microsoft Corp.*, 21 F. Supp. 3d 320, at *11-16 (D. Del. 2014) ("Microsoft [] argues that Robocast cannot put forth a doctrine of equivalents argument [as] untimely . . . [but] Robocast's *doctrine of equivalents arguments are based on the Court's claim construction rulings*, and Microsoft was on notice.") (emphasis added); *see also Exxon Chem. Patents v. Lubrizol Corp.*, 137 F.3d 1475, 1479 (Fed. Cir. 1998) ("Once the district judge construed the claim language in Exxon's favor, the doctrine-of-equivalents issue in the case became moot [and] Exxon could not realistically be expected to request alternative jury instructions asking for an advisory verdict on

whether the patent would be infringed under the doctrine of equivalents on Lubrizol's proposed claim construction.").

As LPR 2.3(d) states, the party asserting infringement should state "whether each element of each asserted claim is claimed to be present . . . literally *__or__* under the doctrine of equivalents." At the contention stage, presuming its proposed claim construction would be confirmed as correct, only literal infringement (not the doctrine of equivalents) was at issue.  As Riveer made clear in its contentions, "If a particular element cannot be satisfied literally under whatever claim construction is reached, Plaintiff reserves the right to assert the doctrine of equivalents (*i.e.*, that the accused and claimed elements are equivalent because of only insubstantial differences between them, and/or because the accused element matches the function, way, and result of the claimed element)."

Without a claim construction, or even the contentions of the parties regarding claim construction, Riveer could not possibly provide a complete, alternate "doctrine of equivalents" analysis under the innumerable possible outcomes of the claim construction process.  *See Nazomi Communs., Inc. v. Samsung Telcoms., Inc.*, 2013 U.S. Dist. LEXIS 122869, at *20 (N.D. Cal. Aug. 28, 2013) (noting that Patent Local Rule (N.D. Cal.) 3-6 allows amendments to infringement contention by order of the court upon a timely showing of good cause, including "a claim construction by the [c]ourt different from that proposed by the party seeking amendment"); *see also Exxon* (vacating denial of motion for a new trial on infringement under the doctrine of equivalents).  Moreover, Hydro never complained about the detail provided in Riveer's infringement contentions (which were served eight months ago on April 28, 2014), nor did Hydro ever request further explanation or supplementation.  Hydro never complained, likely, because it understood very well the "equivalents" arguments that are apparent here, given

16

Hydro's view that "the asserted patent claims [are] very simple." Dkt. 176 at 4.  Therefore, there is no legitimate justification for any waiver of the doctrine of equivalents here.

Nor is non-infringement under the doctrine of equivalents justified here, at the summary judgment stage.   In its one-paragraph argument to the contrary, Hydro states that "[n]o reasonable jury could conclude" that the Hydropad "permit[s] the wash water and debris to pass through the wash surface (a grate) into a basin."  As discussed *supra*, however, the '298 patent claims do not require any passing "***through***" a grate; rather, the claimed grate need only "allow[] water and any debris to flow ***into*** [the] basin."  Therefore, Hydro's argument on the doctrine of equivalents is meritless.  Moreover, Riveer has presented the only expert testimony so far in this case from a person of skill in the art, who explains why infringement is present both literally and under the doctrine of equivalents.  *See* Paulus Decl. ¶¶ 16-22.  When Riveer's evidence is construed in the light most favorable to Riveer, a jury may sufficiently rely on this expert testimony about infringement under the doctrine of equivalents.  *See, e.g., Carter v. Variflex, Inc.*, 2000 U.S. Dist. LEXIS 22999, at *23-24 (C.D. Cal. Apr. 18, 2000) (denying summary judgment where "conflicting expert reports" disagree about infringement under doctrine of equivalents).

## V.   CONCLUSION

For each of the foregoing reasons, Riveer respectfully requests that this Court deny Hydro's request for summary judgment.

Dated:  January 5, 2015                     Respectfully submitted,

**The Eclipse Group LLP**

/s/ Stephen M. Lobbin
Stephen M. Lobbin (admitted *pro hac vice*)
*Attorney for Plaintiff*

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that I served the foregoing document—**PLAINTIFF RIVEER'S OPPOSITION TO DEFENDANT'S (SECOND) MOTION FOR SUMMARY JUDGMENT ON PLAINTIFF'S FIRST CLAIM FOR RELIEF**—pursuant to Fed. R. Civ. P. 5(b)(2)(E) on the parties as follows:

> Brett L. Foster
> Mark A. Miller
> Christopher B. Hadley
> **Holland & Hart LLP**
> 222 S. Main Street, Suite 2200
> Salt Lake City, Utah 84101

Dated:  January 5, 2015                    /s/ Stephen M. Lobbin
_____
                                       Stephen M. Lobbin (admitted *pro hac vice*)
                                       *Attorney for Plaintiff*

18