Stephen M. Lobbin (admitted *pro hac vice*)
**The Eclipse Group LLP**
2020 Main Street, Suite 600
Irvine, California  92614
Tel:  949.851.5000

Mark W. Ford (10659)
Rachel Jacques (13250)
**Maschoff Brennan**
1389 Center Drive, Suite 300
Park City, Utah  84098
Tel:  435.575.1387

*Attorneys for Plaintiff Petter Investments, Inc. d/b/a RIVEER*

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF UTAH

| | |
|---|---|
| **PETTER INVESTMENTS, INC.** d/b/a **RIVEER**, a Michigan corporation,<br><br>       Plaintiff,<br><br>vs.<br><br>**HYDRO ENGINEERING, INC.**, a Utah corporation, and **CALIFORNIA CLEANING SYSTEMS**, a California company,<br><br>       Defendants. | **PLAINTIFF RIVEER'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ON PLAINTIFF'S SECOND CLAIM FOR RELIEF**<br><br><br>Civil Case No. 2:14-CV-00045<br><br>Honorable District Judge Dee Benson |
| AND RELATED COUNTERCLAIMS | |

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION .................................................................................................. 1

II.   RESPONSE TO STATEMENT OF ELEMENTS AND UNDISPUTED
MATERIAL FACTS ........................................................................................... 3

    A.    Riveer's Response To Hydro's Statement Of Elements ............................... 3

    B.    Riveer's Response To Hydro's Statements Of Undisputed Facts .............................. 4

III.  ARGUMENT ...................................................................................................... 8

    A.    The Accused Hydropad System Includes The Claimed "Evacuator" ......................... 9

    B.    The Hydropad System Includes The Claimed "Elevator" ......................................... 10

    C.    The Hydropad System Includes The Claimed "Conveyor" ....................................... 10

    D.    The Hydropad System Includes The Other Claimed Element ................................... 11

    E.    There Is No Waiver Concerning The Doctrine Of Equivalents ................................. 11

    F.    No Prosecution History Estoppel Is Justified ........................................................... 13

IV.  CONCLUSION .................................................................................................. 16

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Carter v. Variflex, Inc.*
  2000 U.S. Dist. LEXIS 22999 (C.D. Cal. Apr. 18, 2000) ....................................... 13

*Exxon Chemical Patents v. Lubrizol Corp.*
  137 F.3d 1475 (Fed. Cir. 1998) ...................................................................... 1, 2, 11

*Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*
  535 U.S. 722 (2002)........................................................................................... 4, 8

*Gemalto S.A. v. HTC Corp.*
  754 F.3d 1364 (Fed. Cir. 2014) ............................................................................ 4

*Intervet Inc. v. Merial Ltd.*
  617 F.3d 1282 (Fed. Cir. 2010) ............................................................................ 8

*Lifescan, Inc. v. Home Diagnostics*
  76 F.3d 358 (Fed. Cir. 1996) ................................................................................ 8

*Nazomi Communications, Inc. v. Samsung Telcoms., Inc.*
  2013 U.S. Dist. LEXIS 122869 (N.D. Cal. Aug. 28, 2013) ................................ 2, 12

*Optical Disc Corp. v. Del Mar Avionics*
  208 F.3d 1324 (Fed. Cir. 2000) ............................................................................ 8

*Robocast, Inc. v. Microsoft Corp.*
  21 F. Supp. 3d 320 (D. Del. 2014)..................................................................... 1, 11

*Warner-Jenkinson Co. v. Hilton Davis Chemical Co.*
  520 U.S. 17 (1997)................................................................................................ 3

*Yellowbear v. Lampert*
  741 F.3d 48 (10th Cir. 2014) ................................................................................ 8

**Other Authorities**

DUCivR 56-1 .................................................................................................. 3, 4, 5

Fed. R. Civ. P. 56 .................................................................................................. 8

LPR 2.3 ................................................................................................................ 12

Pursuant to DUCivR 56-1(c), Plaintiff Petter Investments, Inc. d/b/a RIVEER ("Riveer")

hereby opposes the Motion for Summary Judgment on Plaintiff's Second Claim for Relief (Dkt.

179) filed by Defendants ("Hydro").

## I.   INTRODUCTION

Although Hydro agrees with Riveer that "the asserted patent claims [are] very simple"

(*see* Dkt. 176 at 4), by its motion Hydro proposes that the equally-simple mechanical structure of

its accused infringing "Hydropad" modular wash rack systems cannot satisfy four limitations of

the asserted claims of Riveer's asserted '774 patent.[1]   Hydro presumes incorrectly that its

proposed claim construction already has been adopted,[2] and ignores the infringement analysis if

this Court adopts Riveer's proposed claim construction.[3]   Also, despite never asserting non-

infringement under the doctrine of equivalents in its contentions under LPR 2.4(a) or LPR 3.2,[4]

---

[1] Riveer agrees with Hydro that "Claim 1 is the only independent claim" of the '774 patent (Dkt. 181 at 7 n.2), and as such, the non-infringement motion necessarily fails if a reasonable jury—viewing the evidence in the light most favorable to Riveer—could find infringement of Claim 1.

[2] Riveer is concerned about statements by Hydro and its counsel at recent depositions suggesting that the outcome of this entire case is a foregone conclusion.  Riveer is unaware of any views of this Court on the merits of this case which would support Hydro's unprofessional "warnings" about prejudicial favor toward Hydro's contentions in this litigation.

[3] Because Hydro includes several claim construction arguments in its motion, particularly concerning the patent prosecution history, Riveer incorporates herein all of its opposition arguments from its Response to Defendants' Motion for Claim Construction, also filed today.

[4] Hydro complains about the detail provided in Riveer's LPR 2.3 and LPR 3.1 infringement contentions, but Riveer made clear its assertion of the doctrine of equivalents as an ***alternative*** infringement theory—***only if*** Riveer's proposed claim construction was not adopted by the Court.  As one court explained recently, "given the Court's claim construction, a doctrine of equivalents argument might be available as an alternative to literal infringement."  *Robocast, Inc. v. Microsoft Corp.*, 21 F. Supp. 3d 320, at *11-16 (D. Del. 2014) ("Microsoft [] argues that Robocast cannot put forth a doctrine of equivalents argument [as] untimely . . . [but] Robocast's ***doctrine of equivalents arguments are based on the Court's claim construction rulings***, and Microsoft was on notice.") (emphasis added); *see also Exxon Chem. Patents v. Lubrizol Corp.*, 137 F.3d 1475, 1479 (Fed. Cir. 1998) ("Once the district judge construed the claim language in Exxon's favor, the doctrine-of-equivalents issue in the case became moot [and] Exxon could not

Hydro proposes that no reasonable jury—even viewing the evidence in the light most favorable to Riveer—could find the Hydropad contains structurally equivalent features to the disputed elements recited in the claims.

What is not simple is the illogical and legally-flawed reasoning Hydro postulates as supporting non-infringement. For example, Hydro improperly proposes that the claim terms at issue should be further limited by (a) the details of the particular structure of the preferred embodiment disclosed in the patent, (b) equivocal statements from the prosecution history which do not amount to "disavowal" of claim scope, and (c) self-serving mischaracterizations about other patents. In appropriate context, each of Hydro's arguments fails to negate the evidentiary support for a jury finding of literal infringement of Claim 1, or at the very least, of infringement under the doctrine of equivalents. Based on a proper claim construction and infringement

---

realistically be expected to request alternative jury instructions asking for an advisory verdict on whether the patent would be infringed under the doctrine of equivalents on Lubrizol's proposed claim construction."). As LPR 2.3(d) states, the party asserting infringement should state "whether each element of each asserted claim is claimed to be present . . . literally **_or_** under the doctrine of equivalents." At the contention stage, presuming its proposed claim construction would be confirmed as correct, only literal infringement (not the doctrine of equivalents) was at issue. As Riveer made clear in its contentions, "If a particular element cannot be satisfied literally under whatever claim construction is reached, Plaintiff reserves the right to assert the doctrine of equivalents (*i.e.*, that the accused and claimed elements are equivalent because of only insubstantial differences between them, and/or because the accused element matches the function, way, and result of the claimed element)." Without a claim construction, or even the contentions of the parties regarding claim construction, Riveer could not possibly provide a complete, alternate "doctrine of equivalents" analysis under the innumerable possible outcomes of the claim construction process. *See Nazomi Communs., Inc. v. Samsung Telcoms., Inc.*, 2013 U.S. Dist. LEXIS 122869, at *20 (N.D. Cal. Aug. 28, 2013) (noting that Patent Local Rule (N.D. Cal.) 3-6 allows amendments to infringement contention by order of the court upon a timely showing of good cause, including "a claim construction by the [c]ourt different from that proposed by the party seeking amendment"); *see also Exxon* (vacating denial of motion for a new trial on infringement under the doctrine of equivalents). Moreover, Hydro never complained about the detail provided in Riveer's infringement contentions (which were served eight months ago on April 28, 2014), nor did Hydro ever request further explanation or supplementation.

analysis concerning the features of Hydro's accused infringing wash rack systems[5]—particularly when viewed in the light most favorable to Riveer—Hydro's summary judgment request should be denied.

## II.   RESPONSE TO STATEMENT OF ELEMENTS AND UNDISPUTED MATERIAL FACTS

### A.  Riveer's Response To Hydro's Statement Of Elements

Pursuant to DUCivR 56-1(c)(2)(A), Riveer agrees with Hydro that the inquiry for ***literal infringement*** is "whether the claimed invention is infringed (*i.e.*, whether the claim as properly interpreted covers the accused product)."[6]  Dkt. 179 at 11.  As the Supreme Court has made clear, however, "a product or process that does not literally infringe upon the express terms of a patent claim may nonetheless be found to infringe if there is 'equivalence' between the elements of the accused product or process and the claimed elements of the patented invention."  *Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 21 (1997).  As the doctrine of equivalents recently was explained further by the Federal Circuit:

> A device that does not literally infringe a claim may infringe under the doctrine of equivalents.  *Energy Transp. Grp., Inc. v. William Demant Holding A/S*, 697 F.3d 1342, 1352 (Fed. Cir. 2012).  We have held that "a patentee may prove that a particular claim element is met under the doctrine of equivalents . . . by showing that 'the accused product performs substantially the same function in substantially the same way with substantially the same result' as claimed in the patent."  *Id.* (quoting *Crown Packaging Tech., Inc. v. Rexam Bev. Can Co.*, 559 F.3d 1308,

---

[5] While Riveer appreciates Hydro's recent willingness to disclose in its opening brief (not filed under seal) the technical details of its accused infringing Hydropad wash rack systems, Riveer's infringement analysis has been hampered by Hydro's improper over-designation as "Attorneys' Eyes Only" of the same information when it was produced in discovery.  For example, Riveer could not even review its own infringement contentions because Hydro improperly designated its own system "installation manual" as AEO.  *See* A1-29.

[6] Hydro's motion presumes that this Court will adopt Hydro's proposed claim construction in all respects.  By contrast, while Riveer's opposition presents its case for literal infringement pursuant to Riveer's proposed claim construction, the doctrine of equivalents may apply depending on the claim construction adopted by the Court; thus, and Riveer may assert the doctrine of equivalents as well.  *See supra* note 3.

1312 (Fed. Cir. 2009)); *see also Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 39-40, 117 S. Ct. 1040, 137 L. Ed. 2d 146 (1997).

*Gemalto S.A. v. HTC Corp.*, 754 F.3d 1364, 1373 (Fed. Cir. 2014).  The purpose of the doctrine of equivalents is to prevent "simple acts of copying" or "[u]nimportant and insubstantial substitutes for certain elements" from avoiding liability.  *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, 535 U.S. 722, 731 (2002).

**B.     Riveer's Response To Hydro's Statements Of Undisputed Facts**

Pursuant to DUCivR 56-1(c)(2)(B), Riveer disputes many of Hydro's purportedly "undisputed material facts," including as immaterial.  Accordingly, Riveer responds to Hydro's Paragraphs 1-27 (Dkt. 181 at 6-20) as follows:

1.     Undisputed.

2.     Undisputed.

3.     Undisputed.

4.     Undisputed.

5.     Disputed.  Claim construction is a legal not factual issue, and Riveer's claim construction positions are set forth in its Cross-Motion for Claim Construction.  *See* Dkt. 187.

6.     Disputed.  Claim construction is a legal not factual issue, and Riveer's claim construction positions are set forth in its Cross-Motion for Claim Construction.  *See* Dkt. 187.

7.     Disputed.  Claim construction is a legal not factual issue, and Riveer's claim construction positions are set forth in its Cross-Motion for Claim Construction.  *See* Dkt. 187.

8.     Undisputed.

9.     Undisputed.

10.     Undisputed.

11.     Undisputed.

12.    Undisputed.

13.    Undisputed.

14.    Undisputed.

15.    Undisputed.

16.    Undisputed.

17.    Undisputed.

18.    Undisputed.

19.    Undisputed.

20.    Undisputed.

21.    Undisputed.

22.    Undisputed.

23.    Undisputed.

24.    Undisputed.

25.    Undisputed.

26.    Disputed that Riveer "did not assert any particular Hydropad features as infringing under the doctrine of equivalents," as the same Hydropad features which literally infringe, also infringe under the doctrine of equivalents.

27.    Undisputed.

Pursuant to DUCivR 56-1(c)(2)(C)-(D), the following additional material facts demonstrate that there are genuine issues for trial:

28.    Hydro disputes that its accused infringing "Hydropad" wash rack conveyor system meets three disputed limitations recited in the claims of the '774 patent, which are: (a) "***an evacuator*** disposed in fluid communication with an evacuation end of the catch trough, the

evacuator substantially removing wash fluid received from the catch trough, the evacuator comprising: a debris collector; and a fluid mover in fluid communication with the debris collector for drawing fluid through the debris collector, the debris collector configured to collect non-fluid debris," (b) "*an elevator* disposed in fluid communication with the evacuator, the elevator removing debris from the debris collector and elevating the removed debris from a collection height to a dump height for dumping," and (c) "*a conveyor* disposed along the catch trough and the elevator, the conveyor moving at least one of the wash fluid and the debris collected in the catch trough to the evacuator and elevating the debris from the evacuator to the dump height." *See* Paulus Decl. ¶ 23.

29.     The "evacuator" is identified as Element 3 in Riveer's infringement contentions. The function of the evacuator is to "substantially remov[e] wash fluid received from the catch trough," it is "in fluid communication with an evacuation end of the catch trough," and it includes "a debris collector" and "a fluid mover in fluid communication with the debris collector for drawing fluid through the debris collector."  In the Hydropad conveyor system, these same functions are performed—water (with solid debris) enters the side trough and is drawn through a screen to separate the water (which passes through the screen) from the solid debris (which does not).  The water is then removed from the side trough by a pump, whereas the solids are removed from the side trough via the conveyor, which includes an elevator for raising the solids up to a dump height.  Even if compared narrowly to the preferred embodiment of the '774 patent, the only difference in how the accused system is configured is that the water and solids are removed from opposite ends of the side trough.  But the specific configuration of the same "evacuation end" for water and solids is specifically recited in dependent Claim 8 (requiring the evacuator to be "connected to one end of the catch trough"), which means that independent Claim 1 is not

6

limited to the same "evacuation end" for water and solids.  Nor is there a substantial, functional difference between these configurations, because the same function and operation takes place, to achieve the same result.  *See* Paulus Decl. ¶ 24.

30.     The "elevator" is identified as Element 4 in Riveer's infringement contentions. The function of the elevator is to "remov[e] debris from the debris collector and elevat[e] the removed debris from a collection height to a dump height for dumping," and it is "in fluid communication with the evacuator."  The elevator clearly is present in the Hydropad conveyor system.  *See* Paulus Decl. ¶ 25.

31.     The "conveyor" is identified as Element 5 in Riveer's infringement contentions. The function of the conveyor is to "mov[e] at least one of the wash fluid and the debris collected in the catch trough to the evacuator" and "elevat[e] the debris from the evacuator to the dump height," and it is "disposed along the catch trough and the elevator."  In the Hydropad conveyor system, even if the "elevator" functions are carried out by that portion of the conveyor traveling up and down the elevated arm, from a functional perspective such a difference would be insubstantial, and there is no requirement in the claims of the '774 patent that the elevator and conveyor cannot be connected or arranged in series.  Also, Hydro's "drive unit" or metal shell housing is essential to its function as an elevator, because without it the debris would fall out onto the ground and not elevate at all because the debris is on the bottom side of conveyor and requires an inclined surface in which to sweep the debris up the incline.  *See* Paulus Decl. ¶ 26.

32.     The remaining element is "a catch trough disposed in fluid communication with the wash floor" which is identified as Element 2 in Riveer's infringement contentions. Defendants do not dispute that this element is satisfied in the accused infringing Hydropad conveyor system, which it is.  *See* Paulus Decl. ¶ 27.

### III.   ARGUMENT

Summary judgment is proper only where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "At summary judgment, of course, . . . the facts in the record are viewed in the light most favorable to . . . the non-movant," which here is Riveer.  *Yellowbear v. Lampert*, 741 F.3d 48, 56-57 (10th Cir. 2014).

On a fact-intensive issue such as patent infringement, particularly infringement under the doctrine of equivalents, "When there is substantial evidence to support a factual conclusion, summary judgment to the contrary is improper."  *Lifescan, Inc. v. Home Diagnostics*, 76 F.3d 358, 362 (Fed. Cir. 1996).  For example, an expert's reasonable analysis finding infringement typically defeats summary judgment.  *See Optical Disc Corp. v. Del Mar Avionics*, 208 F.3d 1324, 1336 (Fed. Cir. 2000).  As the Federal Circuit explained in *Optical Disc*:

> A reasonable fact finder could find infringement by equivalents because, based on the [expert] report, a reasonable fact finder could find the differences between the allegedly infringing device and the claimed invention to be insubstantial.  We therefore conclude that the grant of summary judgment of noninfringement under the doctrine of equivalents was improper.

*Id.*  Finally, on questions of asserted "prosecution history estoppel" concerning the doctrine of equivalents:

> The applicability of prosecution history estoppel does not completely bar the benefit of the doctrine of equivalents from all litigation related to the amended claim.  There is no reason why a narrowing amendment should be deemed to relinquish equivalents beyond a fair interpretation of what was surrendered.  The scope of the estoppel must fit the nature of the narrowing amendment.  A district court must look to the specifics of the amendment and the rejection that provoked the amendment to determine whether estoppel precludes the particular doctrine of equivalents argument being made.

*Intervet Inc. v. Merial Ltd.*, 617 F.3d 1282, 1291 (Fed. Cir. 2010) (citing and quoting *Festo Corp. v Shoketsu Kinzoku Kogyo Kabushiki Co.*, 535 U.S. 722, 740 (2002)).

As its basis for requesting summary judgment, Hydro disputes that its accused infringing wash rack conveyor system meets three disputed limitations recited in the claims of the '774 patent, which are: (a) "***an evacuator*** disposed in fluid communication with an evacuation end of the catch trough, the evacuator substantially removing wash fluid received from the catch trough, the evacuator comprising: a debris collector; and a fluid mover in fluid communication with the debris collector for drawing fluid through the debris collector, the debris collector configured to collect non-fluid debris," (b) "***an elevator*** disposed in fluid communication with the evacuator, the elevator removing debris from the debris collector and elevating the removed debris from a collection height to a dump height for dumping," and (c) "***a conveyor*** disposed along the catch trough and the elevator, the conveyor moving at least one of the wash fluid and the debris collected in the catch trough to the evacuator and elevating the debris from the evacuator to the dump height."   The accused infringing Hydropad system, however, meets each of these limitations, at the very least under the doctrine of equivalents.

### A.      The Accused Hydropad System Includes The Claimed "Evacuator"

The claimed "evacuator" is present in the accused infringing Hydropad systems.   The function of the evacuator is to "substantially remov[e] wash fluid received from the catch trough," it is "in fluid communication with an evacuation end of the catch trough," and it includes "a debris collector" and "a fluid mover in fluid communication with the debris collector for drawing fluid through the debris collector."   In the Hydropad conveyor system, these same functions are performed—water (with solid debris) enters the side trough and is drawn through a screen to separate the water (which passes through the screen) from the solid debris (which does not).   The water is then removed from the side trough by a pump, whereas the solids are removed from the side trough via the conveyor, which includes an elevator for raising the solids up to a dump height.   Even if compared narrowly to the preferred embodiment of the '774 patent, the

only difference in how the accused system is configured is that the water and solids are removed from opposite ends of the side trough. *See* Paulus Decl. ¶ 24.

Concerning the claim term "evacuation end," however, the specific configuration of the same "evacuation end" for water and solids is specifically recited in dependent Claim 8 (requiring the evacuator to be "connected to one end of the catch trough"). Thus, the law of claim differentiation mandates that independent Claim 1 is not limited to the same "evacuation end" for water and solids. *See World Class Tech. Corp. v. Ormco Corp.*, 769 F.3d 1120, 1125 (Fed. Cir. 2014) ("The doctrine of claim differentiation creates a presumption that distinct claims, particularly an independent claim and its dependent claim, have different scopes.") (citing *Kraft Foods, Inc. v. Int'l Trading Co.*, 203 F.3d 1362, 1368 (Fed. Cir. 2000)). Nor is there a substantial, functional difference between these configurations, because the same function and operation takes place, to achieve the same result. *See* Paulus Decl. ¶ 24.

### B.    The Hydropad System Includes The Claimed "Elevator"

The claimed "elevator" functions to "remov[e] debris from the debris collector and elevat[e] the removed debris from a collection height to a dump height for dumping," and it is "in fluid communication with the evacuator." Clearly, by Element 4 identified in Riveer's infringement contentions, the elevator is present in the Hydropad system. Even if not "literally" satisfied, a reasonable jury could find that the claimed "elevator" is satisfied by equivalents. *See* Paulus Decl. ¶ 25.

### C.    The Hydropad System Includes The Claimed "Conveyor"

The claimed "conveyor" is present in the accused infringing Hydropad system. The function of the conveyor is to "mov[e] at least one of the wash fluid and the debris collected in the catch trough to the evacuator" and "elevat[e] the debris from the evacuator to the dump height," and it is "disposed along the catch trough and the elevator." In the Hydropad conveyor

system, even if the "elevator" functions are carried out by that portion of the conveyor traveling up and down the elevated arm, from a functional perspective such a difference would be insubstantial, and there is no requirement in the claims of the '774 patent that the elevator and conveyor cannot be connected or arranged in series. Also, Hydro's "drive unit" or metal shell housing is essential to its function as an elevator, because without it the debris would fall out onto the ground and not elevate at all because the debris is on the bottom side of conveyor and requires an inclined surface in which to sweep the debris up the incline. *See* Paulus Decl. ¶ 26.

### D.    The Hydropad System Includes The Other Claimed Element

The remaining element is "a catch trough disposed in fluid communication with the wash floor," which Defendants do not dispute is satisfied in the accused infringing Hydropad conveyor system. *See* Paulus Decl. ¶ 27.

### E.    There Is No Waiver Concerning The Doctrine Of Equivalents

Without citing any authority, Hydro contends Riveer waived the doctrine of equivalents, but such an extreme result is not contemplated by this Court's Local Patent Rules. *See supra* note 4. As discussed *supra*, Riveer made clear the basis for its assertion of the doctrine of equivalents—*i.e.*, *only if* Riveer's proposed claim construction was not adopted by the Court. As one court explained recently, "given the Court's claim construction, a doctrine of equivalents argument might be available as an alternative to literal infringement." *Robocast, Inc. v. Microsoft Corp.*, 21 F. Supp. 3d 320, at *11-16 (D. Del. 2014) ("Microsoft [] argues that Robocast cannot put forth a doctrine of equivalents argument [as] untimely . . . [but] Robocast's ***doctrine of equivalents arguments are based on the Court's claim construction rulings***, and Microsoft was on notice.") (emphasis added); *see also Exxon Chem. Patents v. Lubrizol Corp.*, 137 F.3d 1475, 1479 (Fed. Cir. 1998) ("Once the district judge construed the claim language in Exxon's favor, the doctrine-of-equivalents issue in the case became moot [and] Exxon could not

realistically be expected to request alternative jury instructions asking for an advisory verdict on whether the patent would be infringed under the doctrine of equivalents on Lubrizol's proposed claim construction.").

As LPR 2.3(d) states, the party asserting infringement should state "whether each element of each asserted claim is claimed to be present . . . literally ___or___ under the doctrine of equivalents." At the contention stage, presuming its proposed claim construction would be confirmed as correct, only literal infringement (not the doctrine of equivalents) was at issue.  As Riveer made clear in its contentions, "If a particular element cannot be satisfied literally under whatever claim construction is reached, Plaintiff reserves the right to assert the doctrine of equivalents (*i.e.*, that the accused and claimed elements are equivalent because of only insubstantial differences between them, and/or because the accused element matches the function, way, and result of the claimed element)."

Without a claim construction, or even the contentions of the parties regarding claim construction, Riveer could not possibly provide a complete, alternate "doctrine of equivalents" analysis under the innumerable possible outcomes of the claim construction process.  *See Nazomi Communs., Inc. v. Samsung Telcoms., Inc.*, 2013 U.S. Dist. LEXIS 122869, at *20 (N.D. Cal. Aug. 28, 2013) (noting that Patent Local Rule (N.D. Cal.) 3-6 allows amendments to infringement contention by order of the court upon a timely showing of good cause, including "a claim construction by the [c]ourt different from that proposed by the party seeking amendment"); *see also Exxon* (vacating denial of motion for a new trial on infringement under the doctrine of equivalents).   Moreover, Hydro never complained about the detail provided in Riveer's infringement contentions (which were served eight months ago on April 28, 2014), nor did Hydro ever request further explanation or supplementation.   Hydro never complained, likely,

because it understood very well the "equivalents" arguments that are apparent here, given Hydro's view that "the asserted patent claims [are] very simple." Dkt. 176 at 4. Therefore, there is no legitimate justification for any waiver of the doctrine of equivalents here.

Nor is non-infringement under the doctrine of equivalents justified here, at the summary judgment stage. Riveer has presented the only expert testimony so far in this case from a person of skill in the art, who explains why infringement is present both literally and under the doctrine of equivalents. *See* Paulus Decl. ¶¶ 23-27. When Riveer's evidence is construed in the light most favorable to Riveer, a jury may sufficiently rely on this expert testimony about infringement under the doctrine of equivalents. *See, e.g., Carter v. Variflex, Inc.*, 2000 U.S. Dist. LEXIS 22999, at *23-24 (C.D. Cal. Apr. 18, 2000) (denying summary judgment where "conflicting expert reports" disagree about infringement under doctrine of equivalents).

### F.      No Prosecution History Estoppel Is Justified

Hydro's arguments asserting prosecution history estoppel fail because nowhere in the prosecution history did Riveer explicitly disclaim any subject matter encompassed by the ordinary meaning of the language used in the claims.

The '774 patent is replete with open-ended language that invites a broad interpretation of the claim elements. For example:

- "Implementations of the disclosure may include one or more of the following features. In some implementations, the wash pad includes a conveyer disposed along the catch trough and the elevator." '774 patent, col. 1, lines 61-64.
- "In some implementations, the elevator includes a housing having an entrance connected to the evacuator and an exit at the dump height." '774 patent, col. 2, lines 15-17.
- "In some implementations, the wash floor defines channels for receiving at least one of wash fluid and debris." '774 patent, col. 2, lines 43-44.
- "Another aspect of the disclosure provides a wash pad that includes a wash floor for supporting a wash item and a catch trough disposed in fluid communication with the wash floor." '774 patent, col. 2, lines 53-55.

- "In some implementations, the debris collector comprises a screen, such as a wedge shape wire screen, which can be disposed substantially flush with a catch trough surface."  '774 patent, col. 3, lines 1-3.

- "In some examples, the evacuator is connected to one end of the catch trough, which can be arranged to cause fluid flow towards the evacuator."  '774 patent, col. 3, lines 27-29.

- "Yet another aspect of the disclosure provides a conveyer system for a wash pad."  '774 patent, col. 3, lines 31-32.

- "In the example shown, the evacuator 320 is joined to an evacuation end 311 of the catch trough 310, which extends to or past a perimeter of the platform 210 (see also FIG. 1)."

- "The catch trough may extend along an entire length of the wash pad, while in some examples, the catch trough only extends along certain portions of the wash pad, such as a center portion.  The length can be any length, regardless of how the length is defined with respect to an orientation of the wash pad (e.g., length or width).  The evacuator can be connected to one end of the catch trough, with the catch trough arranged to cause fluid flow towards the evacuator.  In some implementations, the evacuator includes an evacuator trough defining an aperture and a fluid mover (e.g., a vacuum, an air mover or a pump) disposed in fluid or pneumatic communication with the evacuator trough aperture.  The fluid mover draws wash fluid though the evacuator trough aperture for delivery to a wash fluid destination.  The wash fluid destination can be at least one of a fluid treatment system and fluid recirculation system.  '774 patent, col. 2, lines 23-40.

Hydro goes on to further assert that "the only use of the term 'evacuation end' in the '774 patent is with reference to Figure 6."  Hydro's assertion is just not true, as exemplified in the following passage from the specification:

Referring to FIGS. 6 and 11, the catch trough 310 of the trough assembly 300 is in fluid communication with the evacuator 320, which receives collected wash fluid 20 for substantially evacuating or separating liquid from among any debris 30 mixed therewith. In the example shown, the evacuator 320 is joined to an evacuation end 311 of the catch trough 310, which extends to or past a perimeter of the platform 210 (see also FIG. 1). However, in other examples, the evacuator 320 can be disposed anywhere along the catch trough 310. The catch trough 310, the bottom wall 312 and/or the collection region 315 may be angled, sloped, and/or shaped to cause collected fluid (e.g., fluid collected in the collection region 315) to flow to the evacuation end 311 of the catch trough 310. The evacuator 320 includes a housing 322 defining a mouth 324 and a fluid mover 326 (e.g., vacuum, pump, or air mover) in fluid communication with the mouth 324.

'774 patent, col. 7, line 57 – col. 8, line 5.  In addition, the patent discusses the "evacuation end"

14

between the section "Referring to FIGS. 14-16 . . ." (col. 9, line 5) and "FIG. 17 provides and

exemplary arrangement . . ." (col. 9, line 64), specifically:

> Referring to FIGS. 14-16, in some implementations, the trough assembly 300 includes a conveyer drive 370 and conveyer idler 380 disposed at opposite ends of the trough assembly 300 for driving and guiding the conveyer 360 to travel in a looped path from one end of the trough assembly 300 to another and back again.
>
> . . .
>
> By moving the wash fluid 20 and/or debris 30 to the evacuation end 311 of the catch trough 310, the conveyer 360 assists the user in maintaining a clear and/or clean wash pad 100. For example, without the conveyer 360, debris 30, such as gravel, may remain in the catch trough 310 after the washing operation and the user would have to shovel or otherwise remove the debris 30 form the catch trough 310 to avoid blockage of the catch trough 310 at some point.

'774 patent, col. 9, lines 5-10 and col. 9, lines 31-38.  The claim term "evacuation end" is used in

at least Figures 6 and 14-16, and it should be interpreted in the broadest sense instead of the

additional restrictions added in Hydro's claim construction brief that are unsubstantiated by the

intrinsic evidence.  Accordingly, the Court should construe the claim term "evacuation end"

broadly and not unduly limit this claim term to just the evacuator and elevator that is shown in an

example embodiment in Figure 6 of the '774 patent.

Finally, Hydro argues that "the Patent Office examiner required [Riveer] to limit the

claims to the specific configuration depiction in Figure 6."  Hydro CC Brief at 26.  Riveer

disagrees that the examiner *required* it to limit the claims to the embodiment depicted in Figure

6.  Also, Riveer did not so limit the claims.  For example, in describing the Figure 6

embodiment, the '774 patent states: "In the example shown [referring to Figure 6], the evacuator

320 is joined to an evacuation end 311[.]"  *See* '774 patent at col. 7, lines 61-62 (A65).  In its

amended claims however, Riveer did not require the evacuator to be *joined to* the evacuation

end; rather, Riveer amended the claims to require the evacuator to be "disposed in fluid

communication with an evacuation end."  Moreover, because dependent Claim 8 specifies the

15

same evacuation point for water and solid debris, claim differentiation indicates that Claim 1 (the independent claim further limited by dependent Claim 8) is not similarly limited but has a broader scope.  Thus, Claim 1 allows the evacuator and elevator to be in opposite evacuation ends.  *See* Paulus Decl. ¶ 13.

## IV.    CONCLUSION

For each of the foregoing reasons, Riveer respectfully requests that this Court deny Hydro's request for summary judgment.

Dated:  January 5, 2015                                Respectfully submitted,

                                                                      **The Eclipse Group LLP**

                                                                      /s/ Stephen M. Lobbin
                                                                      Stephen M. Lobbin (admitted *pro hac vice*)
                                                                      *Attorney for Plaintiff*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I served the foregoing document—**PLAINTIFF RIVEER'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ON PLAINTIFF'S SECOND CLAIM FOR RELIEF**—pursuant to Fed. R. Civ. P. 5(b)(2)(E) on the parties as follows:

> Brett L. Foster
> Mark A. Miller
> Christopher B. Hadley
> **Holland & Hart LLP**
> 222 S. Main Street, Suite 2200
> Salt Lake City, Utah 84101

Dated:  January 5, 2015                    /s/ Stephen M. Lobbin
                                            Stephen M. Lobbin (admitted *pro hac vice*)
                                            *Attorney for Plaintiff*

17