Stephen M. Lobbin (admitted *pro hac vice*)
**One LLP**
4000 MacArthur Boulevard
East Tower, Suite 500
Newport Beach, California  92660
Tel:  949.502.2870

Mark W. Ford (10659)
Rachel Jacques (13250)
**Maschoff Brennan**
1389 Center Drive, Suite 300
Park City, Utah  84098
Tel:  435.575.1387

*Attorneys for Plaintiff Petter Investments, Inc. d/b/a RIVEER*

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF UTAH

| | |
|---|---|
| **PETTER INVESTMENTS, INC.** d/b/a **RIVEER**, a Michigan corporation,<br><br>     Plaintiff,<br><br>vs.<br><br>**HYDRO ENGINEERING, INC.**, a Utah corporation, and **CALIFORNIA CLEANING SYSTEMS**, a California company,<br><br>     Defendants. | **PLAINTIFF'S MOTION FOR RECONSIDERATION OF SUMMARY JUDGMENT MEMORANDUM DECISION AND ORDER (Dkt. No. 216)**<br><br>Civil Case No. 2:14-CV-00045<br><br>Honorable District Judge Dee Benson |
| AND RELATED COUNTERCLAIMS | |

Plaintiff Petter Investments, Inc. d/b/a RIVEER ("Riveer") respectfully requests that the Court reconsider the rulings made in its Memorandum Decision and Order received by the undersigned counsel via ECF only as of January 14, 2015. *See* Dkt. 216 (signed January 7, 2015 and date-stamped January 9, 2015).

**I.  APPLICABLE LAW**

In the Tenth Circuit, a motion for reconsideration is treated as "an interlocutory motion invoking the district court's general discretionary authority to review and revise interlocutory rulings prior to entry of final judgment." *Fye v. Oklahoma Corp. Comm'n*, 516 F.3d 1217, 1224 n. 2 (10th Cir. 2008) (citing *Wagoner v. Wagoner*, 938 F.2d 1120, 1122 n.1 (10th Cir.1991)); *see also Warren v. American Bankers Ins. of Fla.*, 507 F.3d 1239, 1243 (10th Cir. 2007) ("[A] district court always has the inherent power to reconsider its interlocutory rulings."); *Price v. Philpot*, 420 F.3d 1158, 1167 n.9 (10th Cir. 2005) ("[E]very order short of a final decree is subject to reopening at the discretion of the district judge.").

"Grounds warranting a motion to reconsider include (1) an intervening change in the controlling law, (2) new evidence previously unavailable, and (3) the need to correct clear error or prevent manifest injustice." *Servants of Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000) ("[A] motion for reconsideration is appropriate where the court has misapprehended the facts, a party's position, or the controlling law."); *see also National Bus. Brokers, Ltd. v. Jim Williamson Prods.*, 115 F. Supp. 2d 1250, 1256 (D. Colo. 2000) (reconsideration proper where moving party "set[s] forth facts or law of a strongly convincing nature to induce the court to reverse its prior decision" by demonstrating a "manifest error of law or fact" or presenting "newly discovered evidence").

## II.     PLAINTIFF'S RULE 56(d) MOTIONS

As the Court noted in its ruling, Plaintiff Riveer requested that the Court allow Riveer the opportunity to complete necessary discovery ***before having to respond in writing*** to Hydro's premature summary judgment motions.  *See* Dkt. 216 at 2.  The Court itself initially questioned the timing of Hydro's early motions, stating "they might be a tad premature" and "I don't know about this summary judgment strategy of yours."  *See* Ex. A (excerpts from November 13, 2014 hearing transcript, attached hereto).  Though the Court ultimately granted the motions, several of the Court's statements in its ruling suggest both factual and legal errors.

First, the Court implies that Riveer was "seeking to enlarge the discovery period," but Riveer made no such request.  *See* Dkt. 216 at 2.  Rather, Riveer sought only the opportunity to complete necessary discovery ***before having to file its oppositions to Hydro's summary judgment motions***.  In the alternative, Riveer sought the opportunity to file additional briefing once its necessary discovery was complete.  Riveer still seeks and requests this opportunity to file updated opposition briefs on the full factual record now available.  By denying Riveer's requests, the Court failed to properly consider any discovery in this case developed by Riveer after July 28, 2014 (the day Riveer filed the last of its three oppositions).[1]  Long after that date, however, Hydro produced over 10,000 additional document pages to Riveer in late October (more than 76% of its total document production), and thereafter Riveer took four additional

---

[1] Several times during the November 21, 2014 summary judgment hearing, the Court asked Riveer's undersigned counsel to cite specifically any new material facts discovered since Riveer filed its opposition papers in July 2014.  But discovery had not yet closed, Riveer was still reviewing Hydro's tardy and voluminous document production, and Riveer had not yet taken four of its five depositions.  Without giving Riveer a new opportunity to present all genuine issues of material fact in writing, however, the Court effectively "stuck" Riveer with its months-old briefs in opposition to the premature motions, which is exactly the prejudice Rule 56(d) is designed to prevent.

depositions.  Riveer's additional discovery has confirmed many additional genuine issues of material fact, but because this Court denied the Rule 56(d) Motions, Riveer never had any opportunity to present those facts to the Court.

Second, the Court concluded that Riveer "did not seek any discovery during the eight month pendency of the suit [before it] was transferred to Utah on January 22, 2014."  *See* Dkt. 216 at 2.  During that time period (and further until April 1, 2014), however, the Federal Rules of Civil Procedure **PROHIBITED** Riveer from seeking any discovery whatsoever.  *See* Fed. R. Civ. P. 26(d)(1) ("A party *may not seek discovery from any source* before the parties have conferred as required by Rule 26(f) . . . .") (emphasis added); *see also* Dkt. 139 at 2-3, Dkt. 140 at 2-3, Dkt. 145 at 2-3 (discussion of the discovery prohibition of Rule 26(d)(1) in Riveer's Rule 56(d) Motions).  This erroneous premise completely and materially taints the Court's analysis of the Rule 56(d) issues.

Third, the Court stated that "Defendants provided responses to all of Plaintiff's written discovery . . . ." Dkt. 216 at 2.  Hydro completely "sandbagged" Riveer, however, by *delaying over five months* before finally producing over 10,000 document pages (76% of its entire production) in response to Riveer's document requests served on May 16, 2014.  *See* Dkt. 153 at 2-3.  This Court has now rewarded Hydro for its blatant gamesmanship.

Fourth, the Court concluded (without any explanation) that Riveer "failed to meet the rule's requirement of providing specificity as to what facts it expects to uncover if it is allowed more time to conduct discovery."  Dkt. 216 at 2.  In its Rule 56(d) motions, however, Riveer provided over 24 pages of detailed explanation regarding exactly what facts it expected to discover—and ultimately DID discover—as outlined further herein.  *See* Dkt. 87, 88, 97-98, 103 and 108 (Plaintiff Riveer's Rule 56(d) Motions).  For example, Riveer identified 10 specific

3

desired depositions, 57 specific document requests, and many other specific facts for further, necessary discovery. *Id.* The level of detail provided by Riveer is simply irreconcilable with the Court's conclusion that Riveer did not provide sufficient "specificity" in its Rule 56(d) Motions.

For any and all of these reasons, Riveer respectfully requests that this Court reconsider its decision denying Riveer's Rule 56(d) Motions.

### III. FIRST CAUSE OF ACTION

The Court's primary errors in its ruling on Riveer's First Cause of Action are legal errors. Both errors present themselves via the Court's reliance on the *A.C. Auckerman* case in ruling that the entirety of Riveer's patent infringement claim—including Riveer's request for post-filing damages and injunctive relief—is "barred by the doctrine of laches." *See* Dkt. 216 at 7. But as both the Supreme Court and the Federal Circuit have noted just within the last several months, *A.C. Auckerman* has **never** supported barring a patent infringement claim **in its entirety** (to include post-filing damages and injunctive relief). Also, the continued vitality of *A.C. Auckerman* is very much in question. Concerning the former point of law, as the Supreme Court in *Petrella* recently summarized:

> [T]he Federal Circuit has held that **laches can bar damages incurred prior to the commencement of suit, but not injunctive relief**. *A.C. Aukerman Co. v. R.L. Chaides Constr. Co.*, 960 F.2d 1020, 1029–1031, 1039–1041 (1992) (en banc). We have not had occasion to review the Federal Circuit's position.

*Petrella v. Metro-Goldwyn-Mayer, Inc.*, 134 S. Ct. 1962, 1974 n.15 (2014) (emphasis added). Therefore, this Court's first "clear error" for reconsideration is the mistake of applying laches to bar anything but pre-filing damages, much less Riveer's entire First Cause of Action. No case— neither *A.C. Auckerman* nor any other—would support barring Riveer's request for post-filing damages, or its request for injunctive relief. In fact, the law is to the exact contrary, as the Supreme Court summarized in *Petrella*. *See also Meyers v. Brooks Shoe, Inc.*, 912 F.2d 1459,

4

1461 (Fed. Cir. 1990) ("Laches bars recovery of damages for any infringement occurring before suit was filed."); *Adelberg Labs., Inc. v. Miles, Inc.*, 921 F.2d 1267, 1270 (Fed. Cir. 1990).

The Court's second legal error is not recognizing the imminent change in the controlling law. Taking an appropriate cue from the Supreme Court's *Petrella* decision—which eliminated laches as a defense to copyright infringement—the Federal Circuit on December 30, 2014 requested briefing on the following issues in a forthcoming *en banc* rehearing in the *SCA Hygiene* case:

> (a)  In light of the Supreme Court's decision in *Petrella v. Metro-Goldwyn-Mayer*, 134 S. Ct. 1962 (2014) (and considering any relevant differences between copyright and patent law), should this court's en banc decision in *A.C. Aukerman Co. v. R.L. Chaides Constr. Co.*, 960 F.2d 1020 (Fed. Cir. 1992), be overruled so that the defense of laches is not applicable to bar a claim for damages based on patent infringement occurring within the six-year damages limitations period established by 35 U.S.C. § 286?
>
> (b)  In light of the fact that there is no statute of limitations for claims of patent infringement and in view of Supreme Court precedent, should the defense of laches be available under some circumstances to bar an entire infringement suit for either damages or injunctive relief? *See, e.g., Lane & Bodley Co. v. Locke*, 150 U.S. 193 (1893).

Dkt. 196 (Plaintiff Riveer's Response to Defendants' Notice of Supplemental Authority). This Court should recognize that no matter how the Federal Circuit ultimately decides the *SCA Hygiene* appeal en banc, *A.C. Auckerman* will no longer be controlling precedent on issues of laches. As noted, Riveer brought this forthcoming change in the controlling law specifically to the attention of this Court on December 30, 2014, more than a week before the summary judgment decision. *See* Dkt. 196.

Several of the Court's statements in its analysis of the laches issue suggest factual errors as well. First, the Court states, "The Michigan District Court entered summary judgment in Defendants' favor on all issues of liability and found as a matter of law that Defendants' Hydropad does not infringe the '792 patent claims." But the Court's focus is misplaced. The

5

non-infringement ruling had nothing to do with the technical issues in this case concerning the structure of the Hydropad. *See* Dkt. 96 at 6. Moreover, the Court ignores the one ruling from the Michigan court that *is* probative of the laches issue—the denial of summary judgment on equitable estoppel grounds, based on the same set of facts. *See id.* at 6-9.[2] This ruling from December 2008 is incompatible with this Court's far-removed 2015 ruling, which relies heavily on the same 2000-2007 time period during which the Michigan court found Riveer's actions to be completely reasonable.

Second, the Court's statement that in 2000, Riveer "knew, or should have known of its potential '298 patent claim against Defendants' wash pads" misapprehends the material facts in dispute. In 2000 and before 2008—when Riveer first learned of Hydro's integral "side trough" wash pad design—Hydro's wash pad designs could not infringe the '298 patent claims because they were "containment pads" lacking all of the elements of the '298 patent claims, including requiring an integral "drainage fitting attached to the outer surface of one of [the] walls" and the associated tube and pump. With the integral side trough design as of 2008, Hydro's newer, redesigned wash pads infringed because all of the elements of the '298 patent claims are met, as Riveer has explained in detail. *See* Dkt. 202 at 12-18; *compare* Exhibits B-C (attached hereto, showing Hydropad before and after 2008 integral side trough redesign). Therefore, the Court erred in concluding that Hydro's design changes in the 2008 time period "do not relate to any element of the '298 patent claims."

Because of clear factual errors and the imminent change in the controlling law on laches, the Court should reconsider its ruling on the First Cause of Action.

---

[2] The Court also states that in the prior Michigan litigation, Riveer "rel[ied] on its '298 patent to support its invalidity defenses against [Hydro's] patent infringement claims . . . ." Dkt. 216 at 4. But Riveer only relied on its '792 patent as prior art, not the '298 patent.

6

## IV. THIRD CAUSE OF ACTION

On Riveer's Third Cause of Action, the Court concluded that "no reasonable jury could find that . . . the press release link constituted an offer to sell." Dkt. 216 at 10. The Court erred by misapplying the *MEMC* and *Superior Industries* cases to **require** "price terms" for any infringing offer to sell under 35 U.S.C. 271(a). *Id.* at 9-10 (citing *MEMC Elec. Materials, Inc. v. Mitsubishi Materials Silicon Corp.*, 420 F.3d 1369, 1376 (Fed. Cir. 2005) and *Superior Indus. v. Thor Global Enters.*, 700 F.3d 1287, 1290 (Fed. Cir. 2013)). The law is not so strict about any such requirement of price or any other terms in an infringing "offer to sell," however. *See* Dkt. 95 at 16-17 (citing multiple cases and authorities).

Also, in direct contrast to the Court's conclusion, when asked about the very "press release link" at issue and whether it would be reasonable for a customer (or a juror) to "consider the skid steer side trough being offered for sale by Hydro," Hydro's Alan McCormick admitted specifically, "I think that that might be reasonable." *See id.* at 20 (quoting McCormick Depo. 149:1-3). Especially when this testimony is viewed in the light most favorable to Riveer, as it must be, the Court's conclusion that no reasonable jury could believe Hydro's own admission seems clearly to be erroneous.

## V. FOURTH, FIFTH AND SIXTH CAUSES OF ACTION

Both legal and factual errors also infect the Court's grant of summary judgment on Riveer's false advertising and unfair competition claims. First, as a legal matter, the Court states that Riveer "has asserted nothing more than the mere possibility that a misrepresentation may have been made" by Hydro in its bidding activities for several government solicitations at issue. Apparently there is a misunderstanding of Riveer's claims. In its opposition brief filed July 28, 2014, Riveer was very clear that its claims assert that "Hydro's product delivered to the Marine Corps [and others] was not what they represented it to be." Dkt. 110 at 27-29. This is a simple

but very context-specific inquiry. In the context governed by the strictures of the Federal Acquisition Regulations (FAR), by submitting bids, Hydro was affirming that its offered product included "only . . . those items that conform to the requirements of th[e] contract" and "[a] technical description of the items being offered in sufficient detail to evaluate compliance with the requirements in the solicitation." *See id.* at 29 n.7 (citing relevant FAR provisions). Therefore, by providing "low-ball" bids which neither conformed to the requirements of the contracts, nor provided technical detail sufficient to evaluate compliance with the bid specification, Hydro misrepresented to the government that its systems being bid actually met the technical requirements of the solicitation, which they verifiably (and admittedly) did not.[3]

As a factual matter, the Court merely concluded (without any analysis whatsoever) that Riveer "lacks any facts sufficient to support these causes of action."[4] Besides not enabling meaningful review, the Court's conclusion about the material facts ignores Riveer's evidence presented in July 2014 in opposition to Hydro's motion, and it improperly blocks from the record

---

[3] The Court also states, "Plaintiff must present evidence that Defendants made a false or misleading representation ***regarding their products*** in their bids." Dkt. 216 at 11 (emphasis added). Though not clear, to the extent the Court agrees with Hydro's theory that bidding a non-compliant system which ultimately is accepted cannot be a misrepresentation as a matter of law, this is another clear error. *See Cottrell, Ltd. v. Biotrol Int'l, Inc.*, 191 F.3d 1248, 1252 (10th Cir. 1999) ("A representation may be misleading for purposes of the Lanham Act without being literally false. Otherwise, the 'clever use of innuendo, indirect intimations, and ambiguous suggestions could shield the advertisement from scrutiny precisely when protection against such sophisticated deception is most needed.'"); *The Procter & Gamble Co. v. Haugen*, 627 F. Supp. 2d 1287, 1291 (D. Utah 2008) ("In order to recover damages or obtain equitable relief under the Lanham Act, a plaintiff must also show that either: (1) the challenged advertisement is literally false, or (2) while the advertisement is literally true it is nevertheless likely to mislead or confuse . . . .").

[4] "While Rule 52(a)(3) . . . contains the pertinent qualification that a 'court is not required to state findings or conclusions when ruling on a motion under Rule 12 or 56,' that rule does not relieve a court of the burden of stating its reasons somewhere in the record when its underlying holdings would otherwise be ambiguous or inascertainable." *TriMed, Inc. v. Stryker Corp.*, 608 F.3d 1333, 1342-43 (Fed. Cir. 2010) (internal citation and quotation omitted).

all of the probative discovery Riveer has obtained since then. For example, in its opposition in July, Riveer cited to testimony from Hydro's Alan McCormick, admitting that Hydro submitted the bids at issue hoping that the solicitation requirements would not be strictly enforced by the government. *See* Dkt. 110 at 29. Riveer also demonstrated how Hydro's systems delivered to the government clearly fell short of meeting the bid specifications, to the detriment and damage of both the government and Riveer. *See* Dkt. 106 (Petter Decl. ¶¶ 3-5, Exs. D-E).[5] Since July, Riveer has obtained many other documents and admissions from Hydro, confirming that Hydro employed the same "false certification" tactic over and over, winning millions of dollars of contracts under false pretenses. Hydro's admissions include testimony from Hydro's key employee responsible for all government bids—Doug Felice—who admitted that Hydro's bids at issue did not meet many of the "salient characteristics" of the bid specification, as well as Rule 30(b)(6) testimony from Hydro admitting that it makes no effort generally to specifically meet each line-item in government bid specifications, as is required by the FAR for responsible, truthful bidding practices.[6] Riveer should have been given—and should now be given—the opportunity to present its evidence supporting genuine issues of material fact to the Court in writing in opposition to Hydro's summary judgment motion.

---

[5] As the Petter Declaration and the exhibits show, vis-à-vis the bid specifications requiring strict compliance, Hydro misrepresented at least four different aspects of the system it offered to the Marine Corps, and at least nine different aspects of the system it offered to the Army. This Court may not agree that misrepresentations have been proven, but viewing this evidence in the light most favorable to Riveer, a jury certainly could rely on what Riveer has presented to draw a contrary conclusion.

[6] This Motion for Reconsideration is not intended to provide all of Riveer's evidence supporting its claims at issue. To do so would require a thorough discussion of numerous additional documents and deposition transcripts not available in July 2014. Also, because Hydro has designated nearly every document and deposition transcript page in this case as "Attorney's Eyes Only," Riveer's complete evidentiary showing would need to be filed under seal.

## VI.     CONCLUSION

For each of the foregoing reasons, Riveer respectfully requests that this Court reconsider its Memorandum Decision and Order granting summary judgment.

Dated:  January 29, 2015                                             Respectfully submitted,

**One LLP**

/s/ Stephen M. Lobbin
Stephen M. Lobbin (admitted *pro hac vice*)
*Attorney for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that I served the foregoing document—**PLAINTIFF RIVEER'S MOTION FOR RECONSIDERATION OF SUMMARY JUDGMENT MEMORANDUM DECISION AND ORDER**—pursuant to Fed. R. Civ. P. 5(b)(2)(E) on the parties as follows:

Brett L. Foster
Mark A. Miller
Christopher B. Hadley
**Holland & Hart LLP**
222 S. Main Street, Suite 2200
Salt Lake City, Utah 84101


Dated:  January 29, 2015                    /s/ Stephen M. Lobbin
                                            Stephen M. Lobbin (admitted *pro hac vice*)
                                            *Attorney for Plaintiff*