1                IN THE UNITED STATES DISTRICT COURT

2                       DISTRICT OF UTAH

3                       CENTRAL DIVISION

4

5    PETTER INVESTMENTS, a Michigan    )

6    corporation doing business as     )

7    Riveer,                           )

8              Plaintiff,              )

9    vs.                               )   CASE NO. 2:14-CV-45DB

10   HYDRO ENGINEERING, a Utah         )

11   corporation, et al.,               )

12             Defendants.             )

13   _____   )

14

15             BEFORE THE HONORABLE DEE BENSON

16             -------------------------------

17                     April 29, 2015

18

19                     Motion Hearing

20

21

22

23

24

25

```
 1                      A P P E A R A N C E S

 2

 3
        For Plaintiff:              STEPHEN M. LOBBIN
 4                                  2020 Main Street
                                    Suite 600
 5                                  Irvine, California

 6                                  MARK FORD
                                    1389 Center Drive
 7                                  Suite 300
                                    Park City, Utah
 8

 9

10
        For Defendant:              MARK MILLER
11                                  BRETT FOSTER
                                    222 South Main Street
12                                  Suite 2200
                                    Salt Lake City, Utah
13

14

15

16

17

18

19

20

21
        Court Reporter:            Ed Young
22                                 351 South West Temple
                                   Room 3.302
23                                 Salt Lake City, Utah 84101-2180
                                   801-328-3202
24

25
```

```
1   April 29, 2015                           2:00 p.m.

2                    P R O C E E D I N G S

3

4            THE COURT:  Good afternoon.

5            Sorry to keep you waiting.  Those criminal

6   hearings went longer than anticipated.

7            We're here in Petter Investments, Inc. versus

8   Hydro Engineering.  The case number is 14-CV-45.  Mr. Brett

9   Foster is here and Mr. Mark Miller representing the

10  defendants.  Mr. Stephen Lobbin is here --

11           MR. LOBBIN:  Good afternoon.

12           THE COURT:  -- and Mr. Mark Ford representing the

13  plaintiff.

14           Who else is with you at counsel table?

15           MR. FORD:  This is Jessica Garcia, Your Honor, one

16  of our paralegals.

17           THE COURT:  Nice to have you here, Ms. Garcia.

18           What I have before me is the defendant's motion

19  for summary judgment on plaintiff's first claim for relief,

20  and I am not sure whether I'm also hearing the plaintiff's

21  motion requesting leave to serve its amended final

22  infringement contentions today.  I just received the

23  opposition memorandum from the defendants.  It came in

24  today, but it is dated 4-27-15.

25           What was your plan?  What did you think we were
```

1    doing with regard to that motion here today, Mr. Lobbin?

2            MR. LOBBIN:  Certainly, Your Honor, I can address

3    that.  With regard to the other two motions that were

4    pending, in view of the Court's claim construction on those

5    two patents, we proposed to the defendants that we file a

6    joint motion requesting that the Court enter judgment on

7    those issues of noninfringement because the claim

8    construction issues, I think in both of our views, resolved

9    the issues on the motion.  We are really here on the summary

10   judgment, and then I was going to get to the second --

11           THE COURT:  You were going to get to my question

12   sooner or later.

13           MR. LOBBIN:  Yeah.

14           THE COURT:  I know we're not here on the

15   second and third --

16           MR. LOBBIN:  I thought you had mentioned that

17   before.  The opposition was in opposition to a motion for

18   leave for us to file and serve our amended --

19           THE COURT:  Right.

20           MR. LOBBIN:  -- infringement contentions under the

21   local rule.

22           THE COURT:  Were you planning on having argument

23   on that here today?

24           MR. LOBBIN:  We can.  We could, but --

25           THE COURT:  What did you understand?  Was that

```
 1    going to be heard today as well?  What was your
 2    understanding?
 3              MR. MILLER:  I am prepared to argue it too, if we
 4    want to talk about it.
 5              THE COURT:  Well, if someone tells me they are
 6    surprised, then I won't hear it today.  But if you're ready
 7    to advance your arguments, I will be happy to do it all
 8    today.
 9              MR. LOBBIN:  I guess given that, I probably want
10    to defer just because we also got the opposition, so I have
11    not fully digested that.
12              THE COURT:  We'll defer on that motion.
13              I'm only here today to hear argument on the
14    defendant's second motion for summary judgment on
15    plaintiff's first claim for relief.
16              Mr. Miller.  I forgot to recognize your --
17              MR. MILLER:  This is Sherry Stucki, our paralegal.
18              THE COURT:  Nice to have you here.
19              Mr. Miller, are you ready to go?
20              MR. MILLER:  I am.
21              Can you bring up 8624 when you're ready?
22              Your Honor, in addressing this motion, the
23    critical pieces of evidence that need to be focused on are
24    claim one, Riveer's infringement contentions, and the
25    Court's claim construction.  Those three pieces of evidence
```

1    are all you need to decide whether they have any grounds to

2    push this case to trial on claim one or on the 298 patent.

3            Blow up claim one, Sherry.  It is in that second

4    column there.

5            If you look at claim one, the three claim elements

6    I'm going to talk about in my argument today are the frame

7    elements, including the bottom surface, and then the grate

8    elements.  So frame, bottom, surface and grate.  If you look

9    at that clause that talks about the frame, and I'm sure that

10   we have all read this a million times, but you have got four

11   walls, and then you have a bottom surface that extends

12   between those walls, and why it extends between the walls is

13   to define a basin for collecting water.  So in order to

14   infringe, you have to have a product that has a basin that

15   is made from the four walls and a bottom surface.  It is

16   very simple.

17           Now go to my presentation slides.  Let's go to the

18   next slide, Sherry.

19           If you start with the frame, there is that frame

20   clause from the patent claim.  The Court's claim

21   construction puts in the following information that the four

22   connected walls define an enclosed area, and there is an

23   inner surface facing the inside and the outer surface facing

24   the outside.

25           Next slide, Sherry.

1            Now, if you look at their infringement

2      contentions, the leader lines from number two are what

3      Riveer used in their infringement contentions to identify

4      and to give Hydro notice of what they are calling the four

5      frame walls.  What they identified was those walls of the

6      trough, and they also identified next to it that front wall

7      of the pad in that next drawing.  That is what they told us

8      are their infringement contentions.

9            So if you go to the next slide and if you look

10     here, based on these infringement contentions, if you were

11     to take those walls that they identify as the four walls,

12     and look at them from the top, and you see in this upper

13     corner here you have this red shape, and that would be the

14     shape of the walls they identified in their infringement

15     contentions.  You have the side trough right there enclosed

16     and then that front wall.

17           Now, these four walls are not weight bearing.  The

18     side gutter walls are not weight bearing.  That outer wall

19     of the side gutter does not bear any of the weight of the

20     vehicle being washed.  Not all of them have the inner and

21     outer surfaces.  You do have a defined enclosed area there

22     in the trough, but you don't have a single defined enclosed

23     area with inner and outer surfaces of each wall.

24           Go to the next one, Sherry.

25           In their infringement contentions they also make a

 1    reference, and it is kind of this vague reference where they

 2    say see also, and they identify these documents in the

 3    production, and they identify this document that has inner

 4    channels.

 5              Go to the next one, Sherry.

 6              They identify this document.

 7              Then the next one, Sherry.

 8              They identify this document where they show all of

 9    the different beams and stuff as the frame, but they never

10    point to any of these as the four walls.  They just say see

11    also these documents that show I guess that Hydro's product

12    has a lot of frame beams, but they don't give any context or

13    give any clarity other than element two where they actually

14    point to specific walls, and those are the walls that they

15    claim in their infringement contentions.

16              Go to the next one, Sherry.  I want to jump ahead,

17    Sherry, to page 12 of the presentation.  Is that 12?  There

18    we go.

19              Now let's talk about the bottom surface.  We have

20    got those walls that they point to in their infringement

21    contentions.  The bottom surface has to fill the area

22    enclosed by the four walls, and to define a basin for

23    collecting water, right?

24              Go to the next slide, Sherry.

25              They point to the little grooves in the top of the

1    Hydropad, and that number three is the bottom surface in

2    their infringement contentions, and they claim that the

3    little grooves in that corrugated top constitute the bottom

4    surface.  The problem with that is that bottom surface does

5    not extend between the frame walls to form a basin with

6    those frame walls.  It is on top of the frame walls.  It

7    does not even extend in the area defined by the four walls

8    they point to.  It does not extend between the side trough

9    walls.

10          Each one of those tiny little surfaces -- it is

11   quite a reach to try and call that a basin or a bottom

12   surface that could meet all the limitations in the claim,

13   even without the Court's claim construction.  Just looking

14   at that language in the claim, how can that possibly be the

15   bottom surface extending between the walls to form a basin,

16   each one of those grooves?  It makes no sense there.

17          Go to the next one, Sherry.

18          This shows that it does not satisfy either the

19   plain language of the claim, without construction, and it

20   does not satisfy the Court's claim construction either.

21          The next one, Sherry.

22          This is their proposed new amendment, and I guess

23   if we are not going to go into that, we will skip that

24   slide.

25          Let's go to the next one, Sherry.

1          Petter did try and present doctrine of equivalents

2     through their expert witness in the summary judgment

3     briefing, but the only thing Dr. Paulus says is, he just

4     says that, well, you have got these grooved portions and he

5     just says they perform the claimed function of defining a

6     basin for collecting water in the same way as shown to

7     achieve the same result.  He just says it.

8          The problem is, and we have put a lot of case law

9     into our arguments, and I want to point out that a lot of

10    our information on Dr. Paulus and why his testimony is not

11    relevant or not reliable and can't create an issue of fact

12    is in docket number 217.  That is a reply brief from one of

13    the other summary judgment motions.  It was incorporated by

14    reference in the reply brief for this motion.  I just want

15    to point out that a lot of our arguments relevant to Dr.

16    Paulus for this motion are incorporated from docket 217.

17         There are all these reasons that we list here in

18    this slide why his testimony can't create a genuine issue of

19    fact.  He is a Ph.D. in mechanical engineering, but the only

20    thing they do is they hire him to state their legal

21    arguments or invoke the standard of same function, way,

22    result.  But invoking the standard does not satisfy the

23    standard.  If you slap a Ph.D. on your arguments, it does

24    not transform them into actual evidence that would preclude

25    a finding of summary judgment.  That is all that he does.

1            He is very conclusory.  He does not offer any

2    actual technical or engineering help.  He does not talk

3    about fluid dynamics or anything that is complex to try to

4    give clarity on an engineering principle or a principle of

5    physics.  He basically performs the same function that a

6    fact finder would perform.  Look at this very simple

7    structural apparatus and compare it to the claims as

8    construed.  That is not the function of an expert witness.

9    He is not helpful and he is not specific.  He is conclusory

10   and he does not qualify as a person of ordinary skill in

11   this art.  He has no experience in the wash pad industry, so

12   he can't have any foundation for saying what somebody in

13   this field would consider to be this type of a claim

14   limitation or context to the claim.

15            For all those reasons, Dr. Paulus's testimony does

16   not get them anywhere close to stating a prima facie case of

17   the doctrine of equivalents.

18            Let's go to the next slide, Sherry.

19            The differences are pretty clear on the bottom

20   surface.  If you look here, you have got the 298 system and

21   you have a grate, and we all know how the patented system

22   works.  The car is parked on the grate and the water falls

23   through.  It goes into the basin below.  That basin is

24   created by the frame walls and the bottom surface.  In

25   Hydro's system you don't have a grate.  They call it a

 1   grate.  They call number 4 a grate, those upper surfaces,

 2   and that is their infringement contentions, and then these

 3   bottom surfaces don't come anywhere close to satisfying the

 4   Court's claim limitations and neither does the grate.  It is

 5   not porous.  It is a solid piece of steel.

 6          The next one, Sherry.

 7          As far as what they have presented through Dr.

 8   Paulus on the doctrine of equivalents, the impervious top

 9   channels and grooves, and that is what they want to call the

10   bottom surface, and those are just those grooves that go

11   through, and those impervious grooves in the impervious top,

12   they perform the function of directing water and debris

13   across the washing surface to a side trough.  That is what

14   those so.

15          That is not the function of the bottom surface and

16   basin of the claimed invention.  The bottom surface of the

17   claimed invention collects the water and debris.  It

18   collects it so that it can later be sucked out through a

19   drainage fitting.

20          Sherry, go back to A-624, claim one, and blow up

21   claim one.

22          You'll see that claim one also has this limitation

23   down a few lines that says there is a drainage fitting that

24   is attached to the outer surface of one of the walls, so to

25   allow water collected in the basin to flow out through the

1    drainage fitting, right?  Well, if these grooves in the

2    impervious top are supposed to be the basin, there is no

3    drainage fitting attached anywhere near those grooves to

4    allow water to flow out of them.

5          Water flows through those grooves by gravity, not

6    by a pump.  If you go down two more, a few more, it says

7    there is a pump for causing water to flow from the basin.

8    There is no pump pulling water from those grooves.  There is

9    no drainage fitting that the water goes through from those

10   grooves.  The drainage fitting, and there is none, and that

11   is why you can't view the grooves in the impervious top to

12   be a basin.  That is why, if you go back to that slide we

13   were on in my presentation, Sherry, that is why you don't

14   satisfy the function.  It is substantially different.

15         Those grooves in the top channel do not collect

16   water and debris that can later be sucked out through a pump

17   through a drainage fitting.  Okay.  It does not perform in

18   the same way.  The channels and grooves in the Hydropad,

19   they are an integral part of the corrugated washing surface.

20   They reside above the frame walls, above, but they don't

21   combine with the frame walls to form a basin below the

22   washing surface.  They don't intersect with the frame walls

23   to form a basin.  They don't do it in the same way.

24         Next slide, Sherry.

25         This is where we get to grate.  Now, grate is very

1    simple and the Court's claim construction says a grate is

2    porous.  This is a very simple dichotomy, and we have put in

3    the briefing the difference between Riveer's wash pad

4    invention and Hydro's wash pad inventions, and one was the

5    grate over a basin and one was an impervious top with a side

6    trough.  It really is that simple.

7              Next slide, Sherry.

8              What they call the grate, is they want to dissect

9    the components of Hydro's wash pad and say, well, we are

10   just going to say the very top ridges of our corrugated,

11   impervious surface is the grate, and apparently they are

12   going to say that that is a porous grate but it is not.  We

13   have a solid piece of corrugated steel that is not porous.

14   Nothing can flow through it.  It lands on top and it flows

15   across to a side trough.

16             Next one, Sherry.

17             What they point to as the grate on Hydro's wash

18   pad is not a porous framework.  It does not fill the

19   horizontal cross section of the enclosed area of the walls

20   that they define as the frame walls.  It does not engage the

21   top portion of the inner surfaces of all four frame walls as

22   the claim requires.

23             Next one, Sherry.  We'll skip this one, too.

24             Dr. Paulus gave the same conclusory testimony on

25   the doctrine of equivalents here.  He just said that the

 1  upper portions of the grating perform the same claimed

 2  function, and then he just quotes the function in the claim,

 3  in the same way to achieve the same result, again, invoking

 4  the standard of the law, as if that satisfies their burden

 5  to prove the standard.

 6          Really that is all they have ever done, and here

 7  we are this late in the case, and we are way past the notice

 8  pleading stage, and they don't get to just have somebody say

 9  this performs the same function the same way with the same

10  result and then claim that they have raised a genuine issue

11  of fact.

12          I want to go through how on the grate -- go two

13  ahead.  Go to 25.  Skip two ahead.

14          They can't satisfy the doctrine of equivalents for

15  this claim limitation no matter how hard they try.  The

16  Hydropad has an impervious top surface.  What is the

17  function and way that this operates?  For theirs on the

18  left-hand side there you see a porous grate over a basin and

19  that is the claim.  The water falls through it into the

20  basin.  If you look at ours on the right-hand side, it flows

21  across.  Ours does not support the vehicle above the basin

22  that collects the water.  It supports the vehicle to the

23  side of the collection trough.  Those are different.

24          Go to the next one, Sherry.

25          Here is another difference.  Our product directs

```
 1     the water across.  We don't allow the water to fall through
 2     the washing surface into a basin below.
 3              Next one, Sherry.
 4              Here is the result.  This is a result that was
 5     highlighted in Hydro's patent applications when they got the
 6     patent on their impervious topside trough and it is this.
 7     We permit access to wherever the water and debris is being
 8     stored, and you can access that to clean it out without
 9     removing the washing surface, without taking the car off the
10     wash pad and without even stopping the washing process.  Our
11     patent actually says in prior systems, and they cite to
12     Riveer's patent, and they say in prior systems you couldn't
13     do that.  Everything fell through the grate.  When you start
14     collecting mud and debris under there, you have to lift up
15     the grate to access that, which means the car can't be on
16     there, and it means you can't have the washing process going
17     on while you're accessing that basin.
18              That is one of the differences.  You can't say,
19     and there is no evidence in this case to support the idea,
20     that our product performs any of these claim limitations the
21     same way to get the same result or even performs the same
22     functions.
23              Sherry, bring up the video, their video that they
24     had at the tutorial.
25              If you remember, Your Honor, they brought this
```

```
 1    video to the tutorial.  Pause it there.

 2              I suspect this thing that they built has something

 3    to do with this video.  I have never seen this before.  I

 4    got pictures of it last night.  We have become accustomed to

 5    being surprised in this case.

 6              I want to go through this video and kind of show

 7    how it relates to the claims in the Court's claim

 8    construction and the doctrine of equivalents.

 9              Go ahead and press play.

10              They made this video to show a wash pad that has

11    the basin, the water fills up, and then it is under there

12    and you have the wash surface, and this is the type of wash

13    surface that things fall straight through.  Then it sucks it

14    out through a drainage fitting just like their claims,

15    right?  That is just like their claims.

16              Then they want to go through a bunch of

17    modifications on this.  Well, here is modification number

18    one.  They want to bring that surface all the way up to the

19    top of the frame walls, and if you pause it right there,

20    Sherry, they bring that up to the top of the frame wall, and

21    that is the first modification that they simulate, and they

22    have now gone outside of the scope of their claims.  That is

23    no longer a bottom surface that forms a basin with those

24    four sidewalls.  It is not a basin according to the language

25    in the claims.  It is now all the way at the top.  It is not
```

1    a bottom surface, and so they have already taken it out of

2    the scope of the claims with that one modification.

3            Go ahead, Sherry.

4            Then they add this side trough.  That is a

5    difference, too.  Modification number one is this is not a

6    product covered by their claims.  Modification number three,

7    and they keep making some, and they take the trough away and

8    they pull it out.  This does not actually simulate any

9    actual product in the case, and there should be a green wall

10   on the inside of that trough and the water does not fill up

11   from the bottom magically, but this too is not a product

12   covered by their claims.  That surface above, that red

13   surface is not a bottom surface that forms a basin.

14           Then they go through a further modification and

15   they pull all of those rails up and they get a solid piece

16   of impervious, nonporous, corrugated steel and put that on

17   there, and now they are even further away from their claims.

18           What is amazing is that they feel that this

19   illustrates the scope of their claims.  No matter how many

20   changes you make to your wash pad, no matter how far away

21   you get, how many different patents you get on your design,

22   and no matter how many differences you make, if you wash

23   something on it and the water is stored somewhere, according

24   to Riveer you infringe their patent.  Their patent can

25   stretch as far as any wash pad that you wash something on

1    and water gets stored.  This illustrates perfectly why their

2    claim ends with that first modification, and perfectly why

3    they can't claim infringement of the Hydropad either

4    literally or the doctrine of equivalents.

5              That is all that I have.

6              THE COURT:  Thank you, Mr. Miller.

7              Mr. Lobbin.

8              MR. LOBBIN:  Thank you, Your Honor.  Good

9    afternoon.

10             May it please the Court, certainly Mr. Miller

11   makes many arguments, and obviously we have our positions,

12   and that is kind of the purpose of summary judgment in our

13   view to not resolve legal arguments and disputes over the

14   minutia of what a jury is entitled to consider when they

15   consider infringement.  The jury is going to have the claims

16   in front of them.  They are going to have this Court's

17   interpretation of those claims, an elaboration on what those

18   claims mean, and they are going to have the products

19   themselves, the accused infringing products, and they are

20   entitled to consider the opinions of one of ordinary skill

21   in the art.

22             Mr. Miller contends that, well, the only people

23   who can talk about these patents and who qualify as one of

24   ordinary skill in the art would be somebody who designs wash

25   pads.  We have Hydro and we have Riveer.  Those are the only

                                                                    20

1    games in town.  I doubt if we presented one of our employees

2    as an expert, they probably wouldn't be as objective in the

3    view of this Court as it would be to present a Ph.D.

4    mechanical engineer who is certainly of ordinary skill, and

5    I would contend one of extraordinary skill in the art in

6    being able to describe the technology and function of these

7    types of products.

8            Summary judgment is not the place to exclude the

9    analysis and opinions of one of ordinary skill in the art

10   like Dr. Paulus.  We didn't bring him here today like last

11   time, but we certainly have, in the record and in our

12   briefing and in the papers, his testimony which is at

13   length.  There are some snippets crafted for Mr. Miller's

14   presentation, but his analysis is extensively longer.

15           Obviously I don't have to remind this Court that

16   at summary judgment we're trying to find whether a

17   reasonable jury, a reasonable jury is going to have a

18   legally sufficient evidentiary basis to find for the

19   nonmoving party here, and that is us.  The nonmoving party

20   is entitled to present evidence in opposition to a summary

21   judgment motion, and have that evidence considered in the

22   light most favorable to it, Riveer.  We're entitled to not

23   have the Court or anyone else cast aspersions on the

24   credibility of Dr. Paulus.  Certainly we believe he is

25   qualified and we believe he is credible and his analysis

 1    shows that.

 2           Certainly the jury is allowed to consider that

 3    testimony of Dr. Paulus and make those factual findings

 4    regarding infringement.  Infringement is taking claims, and

 5    this Court has done its job, and applying those claims to

 6    the accused infringing products.

 7           A couple of comments on Mr. Miller's comments.

 8    Talk about surprises.  I was surprised to learn that he

 9    pointed to an image that everyone in engineering knows is a

10    cutaway, showing a portion of a product from Hydro's own

11    manuals, and in our infringement contentions, and saying,

12    well, it only shows three walls, not the four walls

13    required, or it only shows two walls.  Obviously that is a

14    surprise to me.  We have been talking about this all along

15    for over a year, about what the four frame walls are, and we

16    talked about it in claim construction and we're going to

17    talk about it here today.

18           At the time I put those infringement contentions

19    together, I didn't have hardly any of Hydro's documents.

20    What I did have was an engineering drawing that showed a

21    cutaway, and I don't know if we have that handy, but I think

22    Your Honor knows what I am referring to, where there is a

23    trough and a wall and there are labels pointing to those

24    walls and our infringement contentions to say those are the

25    four frame walls.  Everybody knows it is a cutaway.  Yes,

1    there are walls off the page.  That is all that I had to

2    work with because I only had a couple hundred of their

3    documents at that point in time.  That issue was never

4    raised before.

5          As you can see in our model that we put together,

6    the four walls, and so what that picture that we looked at

7    before shows is a cutaway approximately there.  It struck me

8    as odd that that argument was first in his presentation.

9          Another thing about Dr. Paulus is it is unrebutted

10   testimony.  Why didn't Hydro even take his deposition?  They

11   didn't take his deposition.  They didn't put on their own

12   expert.  They didn't present any testimony of one of

13   ordinary skill in the art.  So our view is that under the

14   summary judgment standard, we have got to accept Dr.

15   Paulus's analysis and conclusions as true and the jury is

16   entitled to hear that.

17         Now, if they decide against us, that is fine, but

18   at least a jury is weighing Dr. Paulus and seeing him as a

19   witness, hearing his qualifications, and listening to his

20   analysis, and making their conclusions about whether his

21   testimony supports infringement or not.

22         In addition, obviously this Court has rendered its

23   claim construction.  Hydro attempts to take that

24   construction and kind of twist it in certain ways that if

25   you hold one eye closed and stand on one foot you can deduce

 1    noninfringement.   I have read the Court's claim

 2    construction order many times, and in the relevant part to

 3    this patent the Court really says the claim language kind of

 4    dictates the construction here.   It is pretty obvious from

 5    the claim language what we're talking about, and certainly

 6    the Court added some limitations or added some elaboration

 7    on what those claim terms mean.   But really, and we'll go

 8    through that, but really for the three claim terms of

 9    interest here, the Court's construction did not get us very

10    far away from what the claim language itself says.

11           Again, in front of a jury that claim language and

12    this Court's construction and the jury instructions is going

13    to be looked at by the jury and weighed against the

14    testimony presented, weighed against the exhibits that they

15    are shown, and they are certainly going to be able to ask,

16    is this a grate?   Is this a frame?   Is this a bottom

17    surface?   Those are fact questions.

18           There are five disputed elements.   Mr. Miller went

19    through them, and I believe he didn't go through a couple of

20    them, but the three main elements that he did go through --

21    again, in the claim construction order, the Court went

22    through a frame, grate and bottom surface and elaborated on

23    what those claim terms mean.   Essentially Hydro can't change

24    the words of the claim and the words of this Court's

25    construction, the words that are both used and the words

 1   that weren't used that they try to add here today.

 2          The first thing I wanted to look at is a couple of

 3   pages from one of Hydro's prior demonstrations.  This was

 4   from a demonstrative at the hearing I believe we had in

 5   November in the case.  Much like the animation that Mr.

 6   Miller showed, which is our animation, this shows the

 7   evolution of the Hydropad.

 8          First, at the top of the screen they show the

 9   early Hydropad.  Well, it has the grate.  It has got the

10   bottom surface.  Okay.  You can see the arrows there.  There

11   is a lot of airspace in between.  Certainly water and debris

12   fall through the open air to the bottom surface.

13          What happens next?  The Hydropad 2.0, if you will,

14   and all that changed was that bottom surface was brought up,

15   and those grating portions, those parallel bars that form

16   the grating were welded to that bottom surface, and now you

17   have a two-piece surface that combines the functions, the

18   same functions of what was going on with the first

19   generation above.  You can see the cutaway there where they

20   show the two pieces welded together surface that is

21   identical in form and function to the first generation

22   Hydropad.

23          Then the second page is the accused infringing

24   Hydropad 3.0.  What has happened here?  The only thing that

25   has happened is they have taken the two-piece welded

1    together frame bars with the flat plate under it welded

2    together, and they probably, as a manufacturing improvement,

3    made that one piece.  It is a lot simpler to manufacture

4    than having to go in and weld all those frame members to the

5    bottom surface.  That is all that changed.

6         Hydro wants you to believe that there was a

7    monumental change in structure and design when that bottom

8    surface was brought up to the frame members.  Well, again,

9    how do we look at this in the light most favorable to Riveer

10   on this motion?  Well, let's take a look at how somebody

11   might look at it in a light most favorable to Riveer.

12        Next image.

13        At the deposition of Mr. McCormick, which was

14   ultimately Hydro's Rule 30(b)(6) witness and vice president,

15   we talked about this image.  This is not the accused

16   infringing design.  This is the early Hydro 1.0 design that

17   we looked at in the prior image.  You have the rails and the

18   grate, the grating, and then you have open air, and then the

19   water and debris fall through there and you collect it there

20   in the basin.  This is before they brought the plating up.

21        What did he say in his deposition?  Again, this

22   testimony should be presented to a jury, as we would like to

23   do, and the jury is entitled to believe it.  Line 10.  I'm

24   talking to him and I am asking him a very simple question.

25   If we brought that up, if we brought that piece of pan up to

```
 1    the underside of the grate, it would still be a grate,

 2    right?  That hasn't changed; isn't that correct?  There is

 3    an objection and the witness says all right.  I repeat, we

 4    would still call it a grate?  What does Mr. McCormick say?

 5    Yeah.  Instead of collecting the water in the pan, it would

 6    run off onto the ground or into a gutter, if you put a

 7    gutter on there like our patent.

 8              I think a jury would agree with me that

 9    Mr. McCormick has just told us that there is no structural

10    or functional difference between the Hydropad 1.0 and the

11    Hydropad 2.0.  All you have done is you have brought that

12    bottom surface up and it is now welded to the underside.

13    Instead of collecting water in the pan, it would run off in

14    between those grate pieces, the water channels, onto the

15    ground if you didn't have a gutter, or if you had a gutter,

16    it would go into the gutter just like our patent.

17         Mr. Miller mentions Hydro's patents and, of course, we

18    have talked about this in prior motions, but Hydro's patents

19    came after the patent we're talking about today, so the fact

20    that Hydro got patents on its inventions, that is fine and

21    that does not change the fact that a later invention can

22    still infringe an earlier patent, which is the case here.

23         Let's go to that next image.

24         This is an image of a Hydropad and I brought this up to

25    direct the Court's attention to the weight bearing aspect.
```

 1    You may recall in the claim construction and on the

 2    infringement issues there is an issue about, well, the frame

 3    has to be weight bearing.  If you look at this, you can see

 4    that not only the frame but also obviously the top surface

 5    is intended to be weight bearing.  You can see that the

 6    cover of the trough can swing over on top of the trough and

 7    close and, as you can see in the front and the bottom of the

 8    image, there is a ramp and a vehicle can drive up that ramp

 9    and be on top of the surface of the wash pad.

10        Well, you can see that that ramp allows the vehicle to

11    drive right over the top of that side trough, right over the

12    top of the grating as well.  The whole, entire thing is

13    weight bearing.  The grating is weight bearing.  The cover

14    on the side trough is weight bearing.  The frame members are

15    weight bearing.

16        An important aspect of these products is that there is

17    some heavy stuff on there.  There are tanks and there is

18    heavy equipment.  If that stuff is turned around or moving,

19    you have to have a structurally integral piece of steel with

20    all four walls and every aspect of that thing welded

21    together so that any type of movement is going to be

22    supported.  Weight bearing is certainly one aspect of it

23    that is satisfied in the accused infringing products.

24        If we can go to the animation, please.

25        Obviously in contrast to Mr. Miller, we believe that

 1    this video accurately shows the evolution of those Hydropads

 2    that I showed you in the other image, the Hydropad 1.0 where

 3    the water is filing a basin that is down below the grating,

 4    where there is a hinge on the grating to pull it up, so you

 5    can't clean it out when there is a vehicle on there, and the

 6    water being drained out through a tube fitting.

 7         Pause it for just one second.

 8         As to that aspect of it, I think it just goes to the

 9    credibility of Hydro's arguments when they say that the

10    Riveer patent talks about that design and that design only,

11    that you're not able to clean things out while there is a

12    vehicle on the grate.  That is just a mischaracterization.

13         If you look at the patent, and if we could pull that

14    up, column two of the patent itself, line 53, and do you see

15    there line 53, Your Honor?  It says right above the 55 there

16    on the right-hand side, it says grate 32 also includes an

17    access panel for easy access to drainage fitting 34 and the

18    inners, and that probably should be innards, innards of

19    modular wash rack 12 in case of blockage or for general

20    cleaning.

21         What is access panel 37?  Let's go to figure three.

22    Access panel 37, if you look at the top there, it is that

23    white space.  37 is an access panel where you can get in

24    there and clean out what is there in the gutter, and there

25    is a gutter in the patented preferred embodiment, and clean

 1    it out.  You can see that there can be anything at all on

 2    the grating and it can stay there and it does not need to be

 3    removed.  So Hydro, once again, is just mischaracterizing

 4    the 298 patent.

 5         Let's go back to the animation.

 6         Obviously here we have got the grating, we have got

 7    that bottom surface, and we have got the frame walls, the

 8    three key elements that we are here today to talk about in

 9    the first generation of the Hydropad.

10         In the second generation, again, that bottom surface is

11    brought up, and now it is welded together to that grating,

12    and the water flows -- pause it here.  The animation

13    technology that we used was not able to show it accurately,

14    and I think Your Honor pointed this out last time at the

15    claim construction hearing, that obviously the water flows

16    from the vehicle in between the surfaces of that grating and

17    then that bottom surface is tilted, sloped so that the water

18    then flows down toward that side trough and into that side

19    trough.  That is all part of the bottom surface which

20    performs the claim function of collecting the water and

21    debris and ultimately with the drainage fitting down there

22    at the bottom left allows the water to be drained out.

23         Continue, please.

24         Now this 2.0 Hydropad has the side trough but it was

25    not an integral part of the pad.  What changed and what

1    caused this infringement claim was the change in the design

2    to the 3.0 in two aspects.  One aspect is the integral side

3    trough, which allows that bottom surface to collect the

4    water and debris in between those grating portions, and in

5    the side trough and then draining out through the draining

6    fitting.  Then the second aspect, if you let the animation

7    run, is instead of a two-piece grating and bottom surface

8    that are welded together, now we have simply done the

9    manufacturing efficiency of creating it one piece.  That is

10   shown by removing that top surface and putting the one-piece

11   corrugated surface that has both the grating as well as the

12   bottom surface, the water channels and the side trough.

13        We have built this model, and I can probably speak loud

14   enough that you can hear me, and may I approach the model?

15             THE COURT:  Yes.  I can hear you fine.

16             MR. LOBBIN:  Certainly if Your Honor is

17   interested, if the Court is interested you can come and take

18   a closer look.  The three elements we're talking about here

19   today are the frame, the bottom surface and grating, the

20   grate and then the other two sloped trays and a pump that

21   has a vacuum that we have not talked about really, so let's

22   talk about the first three.

23             This is a model of a Hydropad with a four-wall

24   frame.  Again, it is a cutaway.  I thought everyone

25   understood early on, and I think in deposition nobody raised

1  the issue that we only pointed to three walls on the

2  cutaway, but I think everyone understood that this is a

3  four-wall frame and that it is weight bearing.  You'll

4  notice that it is not just four walls.

5          There was some talk about the area within the

6  frame, and it is also supported underneath because there is

7  heavy equipment going on these things and it has to be

8  supported underneath, otherwise it wouldn't function at all.

9          The bottom surface.  Again, the intention of the

10  bottom surface and the purpose of it is to collect the water

11  and debris.  Whether this is down a little lower above some

12  grating or whether the grating sits right on top of it, like

13  in the Hydropad 2.0 design, it is still the same bottom

14  surface.

15          In reality this would be sloped, because you want

16  the water to flow not this way but toward the side trough,

17  and then this is a side trough cover that we talked about

18  earlier that is also weight bearing and part of the

19  structure of the surface of the wash pad.  It has to support

20  vehicles and people that are walking along here washing

21  equipment.

22          Then, of course, the manufacturing improvement of

23  taking one-piece corrugated, I think they call it, grating

24  bottom surface and the water channels there, again, channel

25  the water and debris towards the side trough.

1          How does that relate to the claims?  Well, the

2     frame, the Court said -- well, the claim itself says that

3     the frame has a first, second, third and fourth wall, each

4     wall having an inner and outer surface.  I think it is

5     clear, and I could go through taking this apart again, but

6     there are four walls and they are walls and they have inner

7     and outer surfaces.  There is four of them and they are

8     interconnected.

9          The Court elaborated on that claim term in the

10    construction.  The Court said a weight bearing frame.  That

11    is a new twist.  It has got to be weight bearing.  We think

12    that is consistent obviously with the patent.  Under any

13    reasonable interpretation, certainly an interpretation that

14    the jury would be allowed to utilize, these four frame walls

15    have to be weight bearing, in particular the fourth wall, or

16    if you take any of these walls off, this is going to buckle

17    and collapse.  These four walls of the frame have to be

18    weight bearing.

19         The Court said the walls have to be interconnected

20    and to define a single enclosed area.  Each wall has an

21    inner surface facing toward the enclosed area and an outer

22    surface facing away from the enclosed area.  That is the

23    balance of the Court's construction.  So interconnected,

24    single enclosed area, and certainly interconnected, and the

25    single enclosed area.  I don't think Hydro is contending

1    that it has to be an empty enclosed area.  Certainly there

2    are support members underneath here for structural support,

3    and certainly there is a side trough here, so the enclosed

4    area is the area within the frame.

5          It is also consistent with the function of these

6    devices.  It is like the Continental Divide.  Everything on

7    one side of the Divide flows the same way, toward the

8    Atlantic Ocean or the Pacific Ocean.  These wash pads are

9    designed such that anything that comes within these four

10   frame walls is going to eventually get down here, and if it

11   is liquid, out through the draining fitting, and if it is

12   solid, it is going to be scooped out or otherwise taken out.

13   The whole point of this thing is to have a four-wall

14   enclosed area, and anything that falls anywhere in here is

15   going to eventually flow down through this bottom surface

16   and these water channels to the side trough and out through

17   the drainage fitting.  That is the whole point.  That is

18   consistent with the Court's claim construction of a single

19   enclosed area.

20         How did the Court explain its construction?  Well,

21   the Court said that the claim language itself tells us that

22   it is weight bearing and interconnected and a single

23   enclosed area.  We don't disagree with that.  We think the

24   claim language itself also is consistent with how this

25   patent should be interpreted and how it should be applied.

1    We think the jury, sitting with a jury instruction that has

2    the claim language and has the Court's interpretation as I

3    just said, with Dr. Paulus's analysis and the evidence, in

4    the light most favorable to Riveer here, has to be able to

5    come to the same conclusion I'm coming to right now.

6           The bottom surface.  The claim element is a bottom

7    surface extending between the inner surfaces of the first,

8    second, third and fourth walls, to define a basin for

9    collecting water used to clean the item as well as any

10   debris removed from the item.  Well, the Court, again, in

11   the first sentence of its claim construction analysis, the

12   Court said the claim language itself compels the Court's

13   construction.  In order to define a basin for collecting

14   drainage, the bottom surface must be located on a lower

15   portion, though not necessarily the lowest portion, and the

16   Court italicized lowest, of the frame walls.

17          So where is the bottom surface?  It is the lower

18   portion of the grate.  Well, obviously the vehicle is here.

19   The vehicle is flush with the four frame walls.  That is one

20   elevation, if you will.  The bottom surface, certainly in

21   the Hydropad 1.0 and prior designs years and years ago, yes,

22   the bottom surface was way down near the ground.  The

23   Court's construction is that the bottom surface has to be at

24   a lower portion but not necessarily the lowest portion of

25   the area between the four frame walls.  Clearly the whole

1    point of the invention is served with this bottom surface is

2    the water channels in between the grating and that is the

3    lower portion.  Defining a basin for collecting water and

4    debris.  Obviously the whole point of these water channels

5    and the side trough is to collect water and debris.  It is a

6    simple explanation and the jury is entitled to rule in

7    Riveer's favor on that.

8         The grate.  The Court construed grate to be a

9    porous framework.  The word porous was not in the claim.

10   The Court agreed with Hydro's proposal and said, okay, the

11   grate has to be porous and it has to be a framework of

12   parallel or crossed bars that fills a horizontal cross

13   section of the enclosed area and engages the top portion of

14   the inner surfaces of the frame walls.

15        How did the Court explain its construction?  Well,

16   in part the Court said of course a grate -- of course was my

17   editorialization -- the Court said a grate that does not

18   allow debris to pass through the grate into the basin would

19   render the bottom surface irrelevant, inoperative is the

20   Court's word, mere surplusage.

21        So the point of saying that it is porous is that

22   the Court wanted to make sure that we are not talking about

23   a flat surface.  You could use a flat surface, and some of

24   these products are designed with a flat surface on top where

25   the water just kind of goes wherever gravity will take it

1    and is swept off, but the way I read what the Court said

2    here was that, look, the grate has to be a porous framework

3    of parallel or crossbars to assure that the grate is not

4    collecting any water, and the grate is not allowing any

5    water to be collected.  The grate is supporting the vehicle

6    and providing an elevation on which the vehicle rests, and

7    allowing the water and debris to sink to that bottom surface

8    so that it can be collected and channeled to where it needs

9    to go.

10          If you're going to do a flat grate or a flat

11   surface on which the vehicle rests, you are not going to

12   infringe this patent.  That is not what we're talking about

13   here.  Consistent with the Court's construction, the

14   analysis that we have provided both in my attorney argument

15   here and, more apparently, in Dr. Paulus's explanation, is

16   entitled to be weighed by a jury.

17          In addition, to go back to, and without pulling it

18   up, the deposition testimony because I think that is

19   critical.  The jury is going to be entitled to listen to

20   Mr. McCormick sit here and talk about how a grate is a grate

21   is a grate.  Hydropad 1.0, Hydropad 2.0, so what happens,

22   Mr. McCormick, when you bring the plate up?  Is it still a

23   grate?  Yeah.  It just does not fall through.  It is

24   directed to the sides.  What do you think a jury is going to

25   think about that testimony?  A grate.  That is a grate.  Of

 1     course they are entitled to hear Dr. Paulus as well.

 2             I'm tempted to go through pump and a vacuum and

 3     the slope tray, but I'm going to exercise discretion is the

 4     better part of valor and say that Dr. Paulus has provided a

 5     thorough analysis of those elements and I think he is

 6     entitled to be relied on, as well as the arguments that we

 7     made in our briefs, since it was not addressed by Mr.

 8     Miller.

 9             Thank you, Your Honor.  I have asked Mark Ford to

10     clarify anything that I may have missed, if that is

11     acceptable.

12             THE COURT:  It is.

13             MR. FORD:  I have nothing further, Your Honor.

14             THE COURT:  Thank you.

15             Mr. Miller, any reply?

16             MR. MILLER:  I want to address a few things, Your

17     Honor.

18             First of all, there is plenty of case law that

19     allows summary judgment on noninfringement.  There is no

20     dispute what the structure of Hydro's product is.  When the

21     accused product, the structure of it is undisputed, then

22     what the Federal Circuit has said over and over again is

23     that it collapses to claim construction and it is addressed

24     as a matter of law.  There is no more a question of fact at

25     issue.

1            It has got to be based on the evidence of record.

2    This is not evidence.  This is not evidence in the summary

3    judgment record.  Mr. Lobbin's narration of what he thinks

4    Hydro's product development progression is is not evidence.

5    He is not even correct on it.  He does not point to

6    testimony or documents to support his narration of what

7    Hydro does.  That is not in the summary judgment record.

8            He also said that when he did his contentions, he

9    didn't have all of Hydro's documents.  Well, every document

10   that he points to in their final infringement contentions,

11   and even in their amended final infringement contentions, he

12   had at the beginning.  He hasn't gotten anything new.  He

13   even took an early deposition of Mr. McCormick in April for

14   the purpose of getting the information that they need for

15   infringement contentions.

16           The one thing I do want to clarify is he made a

17   point about Dr. Paulus and said why hasn't Hydro deposed

18   him.  As soon as we got Dr. Paulus's affidavit we asked to

19   take his deposition.  We asked over and over again.  I mean,

20   we almost begged to take his deposition.  We offered during

21   the month of -- it was either February or March when this

22   was going on -- we offered at least 14 different dates

23   within a three-week window that we would be available to

24   take his deposition and they said you can take his

25   deposition on this one day, which our team was not

1    available, or nothing.  That is it.

2          Then after the Court scheduled the first hearing,

3    the claim construction hearing, I sent Mr. Lobbin an e-mail

4    and said in light of the hearing and when it has been

5    scheduled we would like to take his deposition.  It looks

6    like we have more time.  We propose these dates.  I gave him

7    four alternatives.  He did not even respond to that e-mail.

8    I got no response to that e-mail.

9          We have not been allowed to depose him, but we

10   don't need to because you can take his affidavit for what it

11   is, and we presented case after case after case in our

12   briefing where courts disregard conclusory expert testimony

13   at the summary judgment level.  Just putting it in the

14   record does not give you the right to get to trial.  If it

15   did, summary judgment would disappear in patent cases.  You

16   can always find an expert who will stand up and say that

17   performs the same function in the same way for the same

18   result, period.  Now we get to go to trial.  That is not how

19   the law works.

20         The one piece of evidence Mr. Lobbin talked about

21   was Alan McCormick's deposition, where he claims

22   Mr. McCormick says that the Hydropad has a grate.  I want to

23   look at that testimony.

24         Sherry, go to 204, docket 204-2.  It might be

25   Exhibit 2.  Yes.  Do you have that in there?  Okay.

1          Let me go through it.  It is Exhibit 2 to

2   Mr. Lobbin's declaration that they submitted.  If you read

3   the transcript they give of Mr. McCormick's deposition, they

4   are pretty selective on their highlighting.  On one of the

5   pages Mr. McCormick says I understand if I had those rails

6   mounted on a solid surface, talking about bringing that up

7   and hooking them to the rails, nothing would go through that

8   solid surface.  He says that.  Mr. Lobbin says and if you

9   tilted it, water would flow off.  Alan nods his head.

10  Mr. Lobbin said it would still be a grate, correct?  It

11  would just now have a tray attached to the other side of the

12  grate.  Mr. McCormick says I don't believe that it would at

13  that point be a grate.  That is pretty clear.  It would not

14  be a grate.

15          Then on the next page they go through and

16  Mr. Lobbin keeps pushing, well, we put it up there and we

17  hook it onto the channels and he says I am asking you a very

18  simple question.  If we brought it up, if we brought that

19  piece of pan up to the underside of that grate, it would

20  still be a grate, right?  That has not changed; isn't that

21  correct?  I objected.  The witness said okay.  Mr. Lobbin

22  said we'd still call it a grate.  Then Alan says, yeah, and

23  instead of collecting water, it would flow across the top.

24          Look at Mr. Lobbin's question.  We'd still call it

25  a grate.  How is that an admission that Hydro would call it

1    a grate?  Mr. Lobbin said we'd still call it a grate, him

2    and Petter.  If I was Mr. McCormick, I would say, yeah, you

3    guys will call anything a grate.  That is not an admission

4    that proves anything about what is and is not a grate.

5              Really that issue comes down to claim

6    construction, which is now settled, that it is a porous

7    structure, which we don't have here.

8              I want to talk a little bit about this model.  One

9    thing to clarify is this model does not simulate their

10   infringement contentions.  It does not.  It is even contrary

11   to their amended infringement contentions that they are

12   seeking to introduce.  Here is one reason.  Their

13   infringement contention point, and I don't know how you guys

14   take out this blue surface, okay, but we gave them documents

15   that they had that showed that there are frame walls in a

16   Hydropad, and this is not exactly a Hydropad at all, but

17   let's just go with their assumption.

18             They say element two, in their infringement

19   contentions element two satisfies the frame walls.  They

20   have got to point to four.  They have got to be specific

21   enough and not make us go hunting for, well, what if they

22   picked these walls to be the four or these walls?  They have

23   to say that these are the four that we are relying on to

24   satisfy the four in our claim.  They pointed to these walls

25   of the trough, this wall on the front, and that is it, the

1    trough walls and this wall.  They did not point to all of

2    these outer walls of the frame.  They did not do that in

3    their infringement contentions.  They didn't do it in their

4    finals and they didn't even do it in the amended ones in

5    their motion.  Those arrows point here and here and here and

6    here.  That is all they do.  We are supposed to divine their

7    positions, and I feel like I'm hearing new positions here

8    today.

9           Now, the next thing that does not equate to their

10   infringement contentions is the concept of the bottom

11   surface.  When they point in their infringement contentions

12   to a bottom surface, they point to these grooves.  That is

13   it.  But now they want to say, and they keep making these

14   bottom surfaces in this little video they made and in this

15   to include this little part that goes into the trough.  They

16   have never alleged that to be a bottom surface and it is

17   not.

18          The other irony is the claim says bottom surface

19   and bottom means something, and they propose the definition

20   of bottom as the lowest part of something.  The Court's

21   construction says the bottom surface engages the four

22   sidewalls at the bottom portion of the sidewalls.  They

23   still feel comfortable standing up here and saying, well, we

24   have brought this all the way up to the top of these walls,

25   if you can call this upper one-eighth portion of the wall

1    the bottom portion of the wall.  I mean, that is such a

2    stretch, but they still say if you bring it up to the top,

3    it is still a bottom surface.  Top is bottom and up is down.

4    This is such a backwards patent infringement allegation.

5          This little model that they have made, this is not

6    evidence.  The other thing that they don't have evidence for

7    is, I heard Mr. Lobbin say, look, this frame or this trough

8    he just says, without pointing to any evidence, that it is

9    weight bearing.  You can drive a car on that.  It happens

10   all the time.  I don't know where he is getting that from.

11   There has been no witness testimony to say that.  There is

12   no evidence to support that.  He can't just say it is weight

13   bearing.  If you rely on the evidence in the summary

14   judgment record, they cannot prove infringement as a matter

15   of law.  All of the evidence giving them every inference

16   they are entitled to, you cannot find a grate on four

17   sidewalls that form a basin with a bottom surface, and you

18   cannot find that combination in a manner that satisfies the

19   arrangement in the claims in the Hydropad products.  It

20   can't be done.

21         As a matter of law, there is no infringement and

22   there can't be a doctrine of equivalents infringement,

23   because they have not satisfied their burden to have linking

24   testimony and evidence explaining how it is substantially

25   similar.  Dr. Paulus's testimony is unreliable.  It is

 1   conclusory and it wouldn't support a reasonable verdict of

 2   infringement.

 3            Thank you.

 4            THE COURT:  Mr. Lobbin, please.

 5            MR. LOBBIN:  Thank you.  Thank you for the time,

 6   Your Honor.

 7            There are so many issues that I don't know where

 8   to start.  I am reminded, and I think it was Shakespeare, me

 9   thinks thou dost protest too much.  When somebody argues so

10   vociferously, it must be true what they are arguing against.

11   This is so simple.  This is evidence.  This is a

12   demonstrative of all the documents that are in the record

13   that they produced.  The jury is entitled to look at it and

14   rely on it.  Hydro is trying to elevate form over substance

15   to convince this Court otherwise, and I think the Court has

16   to keep in mind the perspective of a juror, which obviously

17   the Court is equipped to do on summary judgment.  What is a

18   reasonable jury going to be allowed to conclude based on the

19   evidence?

20            Some of the form over substance things, the Dr.

21   Paulus deposition, I don't even know where to go with that.

22   I don't know what he is referring to about an e-mail.  Maybe

23   I didn't get the e-mail.

24            THE COURT:  How do you respond to his claim that

25   you claimed in your submissions to this Court that they rely

```
 1   on that the four walls were as he illustrated in his opening

 2   remarks, and that you have changed that four-wall contention

 3   today?

 4          MR. LOBBIN:  Well, that is just not true.  As I --

 5          THE COURT:  I don't know who is right, and I am

 6   going to have to do some digging, but he says very clearly

 7   that you have got that black wall, the long one as one wall,

 8   and then you have got the trough forming the other three

 9   walls.

10          MR. LOBBIN:  Yes.

11          THE COURT:  That was your contention in your --

12          MR. LOBBIN:  Pull up the contention drawing.  It

13   is in the Paulus declaration, page 9.

14          THE COURT:  Before you turn to something, you two

15   seem to be saying a different thing.  He says your

16   contention was as I have just described it, and when you

17   stood up to that demonstration item there on the table, you

18   seemed to be pointing to the four black walls surrounding

19   the entire structure.

20          MR. LOBBIN:  Yes.

21          THE COURT:  Well, it is your contentions, so I'm

22   just asking what your contentions --

23          MR. LOBBIN:  Yeah.  I --

24          THE COURT:  Is it the four black walls surrounding

25   the entire structure or is it as he represented?  Help me
```

```
 1    with that.
 2              MR. LOBBIN:  Our contention has been for a year or
 3    more, since we first put our contentions together, was that
 4    the four frame walls are satisfied by one, two, three, four,
 5    and --
 6              THE COURT:  And that is what you demonstrated to
 7    me today.
 8              MR. LOBBIN:  This could be four or this can be
 9    four.  They both work.  That is our contention.  One, two,
10    three, four.  Four prime, if you will.  That is our
11    contention.  I will show you what we contend.  To any normal
12    engineer, and I would challenge Hydro to tell this Court
13    with a straight face as engineering graduates, and any Hydro
14    employee who is willing to say this, and I doubt they would,
15    that this drawing that you're looking at, this is an
16    engineering drawing -- a drawing from Hydro's technical
17    manual which is supposed to educate their customer or anyone
18    interested in Hydro's products, what is the structure of the
19    Hydropad?  Well, obviously this is what is known in
20    engineering, as any first year engineer would know, it is a
21    cutaway drawing, okay, which means that there is stuff to
22    the left of that drawing.  What is to the left of that
23    drawing?  All of the rest of this.  Right?
24              Any engineer would know that when you look at that
25    drawing, there are two more walls off the screen, if you
```

1    will, and so when we're pointing to the walls, the frame,

2    we're pointing to three of those walls.  Where are the other

3    two walls?  They are here and here.  They are off the

4    screen.  Had I had a better document, and I didn't because

5    Hydro didn't produce it, I would have had arrows pointing to

6    those two walls.  Any engineer knows and Hydro knows and

7    Riveer knows and anyone with rudimentary skill in any

8    engineering art knows that this is a cutaway drawing.

9            THE COURT:  Well, somehow you apparently didn't

10   convey that to your opponent so that they --

11           MR. LOBBIN:  We talked about it all throughout the

12   case, and in the deposition of Mr. McCormick, and I can go

13   back through the transcript and we talked ad nauseam about

14   the four frame walls.  The claim says four.  Obviously any

15   normal person reading that would say, okay, the four frame

16   walls are these that he is pointing to and the other two off

17   the screen.  We are all engineers in this game.  We know

18   this.  To try to convince the Court otherwise that, oh, we

19   didn't know what they were contending, that strains

20   credulity.

21           THE COURT:  Where is it that you ever told them

22   that the four walls can be the outside walls, and also three

23   of the outside walls and the inside of the trough wall?

24           MR. LOBBIN:  In our opposition brief to this

25   motion, which was filed in December or early January.  That

1    is where we elucidate it more.  What I just showed you tells

2    them, and what we briefed explains it specifically, and in

3    our opposition brief and in Dr. Paulus's analysis and it is

4    obvious.  It is explicit.  If we can pull up --

5              THE COURT:  I am reading now the --

6              MR. LOBBIN:  Yes.

7              THE COURT:  -- can be the outer wall of the side

8    trough or the inner wall of the side trough.  Both of these

9    walls are part of the frame.

10             What do you say to that, Mr. Miller?

11             MR. MILLER:  Your Honor, Dr. Paulus's declaration

12   is not their infringement contention.  If they introduce

13   this concept for the first time, and they did it for the

14   first time in response to our summary judgment motion,

15   rather than introducing it in the contentions so that we

16   were prepared for it.

17             Now, as a matter of result, it does not matter

18   which walls they point to.  They still can't meet bottom

19   surface and grate in this case and there is no infringement.

20   The idea that they have conveyed this prior to -- ambushing

21   us with a whole new infringement contention in their expert

22   declaration in response to summary judgment, that is what

23   happened.

24             THE COURT:  Wasn't the response to summary

25   judgment done some time ago?

1          MR. LOBBIN:  Months.

2          MR. MILLER:  Yes, and it was also done months

3    after their final infringement contentions, and they are

4    bound to their final infringement contentions.  They are not

5    allowed to change their infringement contentions via summary

6    judgment.

7          MR. LOBBIN:  Your Honor, the local patent rules

8    are new here, but they are consistent and in our motion that

9    we were going to talk about today, but we'll talk about

10   soon, the local rules specifically say, consistent with the

11   Federal Circuit case law, that the infringement contentions

12   are subject to amending to be consistent with the evidence,

13   just like in any normal expert type analysis or anything

14   else, and once the Court renders its claim construction, in

15   particular, and that is a hallmark of a stage of a patent

16   infringement case.  So I think it is, look, this was months

17   ago, we explained it in opposition to summary judgment, and

18   their contention that they didn't have notice of any of this

19   stuff, and we talked about it in deposition a year ago, and

20   this is not difficult technology.  It is very simple

21   technology.  Four frame walls.  We all understood that.

22           Your Honor, if they really were confused, which I

23   doubt they were, they could have just called me up and said

24   what do you mean?  You're only pointing to three things.

25   The claim requires four frame walls.  Where are the other

1    two frame walls?  I am not sure that we didn't have that

2    conversation, but they could have just said you have got

3    three arrows, and the claim says four frame walls, where are

4    your other two frame walls?  They didn't do that.

5         Talk about ambushing, this is an ambush by them

6    against us trying to say your contentions were confusing and

7    we don't know what you were talking about.  It is like a

8    Saturday Night Live skit.

9         Paulus -- they take potshots at Paulus.  Guess

10   what?  Dr. Paulus went to Oklahoma and spent a whole day

11   examining Hydropads, took pictures and did analyses.  They

12   make it sound like we hired an expert to come in and just be

13   a mouthpiece and spend a half an hour and make a couple

14   hundred bucks to sign a declaration.  That is not what we

15   did.  This is an expert that is helpful to the jury, more

16   helpful than me and certainly more helpful then Mr. Miller,

17   in explaining how the infringement analysis should go.  He

18   is a person of ordinary skill in the art.  He can testify

19   and he has percipient knowledge of these products, and his

20   examination of the products, and he spent a lot of time

21   doing the analysis of infringement based on the law and

22   based on the technical characteristics of the accused

23   infringing products.  That attack on him is not apropos.

24        Mr. McCormick's deposition -- certainly if Hydro

25   wants to present testimony at trial that is different from

1   what he said in his deposition, that is fine and the jury

2   can weigh that, but that is a jury issue.  It also strains

3   credulity a little bit to say that -- pull up the

4   testimony -- that my question was meaning to say that we,

5   like we Riveer, could call that a frame.  Really?  If he

6   says that on the stand, nine out of ten jurors -- maybe one

7   would agree with Hydro's interpretation.  He says, yeah, we

8   would still call it a grate.  Well, if you look at lines 17

9   and 18, and that is what Mr. Miller wants to focus on, we'd

10  still call it a grate, so he is saying that a jury looking

11  at that question would say what I'm really saying there is

12  we, like me and Riveer, in an antagonistic fashion, we'd

13  call that a grate.  So what he is agreeing with is that he

14  is saying, yeah, you would call that a grate.  Then he goes

15  on to explain exactly what I'm trying to get him to admit.

16        That is not how the real world works.  If you look

17  at lines 12 and 13, I say it would still be a grate, right?

18  That hasn't changed; isn't that correct?  All I'm doing on

19  17 and 18 is restating the question.  Mr. Miller wants to

20  focus on the word we, but I think any reasonable juror, and

21  certainly on summary judgment we have to look at this

22  testimony, and we have to construe it in the light most

23  favorable to Riveer, and if we are going to do that, then

24  certainly it is an admission.  He is admitting that there is

25  no structural or functional difference.  We just brought the

1  pan up and we welded it down and it is the same structure

2  and it works the same way.

3       THE COURT:  Well, that seems complicated.  It

4  seems like the argument that you just made would support one

5  for a doctrine of equivalents argument, and I'm just

6  wondering how it works when a court has construed grate as

7  porous, and we have -- what is the guy's name again?  I'm

8  getting the names mixed up.

9       MR. MILLER:  Alan McCormick.

10       THE COURT:  We have Mr. McCormick answering one of

11  your questions, and it sounds like he answered it

12  differently earlier, and Mr. Miller objected, asked and

13  answered, where he was not agreeing with you that it was a

14  grate, at least from what I listened to just a few minutes

15  ago, and then you said we still call that a grate and you

16  get him agreeing with you in a deposition, but it was not

17  focusing on whether the thing in question was porous, was

18  it?  How does that work when I'm deciding whether there is

19  literal infringement?  I don't have Mr. McCormick agreeing

20  with a question by you or anyone that this was porous.  That

21  is certainly relevant and --

22       MR. LOBBIN:  Well, I suppose that we would have to

23  put ourselves in the mind's eye of actually sitting here at

24  trial and hearing that exact testimony, and --

25       THE COURT:  Would it be relevant, if the jury is

```
 1   told in a jury instruction, as we know they will be, how the

 2   Court has construed the claim and it focuses on whether it

 3   is porous, and I am not ruling now on whether it would be

 4   entirely irrelevant, but I'm not sure how relevant it is to

 5   today's argument on summary judgment.

 6              MR. LOBBIN:  Well, it is entirely relevant because

 7   he explains what he is talking about.  He says instead of

 8   falling through, it would flow across.  The question on

 9   porous would be that the Court's claim construction is that

10   a grate is a porous surface, and --

11              THE COURT:  You just used the words falling

12   through.  Perhaps the Court needs to now define what porous

13   means.

14              MR. LOBBIN:  Well, we are dealing with the English

15   language so it is always imprecise, but --

16              THE COURT:  In your own patent specification it

17   used the phrase falling through.

18              MR. LOBBIN:  In the specifications.  In the claim

19   it says flowing into, and the claim language has not

20   changed.

21              THE COURT:  Right.  You will remember in your

22   preferred embodiment or the specification, it uses the words

23   falling through.

24              MR. LOBBIN:  Yes.

25              THE COURT:  Okay.  All I'm saying is when I
```

1    construed it as porous, I had in mind something that allowed

2    water and debris to fall through.

3             MR. LOBBIN:  Right.  We would argue to a jury

4    that --

5             THE COURT:  Although I didn't say that in my

6    construction.  I see now that I just said a porous framework

7    with parallel crossbars that fills a horizontal cross

8    section of the enclosed area and engages the top portion of

9    the inner surfaces of all four frame walls.

10            MR. LOBBIN:  Correct.

11            THE COURT:  Do you contend and is your contention

12   that the question you asked to Dr. McCormick, and is it your

13   position on the Hydro device that it is porous in that it

14   allows water to flow into those grooves?

15            MR. LOBBIN:  Yes, just like a sponge.  If you put

16   a sponge on the table, it has got pores, right, like the

17   pores on our face, and the pores of the sponge allow --

18            THE COURT:  Well, that is different.  It goes

19   through the sponge and its pores, but how is there water

20   falling through anything?

21            MR. LOBBIN:  We would present to the jury --

22            THE COURT:  I am admitting that I didn't put

23   through in the construction, but that seems to be an issue.

24   I don't know how you can have something porous if you don't

25   have water falling through it.

```
 1                MR. LOBBIN:  Just like a sponge.  The water
 2   doesn't always go all the way through.  It --
 3                THE COURT:  I am not agreeing with you on the
 4   sponge.  Into.  With the sponge, water is at least flowing
 5   through the top of the sponge and going into the sponge.
 6   Here in this metal framework there is no water seeping into
 7   anything or falling through anything, is there?
 8                You may disagree with my claim construction, but
 9   porous has to mean porous, that it has pores that allow
10   water to fall through it.
11                MR. LOBBIN:  We would argue at trial that --
12                THE COURT:  You would tell the jury porous does
13   not mean --
14                MR. LOBBIN:  We would say that this surface is
15   porous because the vehicle is resting on the surface, on the
16   grating, and the water is falling through that grating
17   surface, through and into, as the claim requires --
18                THE COURT:  That seems to be a stretch.  A
19   corrugated roof is porous?
20                MR. LOBBIN:  Well, I don't disagree that porous
21   was not the --
22                THE COURT:  That was the notion behind my
23   construction of porous.
24                MR. LOBBIN:  Well, metal would never be porous in
25   that situation, because porous is a --
```

```
 1                THE COURT:  Exactly.

 2                MR. LOBBIN:  Okay.

 3                THE COURT:  I'm just wondering how you can argue

 4      literal infringement to a jury --

 5                MR. LOBBIN:  Well --

 6                THE COURT:  -- on the porous nature of that

 7      device.  It is porous in that it lets water run into a tray,

 8      a tray at the end, right?  That is pretty much your

 9      contention.

10                MR. LOBBIN:  Well, I'm not denying that we would

11      need some elaboration on porous.  Now, claim construction is

12      done and that claim construction would be put in jury

13      instructions, and it would be up to the jury to use their

14      knowledge to --

15                THE COURT:  That is what I was saying earlier.

16      That gets complicated.

17                MR. LOBBIN:  It is complicated.  That is why we

18      need a jury.

19                THE COURT:  I would disagree.  The jury should

20      have a clear understanding of what the Court's words mean

21      when we tell them this is what the claim means, not just

22      invite another semantic argument with the jury.  They should

23      have some clear understanding of what the claim means.

24                MR. LOBBIN:  Riveer didn't propose porous.  Hydro

25      proposed porous and the Court adopted the word porous for
```

1     its construction, so what we have now is we have to analyze

2     what the Court said in its construction, and what the Court

3     said was that to not allow debris to pass through the grate

4     into the basin would render the bottom surface meaningless.

5     So reading the Court's explanation of what it provided for

6     its claim construction, we took that and said, okay, how

7     would we argue to a jury based on this jury instruction --

8               THE COURT:  That it would have to pass through.

9               MR. LOBBIN:  Pardon?

10              THE COURT:  That it has to pass through.

11              MR. LOBBIN:  Pass through the grate, yes, and into

12    the basin.  Just like the old style Hydropad 1.0, the basin

13    is way down at the bottom, so from the level of the grate

14    the water is going in between the bars.  It is going in

15    between, through, into, and the only difference is where

16    that pan is.  Well, that does not affect the grating.  It

17    has nothing to do with the grating.

18              If the grating was a creature, and I'm looking at

19    the world from the level of the grating, I don't care where

20    that bottom surface is.  I don't even know where it is.  All

21    I know is that the water is going through there, through me

22    and my buddy to the left and my buddy to the right, my

23    parallel bars.

24              THE COURT:  Now that was Saturday Night Live.

25    Buddy?

 1          MR. LOBBIN:  If I'm this bar and I am sitting

 2     there and I have a piece over there and a piece over there,

 3     and there is water coming down, it is going through because

 4     the grating over here -- bye water.  I don't care if it goes

 5     all the way to the bottom or if it goes right here.  To me

 6     it is going through.  The jury would be entitled to draw

 7     that same conclusion, especially when we look at how this

 8     thing is supposed to perform and what it is supposed to do.

 9          THE COURT:  Now you're moving into doctrine of

10     equivalents talk, aren't you?

11          MR. LOBBIN:  Well, yes.  A literal infringement

12     argument is not devoid of context, but, yes, I agree with

13     you that when you're talking more specifically about

14     function, way, result, yes, you get more into is this

15     performing the same function in the same way to achieve the

16     same result as the claimed invention.

17          THE COURT:  Not that it ends the argument, but you

18     certainly resisted my adopting porous from their

19     contentions.  If you satisfied porous, I guess that didn't

20     matter much to you.

21          MR. LOBBIN:  Well, no, we --

22          THE COURT:  In resisting it, it seemed like you

23     were disagreeing that the requirement of its being porous

24     should be added.

25          MR. LOBBIN:  We just didn't think it was helpful.

1    The claim language speaks for itself in our view and that is

2    why we proposed the claim constructions that we did.

3           THE COURT:  Well, it speaks for itself as long as

4    you get to say what it means.  That is why you like it, it

5    seems to me.

6           MR. LOBBIN:  I'm not going to deny that most

7    patent cases that turn on claim construction have a

8    plaintiff who says, well, the claims mean what they say and

9    the jury is capable of --

10          THE COURT:  That is why it was helpful to me to at

11   least have a submission rather than just a comment that it

12   speaks for itself.

13          MR. LOBBIN:  Understood.  Typically in my

14   experience the defendant is the one championing their view

15   of how all of these things should be elaborated and --

16          THE COURT:  All I'm saying is that when they did

17   championing their point of view that it requires a porous

18   framework to allow water to fall through and into a basin

19   below.  You recited that pretty vigorously.

20          MR. LOBBIN:  Well, I am kind of easygoing, so I

21   don't know how vigorous it was, but we just thought it was

22   unhelpful.  Look, we're a plaintiff and we wrote the patent.

23   You have a duty to write patent claims that speak for

24   themselves.  You don't write patent claims with an eye

25   toward, well, later we can figure out what this really

1    means.  We wrote the patent claims to mean what they said,

2    and --

3              THE COURT:  You claim it did not mean porous, but

4    now you claim it was porous, that their alleged infringing

5    device is porous?

6              MR. LOBBIN:  Well, we never argued that it was not

7    porous.  We just said that the claim language was enough.

8              THE COURT:  Did not require it to be porous.  All

9    right.

10             What else do you have?

11             MR. LOBBIN:  If I may, the claim language without

12   construction says a grate allowing water and debris to flow

13   into said basin.  Just that phrase we thought was enough.

14   Frankly, I don't know that we disagree that it wasn't

15   porous.  I think we said a grate that allows water and

16   debris to flow into said basin.  If you want to call that

17   porous, fine, but that is what the claim requires.

18             THE COURT:  I understand.

19             MR. LOBBIN:  Unless Your Honor has further

20   questions --

21             THE COURT:  I don't have any more right now.

22   Thank you, Mr. Lobbin.

23             MR. LOBBIN:  Thank you.

24             THE COURT:  Did you have anything else that you

25   wanted to say before we adjourn, Mr. Miller?

```
 1                  MR. MILLER:  Nothing further, Your Honor.

 2                  THE COURT:  All right.  Now, what about this

 3     pending motion?  Do you want oral argument on that?  What do

 4     you want to do on the motion of the plaintiff to request

 5     leave of court to serve amended final infringement

 6     contentions?  In light of today's discussion, and I have not

 7     read your brief yet, and I got it literally just before I

 8     was walking down here to start this hearing, so tell me what

 9     you want to do on that.

10                  Do you want oral argument?  Do you want me to

11     decide it on the briefs?

12                  MR. LOBBIN:  I think we would prefer argument, if

13     the Court is inclined.

14                  THE COURT:  I am at a disadvantage.  I don't know

15     enough about their opposition now to know whether it would

16     be helpful or not.

17                  Do you want oral argument on it?

18                  MR. MILLER:  I don't think it needs oral argument,

19     but if they want oral argument --

20                  THE COURT:  All right.  When do you want to do it?

21     I can read it quickly.  Do you want to do it later this week

22     or next week?

23                  MR. LOBBIN:  I was just checking to see if we had

24     a reply.

25                  THE COURT:  You have not replied.
```

```
 1              MR. LOBBIN:  We just got the opposition, what, a
 2   couple days ago?
 3              THE COURT:  Do you want to submit a reply brief?
 4              MR. LOBBIN:  I think so.
 5              THE COURT:  Okay.
 6              MR. LOBBIN:  It kind of expanded it, and the
 7   motion was short, but --
 8              THE COURT:  This was dated the 27th.  What is
 9   today, the 29th?
10         Do the ten days run from when they receive it or
11   from when it was dated?
12              MR. MILLER:  When it was filed.  We e-filed it
13   on --
14              THE COURT:  You get ten days from the 27th.
15              Mr. Ford, what have you got there?  What does that
16   give you until?
17              MR. FORD:  Monday the 11th, is that right?
18              THE COURT:  Monday the 11th.  Do you want me to
19   set an oral argument date right now?
20              MR. LOBBIN:  I think we are open to that.
21              THE COURT:  Okay.  Ron, why don't you see when we
22   can do it.
23              21 May.
24              MR. FORD:  Your Honor, just briefly, I failed to
25   include the three days, so actually our due date for the
```

1    reply brief would be the 14th, Thursday.

2         THE COURT:  All right.  On the 14th the reply

3    brief is due, and then we'll hear oral argument on the 21st.

4         What time, Ron?

5         THE CLERK:  2:30.

6         THE COURT:  2:30 p.m.

7         Ron is telling me that it would work better for me

8    if we did it on the 22nd.

9         What time on the 22nd, Ron?  Is that Friday?

10        THE CLERK:  11:00 on Friday, the 22nd of May.

11        THE COURT:  Did you all sort out when their brief

12   is due?  Mr. Miller?  Mr. Lobbin?

13        MR. MILLER:  That is fine.

14        THE COURT:  Did you sort out when their brief is

15   due?

16        MR. MILLER:  I will let them guess and we'll see

17   if it is timely after the fact.

18        MR. FORD:  We'll go check the rule and --

19        THE COURT:  Let's say it is due on the 15th.  You

20   said the 14th.

21        MR. FORD:  I said the 14th.

22        THE COURT:  I will go with the 14th.

23        MR. MILLER:  Okay.  That is an extension.

24        THE COURT:  Well, I don't know if it is or isn't,

25   but you have got until the 22nd.

1          MR. MILLER:  If the hearing is not on the 22nd, it

2    does not matter, I guess.

3          THE COURT:  Right.  That is what I thought.  I

4    will decide arbitrarily what they say we do.  Okay.

5          Anything else today before we adjourn?

6          Thank you for your arguments.  They were very

7    helpful.

8          We'll be in recess.

9          (Proceedings concluded.)

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25