Stephen M. Lobbin (admitted *pro hac vice*)
**One LLP**
4000 MacArthur Boulevard
East Tower, Suite 500
Newport Beach, California  92660
Tel:  949.502.2870

Mark W. Ford (10659)
Rachel Jacques (13250)
**Maschoff Brennan**
1389 Center Drive, Suite 300
Park City, Utah  84098
Tel:  435.575.1387

*Attorneys for Plaintiff Petter Investments, Inc. d/b/a RIVEER*

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF UTAH**

| | |
|---|---|
| **PETTER INVESTMENTS, INC.** d/b/a **RIVEER**, a Michigan corporation,<br><br>Plaintiff,<br><br>vs.<br><br>**HYDRO ENGINEERING, INC.**, a Utah corporation, and **CALIFORNIA CLEANING SYSTEMS**, a California company,<br><br>Defendants. | **REPLY IN SUPPORT OF PLAINTIFF RIVEER'S MOTION REQUESTING LEAVE TO SERVE ITS AMENDED FINAL INFRINGEMENT CONTENTIONS**<br><br>(LPR 3.4)<br><br>Civil Case No. 2:14-CV-00045<br><br>Judge Dee Benson |

1

Rather than honor the letter or the spirit of this Court's Local Patent Rules, Hydro raises several spurious arguments in opposition to Riveer's simple and straightforward request to serve amended infringement contentions after this Court's claim construction ruling pursuant to LPR 3.4 (Dkt. No. 236). This Court should reject Hydro's arguments and promptly grant Riveer's request for leave.

First, Hydro argues that Riveer's amended contentions "add a ***new*** doctrine of equivalents theory," which is incorrect, inconsistent with the record, inconsistent with the timeline of discovery, and additionally misunderstands a fair reading of this Court's Local Patent Rules. Second, Hydro argues that Riveer's motion is too short, but the issue here is singular and straightforward, not complicated. Third, Hydro argues for no "good cause" because theoretically, Riveer could have presented multiple sets of different and alternative infringement contentions in November 2014 based on the parties differing proposed claim constructions, and other possible alternate constructions. No precedent supports such "make-work" of preparing multiple alternative infringement contentions, however, particularly in a case as technologically simple as this one. Fourth, Hydro argues that amended contentions would require more discovery, but Hydro's contention has no merit in substance.

I.    **Hydro Tries To Distort A Fair Reading Of This Court's Local Patent Rules.**

Like its new argument at the recent summary judgment hearing, claiming it could not understand its own "partial view" engineering drawings from its own product installation manuals, Hydro feigns ignorance of the close interplay between literal infringement and infringement under the doctrine of equivalents. This Court should not accept Hydro's distorted view of the timeline and proceedings of this case, and this Court's Patent Local Rules.

Under LPR 2.3 requiring "Initial Infringement Contentions," the disclosure by a party claiming patent infringement includes "whether each element of each asserted claim is claimed to be present in the Accused Instrumentality literally **OR** under the doctrine of equivalents . . . [and if] the doctrine of equivalents, the Initial Infringement Contentions must include an explanation of each function, way, and result that is alleged to be equivalent and why any differences are not substantial." LPR 2.3(d) (emphasis added). As the rule clearly states, for each element of each asserted claim, *only one contention is required—that is, either literal infringement, OR the doctrine of equivalents*. The rule does not say "AND/OR," nor does the rule imply that a claimant has the burden to present multiple different sets of infringement contentions to anticipate and "cover" the multiplicity of different scenarios which could emerge according to the opponent's proposed claim construction or the court's ultimate claim construction.

Here, such a distorted interpretation of the Local Patent Rules would have required Riveer to prepare, at a minimum, at least one "alternate" set of infringement contentions by September 22, 2014—***but this was six (6) weeks before Riveer even knew what Hydro's proposed claim construction was going to be!*** *See* Dkt. No. 159-1. So, in addition to being illogical and not contemplated by this Court's Local Patent Rules, it would have been impossible "guesswork" for Riveer to even prepare such an "alternate" set of infringement contentions before November 2014, when the parties were already in the midst of claim construction and summary judgment briefing.

Reading the rules in a logical manner, and according to its assertions concerning its own patent claims, Riveer's contentions reflect its assertion that all of the claim elements were satisfied LITERALLY, without any necessity to invoke the doctrine of equivalents.[1] It is tautological, of course, that any literal infringement also would satisfy infringement under the doctrine of equivalents, as the former is a logical subset of the latter. As such, Riveer presented its contentions of LITERAL infringement only, while

---

[1] Though not invoking the doctrine of equivalents, Riveer did give Hydro explicit notice (in both its initial and final infringement contentions) as follows: "If a particular element cannot be satisfied literally under whatever claim construction is reached, Plaintiff reserves the right to assert the doctrine of equivalents (*i.e.*, that the accused and claimed elements are equivalent because of only insubstantial differences between them, and/or because the accused element matches the function, way, and result of the claimed element)." Dkt. No. 178-1 at 7. Therefore, although Hydro argues Riveer should have provided different sets of "alternate" contentions, Hydro cannot fairly argue it was not on notice that the doctrine of equivalents was potentially at issue, depending on the court's ultimate claim construction.

explicitly notifying Hydro that if the Court construed the claims differently than Riveer proposed, the doctrine of equivalents also may be asserted.  *See supra* note 1.[2]

This "moving target" inherent in the claim construction process is exactly the purpose of LPR 3.4 ("Amendment of Final Contentions"), which explicitly states, "An example of a circumstance that may support a finding of good cause . . . includes ***a claim construction by the court different from that proposed by the party seeking amendment***." *Id.* (emphasis added).  As this Local Patent Rule presages, a party claiming patent infringement must be given an opportunity to review the court's claim construction, and present amended contentions under the guidelines of LPR 2.3(d)—that is, "whether each element of each asserted claim is claimed to be present in the Accused Instrumentality literally **_OR_** under the doctrine of equivalents . . . [and if] the doctrine of equivalents, the [Amended] Infringement Contentions must include an explanation of each function, way, and result that is alleged to be equivalent and why any differences are not substantial." *See supra*.  Therefore, the allowance for amended infringement contentions after claim construction under LPR 3.4 is the very antithesis of "waiver," because otherwise, a party would never be able to amend!

---

[2] Tellingly, Hydro never complained about the level of detail provided in Riveer's initial or final infringement contentions, nor did Hydro ever request further explanation or supplementation.  Hydro never complained because it must have understood very well how the doctrine of equivalents would apply to its own restrictive claim construction proposal, which Riveer had not even seen yet.  As Hydro often repeats, and as Riveer agrees, "[T]he asserted patent claims [are] very simple." *See, e.g.,* Dkt. No. 176 at 4.

The case law is in accord with the purpose behind this Court's Local Patent Rule 3.4, allowing amended infringement contentions (including assertion of the doctrine of equivalents) after a claim construction different from that proposed by the patentee. As one court explained recently, "given the Court's claim construction, a doctrine of equivalents argument might be available as an alternative to literal infringement." *Robocast, Inc. v. Microsoft Corp.*, 21 F. Supp. 3d 320, at *11-16 (D. Del. 2014) ("Microsoft [] argues that Robocast cannot put forth a doctrine of equivalents argument [as] untimely . . . [but] Robocast's doctrine of equivalents arguments are based on the Court's claim construction rulings, and Microsoft was on notice.") (emphasis added); *see also Nazomi Communs., Inc. v. Samsung Telcoms., Inc.*, 2013 U.S. Dist. LEXIS 122869, at *20 (N.D. Cal. Aug. 28, 2013) (noting that Patent Local Rule (N.D. Cal.) 3-6 allows amendments to infringement contentions for good cause, including "a claim construction by the [c]ourt different from that proposed by the party seeking amendment"); *Exxon Chem. Patents v. Lubrizol Corp.*, 137 F.3d 1475, 1479 (Fed. Cir. 1998) (vacating denial of motion for a new trial on infringement under the doctrine of equivalents) ("Once the district judge construed the claim language in Exxon's favor, the doctrine-of-equivalents issue in the case became moot [and] Exxon could not realistically be expected to request alternative jury instructions asking for an advisory verdict on whether the patent would be infringed under the doctrine of equivalents on Lubrizol's proposed claim construction.").

Hydro's cited cases, on the other hand, are inapposite. In *Genentech*, for example, the court noted the distinguishing fact that "Genentech first explicitly alluded to the doctrine of equivalents more than a year after it filed its complaint and after the court issued its claim construction order." *Genentech, Inc. v. Amgen, Inc.*, 289 F.3d 761, 773-74 (Fed. Cir. 2002). In *O2 Micro*, the request to amend infringement contentions was raised only six months after the court's claim construction ruling, rather than, as here, within the short period after claim construction provided for amended infringement contentions under the local patent rules. *See O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.*, 467 F.3d 1355, 1360-61 (Fed. Cir. 2006).

## II. Good Cause And Lack Of Prejudice Are Apparent.

Hydro's dispute about "good cause" ignores the spirit of LPR 3.4, which is to allow amendments to infringement contentions necessitated by the court's claim construction, and also the letter of LPR 3.4, which explains that "good cause . . . includes a claim construction by the court different from that proposed by the party seeking amendment." *See supra*. Therefore, Hydro's argument that Riveer was not "diligent" under LPR 3.4 obviously is meritless.[3]

---

[3] Hydro warns, "Practically speaking, [Riveer] would permit one party—if not both—to amend their contentions in every case." Dkt. No. 240 at 6. No so, as LPR 3.4 would allow amendments only where the "claim construction by the court *[is] different* from that proposed by the party seeking amendment."

7

So is Hydro's argument that it faces any prejudice, much less "extreme prejudice" as Hydro hyperbolizes. Not only did Riveer provide notice concerning the doctrine of equivalents in its infringement contentions in April 2014[4] and again in September 2014, but Riveer's amended contentions incorporate explicitly Riveer's expert declaration served on Hydro on January 5, 2015—which is well over four months ago. *See* Dkt. No. 200 (Paulus Declaration). The Paulus Declaration explains exactly why infringement exists under the doctrine of equivalents, even before this Court had construed the claims. Therefore, there is no prejudice because Hydro has known Riveer's contentions throughout this entire case.

Hydro also references the summary judgment briefing in December 2014 and January 2015, but that briefing demonstrates exactly why Hydro faces no prejudice at all. As Hydro stated explicitly, its motion on the '298 patent Hydro broadly "seeks summary judgment of non-infringement," not just no *literal* infringement. *See* Dkt. No. 179 at 6. Hydro correctly anticipated that—if this Court adopted Hydro's proposed claim construction—Riveer may rely on the doctrine of equivalents to satisfy infringement on those claim elements incorporating the Court's claim construction. In response to Hydro's summary judgment motion, Riveer explained why and how the doctrine of

---

[4] Hydro postulates that Riveer deposed Hydro's Alan McCormick "early on in discovery primarily for the purpose of gathering the information . . . necessary to prepare its Initial Infringement Contentions." Another statement without support by Hydro. Riveer used Hydro's documents and drawings and pictures of the accused products to support its infringement contentions, not McCormick's testimony.

equivalents would apply, and provided the detailed infringement analysis from Dr. Paulus, including concerning the doctrine of equivalents. *See* Dkt. No. 202. All this took place in December 2014 and January 2015, so there is no room for Hydro to assert any "prejudice" at this stage of the proceedings. At the recent hearing on Hydro's motion, the undersigned counsel explained Riveer's infringement analysis in great detail with demonstrative models of the accused infringing products, including why the accused infringing "Hydropad" designs are equivalent to and insubstantially different from the claimed inventions of the '298 patent-in-suit. Thus, infringement under the doctrine of equivalents already is at issue in this case, and has been at issue since Hydro filed its summary judgment motion in December 2014.

Hydro's own arguments are inconsistent internally. For example, while Hydro claims that Riveer's "only references to a doctrine of equivalents theory resided in footnotes," a few lines later Hydro admits that Riveer's positions indeed were presented in "Dr. Paulus's earlier submitted [] testimony" over four months ago. Dkt. No. 240 at 12. Although Hydro argues that Dr. Paulus' explanation of infringement under the doctrine of equivalents was "conclusory," Hydro understood it quite well, and well enough to prepare an equally short but complete rebuttal analysis for the recent summary judgment hearing. *See* Appendix (attached excerpts from Hydro's presentation slides). Hydro's argument that Riveer should also have formally moved to amend its infringement contentions in the middle of claim construction and summary judgment

proceedings is ridiculous.  This Court's Local Patent Rules contemplate amending contentions after an adverse claim construction ***ruling***, not immediately after a party receives an opposing party's differing claim construction ***proposals***.

Hydro also claims that Riveer's amended infringement contentions would require reopening discovery and further dispositive motions.  But Hydro fails to explain what additional discovery it needs, because there is none.  Regarding dispositive motions, Hydro's argument is erroneous because even if more motions were warranted, the dispositive motion deadline has not yet passed, which means Hydro could file more motions any time.  Therefore, there would be no prejudice to Hydro, much less prejudice in the "extreme" as Hydro would have this Court believe.

Finally, Hydro's cases are not applicable here, for many reasons.  In *Nike*, for example, because the patentee's infringement contentions made "no mention of the doctrine of equivalents, it was reasonable for Adidas to assume that the doctrine of equivalents was not being pursued."  *Nike, Inc. v. Adidas Am., Inc.*, 479 F. Supp. 2d 664, 670 (E.D. Tex. 2007).  In *France Telecom*, the parties were already well in to expert discovery at the time of the proposed amendment, creating prejudice that does not exist here.  *See France Telecom S.A. v. Marvell Semiconductor Inc.*, 2014 WL 1899616, at *4-5 (N.D. Cal. May 12, 2014).  In *Cisco*, the patentee waited over two months after the claim construction ruling to notify the opposing party of its proposed amended

10

contentions, and then only after being prompted by opposing counsel. *See Cisco Sys., Inc. v. Teleconference Sys., LLC*, 2012 WL 9337627, at *4 (N.D. Cal. June 11, 2012).

In view of the foregoing, therefore, Riveer respectfully requests that this Court grant leave to amend, allowing Riveer promptly to serve its Amended Final Infringement Contentions.

Dated:  May 14, 2015                                       Respectfully submitted,

**One LLP**

/s/ Stephen M. Lobbin
Stephen M. Lobbin (admitted *pro hac vice*)
*Attorneys for Plaintiff*

Mark W. Ford (10659)
Rachel Jacques (13250)
**Maschoff Brennan**

## CERTIFICATE OF SERVICE

I hereby certify that I caused the foregoing document—**REPLY IN SUPPORT OF PLAINTIFF RIVEER'S MOTION REQUESTING LEAVE TO SERVE ITS AMENDED FINAL INFRINGEMENT CONTENTIONS**—to be filed via the Court's CM/ECF system and thereby served as follows:

    Brett L. Foster, 6089
    bfoster@hollandhart.com
    Mark A. Miller, 9563
    mmiller@hollandhart.com
    Christopher B. Hadley, 14055
    cbhadley@hollandhart.com
    **Holland & Hart LLP**
    222 S. Main Street, Suite 2200
    Salt Lake City, Utah 84101


Dated:  May 14, 2015                       /s/ Stephen M. Lobbin