Stephen M. Lobbin (admitted *pro hac vice*)
**One LLP**
4000 MacArthur Boulevard
East Tower, Suite 500
Newport Beach, California  92660
Tel:  949.502.2870

Mark W. Ford (10659)
Rachel Jacques (13250)
**Maschoff Brennan**
1389 Center Drive, Suite 300
Park City, Utah  84098
Tel:  435.575.1387

*Attorneys for Plaintiff* Petter Investments, Inc. d/b/a RIVEER

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF UTAH

| | |
|---|---|
| **PETTER INVESTMENTS, INC.** d/b/a **RIVEER**, a Michigan corporation,<br><br>      Plaintiff,<br><br>vs.<br><br>**HYDRO ENGINEERING, INC.**, a Utah corporation, and **CALIFORNIA CLEANING SYSTEMS**, a California company,<br><br>      Defendants. | **PLAINTIFF RIVEER'S RESPONSE TO DEFENDANTS' MOTION FOR SUPPLEMENTAL CLAIM CONSTRUCTION**<br><br>Civil Case No. 2:14-CV-00045<br><br>Honorable District Judge Dee Benson |

1

Plaintiff Petter Investments, Inc. d/b/a RIVEER ("Riveer") responds as follows to Defendants' Motion for Supplemental Claim Construction (Dkt. No. 243).[1]

## I.      INTRODUCTION

Besides being tardy and procedurally improper, Hydro's motion also lacks any substantive merit.  On the one hand, Hydro asserts that the word "porous" used in this Court's claim construction has a "well-understood meaning;" on the other hand, however, Hydro asserts that the Court should "supplement" its claim construction because a jury supposedly would not understand what "porous" means.  This makes no sense, and is not what patent law requires.  If so, there never would be any jury trials in patent cases.

## II.     HYDRO'S MOTION IS PROCEDURALLY IMPROPER

This Court's Patent Local Rules specify the time for presenting arguments about claim construction—and for construing claims.  That time was months ago.  *See* LPR 4. The parties and this Court have thoroughly engaged that process, and ***completed that process almost two months ago*** on March 27, 2015, when this Court entered its Claim Construction Order.  *See* Dkt. No. 235.  It would be inherently unfair, and prejudicial to Riveer, for the Court to allow Hydro to present new arguments now that could have and should have been presented long ago.[2]  Therefore, Hydro's motion asking this Court to

---

[1] The Hydro Defendants state that their motion for "supplemental" claim construction is "[p]ursuant to LPR 6.2," *see* Dkt. 243 at 1, but LPR 6.2 does not authorize any "supplemental" claim construction motions.

[2] By analogy, LPR 5.3 states, "Amendments or supplementation to expert reports after the deadlines provided herein are presumptively prejudicial . . . ."  *See id.* (entitled "Presumption Against Supplementation of Reports").

"supplement" its claim construction simply is too late, and should be denied on that basis alone.[3]

### III.   THIS COURT WAS NOT CONFUSED ABOUT CLAIM CONSTRUCTION

Hydro's first argues, "Throughout the claim construction and summary judgment briefing, the intended meaning of porous was clear to all parties and the Court."  Riveer agrees that this Court was clear in its intention and usage of the word "porous."  The Court used the word "porous" in its construction of the claim term "grate," and the Court's explanation for its construction included the following logical rationale:

> A grate that does not allow debris to pass through the grate into the basin would render the "bottom surface . . . defining a basin for collecting water used to clean the item as well as any debris removed from the item" an inoperative element of the claim, *i.e.* mere "surplusage."

Dkt. No. 235 at 7.

The jury readily would understand what "porous" means, particularly in the context of Riveer's invention and the Court's explanation.  For example, the attached Exhibit A is a demonstrative showing two examples of "non-porous" wash rack decks, in which the vehicle, wash water, and any debris all remain at the same level, because none other is provided on the non-porous wash deck.  *See* Ex. A.  In such implementations, the wash water and debris must flow around the vehicle tires, for example, in order to reach the side trough or gutter or whatever drainage or filtering system is employed.  The attached Exhibit

---

[3] Disingenuously, Hydro has used the same argument about procedural tardiness repeatedly throughout this case, and again in this very motion.  *See* Motion at 5 ("The Court should not . . . clarify issues that should not need clarification.").  Riveer agrees that clarification is not procedurally or substantively proper here.

B demonstratives, by contrast, show "porous" implementations of the claimed "grate"—first as in the preferred embodiment of the '298 patent, and second as in the accused infringing Hydropad system. *See* Ex. B. A jury readily would be able to understand and apply this "porous vs. non-porous" distinction, as necessary, to determine infringement.

Second, Hydro wonders why Riveer "never argued in the alternative that porous could still encompass the impervious top of the accused Hydropad even if the Court defined a grate to be porous." This argument is a "straw-man," because Hydro knows, of course, that the accused infringing product features are irrelevant and not to be considered in the claim construction process. This is black-letter patent law, as repeated often by the Federal Circuit:

> This court, of course, repeats its rule that "claims may not be construed with reference to the accused device." [T]hat rule posits that a court may not use the accused product or process as a form of extrinsic evidence to supply limitations for patent claim language. Thus, the rule forbids a court from tailoring a claim construction to fit the dimensions of the accused product or process and to reach a preconceived judgment of infringement or noninfringement. In other words, ***it forbids biasing the claim construction process to exclude or include specific features of the accused product or process***.

*Wilson Sporting Goods Co. v. Hillerich & Bradsby Co.*, 442 F.3d 1322, 1330-31 (Fed. Cir. 2006) (emphasis added) (citing *NeoMagic Corp. v. Trident Microsystems, Inc.*, 287 F.3d 1062, 1074 (Fed. Cir. 2002) and *SRI Int'l v. Matsushita Elec. Corp. of Am.*, 775 F.2d 1107, 1118 (Fed. Cir. 1985) (en banc)).

Third, Hydro argues that Riveer contends that "ambiguity remains" with this Court's claim construction, but not so. As Riveer explained at the recent hearing on summary judgment issues, a jury readily would be able to understand and apply the word

"porous" within a jury instruction providing this Court's claim construction for the claim term "grate."  That is the very purpose and role of a jury in a patent case—*i.e.*, apply the court's claim construction to the evidence presented concerning the relevant characteristics and features of the accused infringing products, from the perspective (including expert testimony) of one of ordinary skill in the relevant art or technology.

## IV.    HYDRO'S "SUPPLEMETAL" CONSTRUCTION WOULD BE ERRONEOUS

Hydro's proposed "supplemental" construction is starkly erroneous for several reasons.  First, Hydro now asks this Court to require that the claimed "grate" must "allow[] *the debris* to *pass through it into the basin*."  Dkt. No. 243 at 5 (emphasis added).  Such a "supplemental" claim construction would be in direct conflict, however, with the actual claim language, which requires simply "a grate . . . allowing *water and any debris* to *flow into said basin*."  The conflict is apparent:  The actual claims are satisfied if water (with or without debris) *flows **into** the basin*, while Hydro's tortured construction erroneously requires debris, not just water, and erroneously requires the debris "to pass (not just "flow") through [the grate]," and also "to pass (not just "flow") . . . into the basin."

Such a conflict between the actual claim language, and Hydro's proposed "supplemental" construction, demonstrates the obvious error of Hydro's proposal.  Again, as the Federal Circuit oft explains:

> In construing claims, ***the analytical focus must begin and remain centered on the language of the claims themselves***, for it is that language that the patentee chose to use to "particularly point[ ] out and distinctly claim[ ] the subject matter which the patentee regards as his invention."  *Interactive Gift Express, Inc. v. Compuserve Inc.*, 256 F.3d 1323, 1331 (Fed. Cir. 2001)

(quoting 35 U.S.C. § 112, ¶ 2 (1975), amended by 35 U.S.C. § 112(b)).  The asserted claims here only require that the compositions "induce" (*i.e.*, bring about or start) diarrhea.  The claims do not contain language that requires achieving a fully cleansed colon for a colonoscopy.  ***Thus, while cleansing is the goal specifically articulated in the specification, it is not a claim requirement***.  *See Comaper Corp. v. Antec, Inc.*, 596 F.3d 1343, 1348 (Fed. Cir. 2010) (citation omitted) ("There is an inference ... that two different terms used in a patent have different meanings.").

*Braintree Labs., Inc. v. Novel Labs., Inc.*, 749 F.3d 1349, 1354-55 (Fed. Cir. 2014) (emphasis added).

Also, this Court should not be misled into misconstruing any claim terms according to the specific features of the patent's preferred embodiment, which does not limit any aspect of the claims ***unless a limitation is explicitly stated as such in the specification itself***.  *See, e.g.*, Dkt. No. 235 at 6 (equating single reference to "the cleaning system" shown in preferred embodiment with disavowal or disclaimer of claim scope).[4]  This also would be error, as the Federal Circuit explains in most every case dealing with claim construction issues, including recently in *GE Lighting Solutions, LLC v. Agilight, Inc.*, 750 F.3d 1304, 1309-10 (Fed. Cir. 2014):

> A patent that discloses only one embodiment is not necessarily limited to that embodiment.  *Saunders Grp., Inc. v. Comfortrac, Inc.*, 492 F.3d 1326, 1332 (Fed. Cir. 2007).  "[I]t is improper to read limitations from a preferred embodiment described in the specification—even if it is the only embodiment—into the claims absent a clear indication in the intrinsic record that the patentee intended the claims to be so limited."  *Liebel-Flarsheim Co. v. Medrad, Inc.*, 358 F.3d 898, 913 (Fed. Cir. 2004).

---

[4] The word "porous" never even appears—anywhere—in the patent specification or file history.

There are certainly cases where we have found disavowal or disclaimer based on clear and unmistakable statements by the patentee that limit the claims, such as "the present invention includes . . ." or "the present invention is . . ." or "all embodiments of the present invention are . . . ." *See, e.g., Regents of Univ. of Minn. v. AGA Med. Corp.*, 717 F.3d 929, 936 (Fed. Cir. 2013); *Honeywell Int'l, Inc. v. ITT Indus., Inc.*, 452 F.3d 1312, 1316-19 (Fed. Cir. 2006); *SciMed Life Sys., Inc. v. Advanced Cardiovascular Sys., Inc.*, 242 F.3d 1337, 1343-44 (Fed. Cir. 2001). We have found disclaimer when the specification indicated that for "successful manufacture" a particular step was "require[d]." *Andersen Corp. v. Fiber Composites, LLC*, 474 F.3d 1361, 1367 (Fed. Cir. 2007). We have found disclaimer when the specification indicated that the invention operated by "pushing (as opposed to pulling) forces," and then characterized the "pushing forces" as "an important feature of the present invention." *SafeTCare Mfg., Inc. v. Tele-Made, Inc.*, 497 F.3d 1262, 1269-70 (Fed. Cir. 2007). We also have found disclaimer when the patent repeatedly disparaged an embodiment as "antiquated," having "inherent inadequacies," and then detailed the "deficiencies [that] make it difficult" to use. *Chicago Bd. Options Exch., Inc. v. Int'l Sec. Exch., LLC*, 677 F.3d 1361, 1372 (Fed. Cir. 2012). Likewise, we have used disclaimer to limit a claim element to a feature of the preferred embodiment when the specification described that feature as a "very important feature . . . in an aspect of the present invention," and disparaged alternatives to that feature. *Inpro II Licensing, S.A.R.L. v. T-Mobile USA Inc.*, 450 F.3d 1350, 1354-55 (Fed. Cir. 2006).

Such circumstances are not present in this case. The specifications consistently refer to the IDC connector of Figure 6 merely as a "depicted embodiment." *See, e.g.*, '140 patent col. 4 ll. 5-7, 16-17. They do not describe the depicted IDC connector—or any of the various limitations set forth by the district court—as the present invention, as essential, or as important. Nor do they disparage other IDC connectors. This is simply not a case where the patentee has disavowed the plain meaning of the term IDC connector.

As in *GE Lighting Solutions*, here the '298 patent specification contains no clear (or even arguable) disavowal or disclaimer of the claim scope ***literally stated*** in the claims, particularly related to the "grate" limitation which requires—simply and specifically—"a grate . . . allowing water and any debris to flow ***into*** [the] basin." Nothing more, nothing less.

7

## V.      CONCLUSION

Riveer respectfully submits that this Court promptly should deny Hydro's motion

for "supplemental" claim construction.

Dated:  May 18, 2015                              Respectfully submitted,

**ONE LLP**

/s/ Stephen M. Lobbin
Stephen M. Lobbin (admitted *pro hac vice*)
*Attorney for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that I caused the foregoing document—**PLAINTIFF RIVEER'S**

**RESPONSE TO DEFENDANTS' MOTION FOR SUPPLEMENTAL CLAIM**

**CONSTRUCTION**—to be filed via the Court's CM/ECF system and thereby served on

the parties as follows:

> Brett L. Foster
> Mark A. Miller
> Christopher B. Hadley
> **Holland & Hart LLP**
> 222 S. Main Street, Suite 2200
> Salt Lake City, Utah 84101

Dated:  May 18, 2015                              /s/ Stephen M. Lobbin
                                                         *Attorney for Plaintiff*