FILED IN UNITED STATES DISTRICT COURT, DISTRICT OF UTAH

JAN 04 2016

D. MARK JONES, CLERK
BY_____
     DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH

| | |
|---|---|
| PETTER INVESTMENTS, INC. d/b/a/ RIVEER, a Michigan corporation,<br><br>Plaintiff,<br><br>v.<br><br>HYDRO ENGINEERING, INC., a Utah corporation, and CALIFORNIA CLEANING SYSTEMS, a California company,<br><br>Defendants. | **MEMORANDUM DECISION AND ORDER**<br><br><br>Case No. 2:14-CV-00045-DB<br><br>District Judge Dee Benson |
| HYDRO ENGINERING, INC., a Utah corporation,<br><br>Plaintiff,<br><br>v.<br><br>PETTER INVESTMENTS, INC., a Michigan corporation,<br><br>Defendant. | (consolidated with Case No. 2:11-CV-00139-RSJ-EJF) |

Before the Court are two motions: Hydro's Motion for Summary Judgment on Third Counterclaim for Trademark Infringement ("Hydro's Motion," Dkt. 278, consolidated from Case No. 2:11-cv-00139); and Petter, d/b/a Riveer's Motion for Summary Adjudication of No

Trademark Infringement ("Petter's Motion," Dkt. 254). These motions share legal frameworks and factual background.

## BACKGROUND

Petter Investments, Inc. d/b/a Riveer ("Petter") and Hydro Engineering, Inc. ("Hydro") both sell wash systems for aircraft and heavy equipment. Their primary customer is the U.S. Army, but they also sell to commercial customers. The Army requested from both that they manufacture a wash system for the outside of an aircraft in 2005. Hydro and Petter began selling these aircraft wash systems—"AWS"—that same year. Both Hydro and Petter use the term "AWS" to refer to the aircraft wash system subset of their product lines. Hydro has sold aircraft wash systems to not only the Army but also to commercial customers and has represented that its product is customarily sold for nongovernmental purposes.

Hydro has sold for several years a product that washes the turbine engines of aircraft. Hydro calls this product "TEWS" for turbine engine wash system. Petter does not make a "TEWS." Some time ago, it developed a competing product known as the Aircraft Cleaning and Deicing System—"ACDS." It sold only a few units.

Hydro employee Carl Pelletier quit working for Hydro and began a work relationship with Petter in October 2009. Petter then developed a wash system meant to better compete with Hydro's AWS. Petter called it "AWS 2.0." Pelletier and another Petter employee met with Army representatives in May 2010 to demonstrate the AWS 2.0. They discussed a concept for a new product that would combine the AWS 2.0 aircraft exterior wash function with the turbine wash functions of Hydro's TEWS. An Army representative coined the term TAWS—for Total Aircraft Wash System. Petter began marketing the TAWS to the military in June 2010, selling 12 TAWS

units to the Army in November of that year. Petter applied for trademark registration for the term "TAWS" with the United States Patent and Trademark Office (USPTO) on December 10, 2010 under Serial No. 85/195,050. Petter asserted that it first used the TAWS term in commerce in August 2010. The USPTO did not request from Petter proof of "secondary meaning" during its prosecution of the trademark. The USPTO granted TAWS a trademark registration in July 2011—Registration No. 3,997,320. Petter advertised its TAWS product with a brochure that was sent to potential customers and available for download on Petter's website. Petter also promoted TAWS at trade shows.

Hydro began marketing a combined aircraft wash system and turbine wash system in January 2011 using the acronym TAWS. Petter sent Hydro a cease and desist letter. Hydro stopped using the TAWS acronym and began using ATAWS—for Advanced Total Aircraft Wash System.

Petter has asserted a counterclaim against Hydro for infringement of its trademark TAWS, pursuant to §32(1) of the Lanham Act, 15 U.S.C. §1114. Hydro has asserted a counterclaim against Petter for infringement of Hydro's trademark TEWS. In order to prevail on a claim for trademark infringement, a party must prove that: (1) it has a protectable interest in the mark; (2) the alleged infringer has used an identical or similar mark in commerce; and (3) the alleged infringer's use is likely to confuse customers. *1-800-Contacts, Inc. v. Lens.com, Inc.*, 722 F.3d 1229, 1238 (10th Cir. 2013) (citations omitted). Each party argues that it is entitled to summary judgment because the other's mark is not enforceable. Based on the law, facts, and arguments of the parties, the Court denies both motions.

## STANDARD FOR SUMMARY JUDGMENT

Summary judgment is appropriate if the pleadings and record demonstrate the absence of a genuine issue of material fact and the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(a). The nonmoving party is entitled to reasonable inferences from the record. If the nonmovant bears the burden of persuasion on an issue, summary judgment may be granted if the movant points out a lack of evidence to support the claim and the nonmovant cannot identify specific facts to the contrary. *Hornady Mfg. Co., Inc. v. Doubletap, Inc.*, 746 F.3d 995, 1000–01 (10th Cir. 2014).

## STANDARDS FOR TRADEMARKS

A trademark is a "distinctive mark…used by a producer or manufacturer to identify and distinguish his goods from those of others." *Educational Dev. Corp. v. Econ. Co.*, 562 F.2d 26, 28 (10th Cir. 1977). To be protectable as a trademark, a mark "must be capable of distinguishing the product it marks from others." *Donchez v. Coors Brewing Co.*, 392 F.3d 1211, 1216 (10th Cir. 2004).

There are five categories of marks, arrayed in ascending order of eligibility as trademarks: (1) generic; (2) descriptive; (3) suggestive; (4) arbitrary; and (5) fanciful. *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 768 (1992) (approving of the formulation set out in *Abercrombie & Fitch Co. v. Hunting World, Inc.*, 537 F.2d 4 (2d Cir. 1976)); *see also Educational Dev. Corp.*, 562 F.2d at 28. Generic marks, on one end of the spectrum, can never be protected as trademarks. A generic mark is a contradiction in terms. *Primary Children's Med. Ctr. Found. v. Scentsy, Inc.*, No. 2:11-CV-1141-TC, 2012 WL 2357729, at *2 (D. Utah June 20, 2012), *as amended* (July 6, 2012) ("A generic mark is a contradiction in terms. The generic name

of a product can never function as a trademark because the name of a product itself cannot serve to distinguish the goods or services of one seller from those of another."). Suggestive, arbitrary, and fanciful marks, on the other end, are considered to be "inherently distinctive" and can be registered as trademarks without proof of "secondary meaning." *Two Pesos, Inc.*, 505 U.S. at 768–69. Descriptive marks fall in between the two ends of the spectrum for eligibility and are not considered to be inherently distinctive—therefore, to be registered on the Principal Register of the USPTO, descriptive marks require proof of "secondary meaning." *Id.* To establish "secondary meaning," a mark owner must show that the descriptive word(s) "have been used so long and so exclusively by one producer with reference to his goods or articles that, in that trade and to that branch of the purchasing public, the word or phrase (has) come to mean that the article is his product." *Educational Dev. Corp.*, 562 F.2d at 28 (quoting *Bardahl Oil Co. v. Atomic Oil Co. of Okl.*, 351 F.2d 148, 150 (10th Cir. 1965)). The crux of a secondary meaning determination is whether the mark owner can show "a mental association in buyers' minds between the alleged mark and a single source of the product." *Retail Services, Inc. v. Freebies Publishing*, 364 F.3d 535, 539 (4th Cir. 2004); *Nat'l Nu Grape Co. v. Guest*, 164 F.2d 874, 876–77 (10th Cir. 1947).

Registration of a mark on the Principal Register of the USPTO is "prima facie evidence" of: (1) the validity of the mark; (2) the registrant's ownership of the mark; and (3) the registrant's exclusive right to use the mark. 15 U.S.C. §1057(b); §1115(a). Furthermore, where the USPTO registered the mark without proof of secondary meaning, the mark enjoys a presumption that it is inherently distinctive—i.e. suggestive, arbitrary, or fanciful—rather than descriptive. *GTE Corp. v. Williams*, 904 F.2d 536, 538 (10th Cir. 1990); *KMMmentor, LLC v. Knowledge Mgmt.*

5

*Professional Soceity, Inc.*, 712 F.Supp.2d 1222, 1242 (D.Kan. 2010) (citing *Retail Services*, 364 F.3d at 542).

To overcome this presumption of validity, the challenging party must establish, by a preponderance of the evidence, that the mark lacks distinctiveness—i.e. that it is either generic or descriptive without secondary meaning. *See e.g. Educational Dev. Corp.*, 562 F.2d at 29 (finding prima facie evidence of validity rebutted by evidence of descriptiveness and lack of secondary meaning).

Characterization of a mark is a question of fact. *See Donchez*, 392 F.3d at 1216. The factfinder's mission is to determine the "perception of the purchasing public." *Id.* Consequently, determining whether a mark is generic is a question of fact. 2 McCarthy on Trademarks and Unfair Competition § 12:12 (4th ed.) (citing *In re Northland Aluminum Products, Inc.*, 777 F.2d 1556, 1559 (Fed. Cir. 1985) (whether a term is a generic name is a question of fact; evidence of public understanding of the term may be obtained from "any competent source, such as consumer surveys, dictionaries, newspapers and other publications")); *In re Hotels.com, L.P.*, 573 F.3d 1300, 1301 (Fed. Cir. 2009) ("Whether a particular term is generic and therefore cannot be a trademark or service mark is a question of fact.")).

A finding of genericness is a high hurdle—courts are cautioned from finding that a mark is generic without "persuasive and clear evidence that the contested term has become generic among a majority of the buyer group." 2 McCarthy on Trademarks and Unfair Competition § 12:12 (4th ed.) (citing Judge Posner's statement in *Ty Inc. v. Softbelly's Inc.*, 353 F.3d 528, 69 (7th Cir. 2003), that "[t]o determine that a trademark is generic and thus pitch it into the public domain is a fateful step," with the added observation that "[t]he fateful step ordinarily is not

taken until the trademark has gone so far toward becoming the exclusive descriptor [sic] of the product that sellers of competing brands cannot compete effectively without using the name to designate the product they are selling.").

Additionally, determination of whether a descriptive mark has acquired secondary meaning is a factual question, and should generally not be decided on summary judgment. *See Educational Dev. Corp.*, 562 F.2d at 28; *Marker Int'l v. DeBruler*, 844 F.2d 763, 764 (10th Cir. 1988). The question of secondary meaning is appropriate for summary judgment only where the underlying facts are undisputed. *Id.*

## ANALYSIS

### I. Hydro's Motion for Summary Judgment

Petter's registration of TAWS grants Petter a rebuttable presumption that the mark is valid. *Educational Dev. Corp.*, 562 F.2d at 28. Because Petter's mark further enjoys a presumption of inherent distinctiveness, Hydro must rebut this presumption by showing, by a preponderance of the evidence, that the term is either generic or merely descriptive without secondary meaning. If the presumption is overcome, then Petter may defeat Hydro's motion by providing evidence of inherent distinctiveness or distinctiveness with secondary meaning.

Hydro argues that TAWS is a generic term because "AWS" has become generic through use by the Army, and adding T for "Total" to the front cannot transform the generic AWS into a descriptive term. Hydro alternatively argues that TAWS is a descriptive term for an aircraft wash system that washes the total aircraft and that, as a matter of law, Petter cannot establish secondary meaning existed before Hydro's allegedly infringing use. These arguments will be discussed in turn.

7

A. Generic Term

To overcome the presumption of validity enjoyed by Petter's registered mark, Hydro must show by a preponderance of the evidence that TAWS is generic—i.e. that "the trademark has gone so far toward becoming the exclusive descriptor [sic] of the product that sellers of competing brands cannot compete effectively without using the name to designate the product they are selling." *Ty Inc.*, 353 F.3d at 69. In other words, Hydro must show that (1) the "primary significance of the mark" is an indication of the type of product, rather than of its source; and (2) the evidence demonstrates the generic understanding from the viewpoint of the relevant public. *KMMmentor*, 712 F. Supp. at 1243 (citations omitted).

Letter combinations can be generic of the goods they mark. The key issue is whether "some operation of the imagination is required to connect the initials with the product." *Anheuser-Busch, Inc. v. Stroh Brewery Co.*, 750 F.2d 631, 635–36 (8th Cir. 1984). For example: "TIA" was held to be generic for "time impact analysis," *Capital Project Management, Inc. v. IMDISI, Inc.*, 70 U.S.P.Q.2d 1172 (T.T.A.B. 2003); "i/t/a" was held to be a generic abbreviation of "initial teaching alphabet," *In re Initial Teaching Alphabet Publications, Inc.*, 153 U.S.P.Q. 684 (T.T.A.B. 1967); and "MBE" was held to be generic for "Multistate Bar Exam," *National Conference of Bar Examiners v. Multistate Legal Studies, Inc.*, 692 F.2d 478 (7th Cir. 1982). Hydro provides some evidence that Petter, Hydro, and the Army use the acronym AWS generically to refer to a class of products—namely, aircraft wash systems. However, even if the Court could conclude as a matter of law that AWS is generic, it cannot conclude as a matter of law that TAWS is generic. Viewing the evidence in the light most favorable to Petter, as the

Court must do, the Court concludes that a reasonable jury could reach different conclusions about the understanding of the relevant public.

There is evidence in the record which suggests that the Army considered Petter "the only known vendor" of TAWS and that Hydro, or any other vendor, who would make a "Total Aircraft Wash System" would be making "a version" of Petter's TAWS. The Court finds unpersuasive Hydro's argument that customers who visit Petter's website and see that TAWS is listed under the heading "Aircraft Wash Systems" would be confused into thinking this is a generic term. TAWS is listed there, with the registered trademark symbol, along with "ARC," "AWS," and "BirdBath." In this light, a jury could find that a potential Petter customer would consider TAWS to be a distinctive name. In sum, the Court cannot conclude at this stage, as a matter of law, that Hydro's evidence sufficiently rebuts the presumption of validity enjoyed by Petter's registered mark TAWS.

### B. Descriptive Term Lacking Secondary Meaning

Hydro alternatively argues that if the TAWS mark is not generic, it is highly descriptive and lacks "secondary meaning"—i.e. an association of an otherwise descriptive mark with a single source in the minds of the purchasing public. Hydro asks the Court to conclude this as a matter of law. Hydro recognizes that proof of secondary meaning is a question of fact, but argues that this case can be decided on summary judgment, citing several Tenth Circuit cases that upheld summary judgment decisions regarding secondary meaning and characterization of a mark. (Dkt. 278 at 15.) However, these cases are each distinct from the instant case.

In *Marker Int'l*, the defendant admitted that the mark had secondary meaning. 844 F.2d at 764 ("These statements by the defendant constitute an admission that the Marker International

trademark has secondary meaning."). In *Donchez*, the mark owner had the burden of persuasion regarding eligibility of the mark because he had not registered it with the USPTO. 392 F.3d at 1216 ("Because Donchez has never registered the term with the United States Patent and Trademark Office, it is his burden to demonstrate that it is protectable under § 43(a)."). Again in *Utah Lighthouse Ministry v. Foundation for Apologetic Info. & Research*, the mark owner bore the burden of persuasion regarding validity of the mark due to a failure to register its mark. 527 F.3d 1045, 1050 (10th Cir. 2008) ("Because UTLM's trademark, UTAH LIGHTHOUSE, was not registered…UTLM must show that the mark is protectable.") (citations omitted). As such, the facts in *Donchez* and *Utah Lighthouse* are distinct from those of the instant case, where Hydro bears the burden of persuasion regarding the invalidity of the TAWS mark, due to Petter's registration with the USPTO.

Whether a mark has obtained secondary meaning is a "question of fact and thus generally should not be decided at the summary judgment stage." *Sally Beauty Co. v. Beautyco, Inc.*, 304 F.3d 964, 978 (10th Cir. 2002); see also KMMmentor, 712 F. Supp. at 1245 (denying motion for summary judgment on infringement counterclaim and stating that "if the issue comes down to secondary meaning, the question of whether a trademark has acquired secondary meaning is generally a question of fact and should not be decided in a summary fashion"). While Hydro correctly points out that a determination of secondary meaning can be decided in a summary fashion, where the underlying facts are not disputed, Hydro incorrectly describes the instant case as falling into such a category. The instant case is distinct from each of the Tenth Circuit cases Hydro cites on this point. Furthermore, Petter is entitled to all favorable inferences at this

10

summary judgment stage. As such, the Court cannot conclude as a matter of law that Petter's mark is descriptive and lacks secondary meaning.

Because the USPTO registered the mark TAWS without requiring proof of secondary meaning, the mark enjoys a presumption that it is inherently distinctive—i.e. is either suggestive, arbitrary, or fanciful. Therefore, in order to find for Hydro on this issue, the Court must first determine that Hydro has rebutted this presumption and hold that the mark is descriptive (rather than suggestive, fanciful, or arbitrary, as it is presumed to be). Then, the Court must find that Hydro provided significantly probative evidence that the descriptive mark lacks secondary meaning. The Court cannot so conclude at this stage of the litigation.

An acronym of a descriptive term will be found descriptive if the term still conveys to the buyer the descriptive connotation of the original term. As a general rule, "no very extensive or complicated process of education or indoctrination is required to convey that initials stand for descriptive words." *G. Heileman Brewing Co. v. Anheuser-Busch, Inc.*, 873 F.2d 985, 994 (7th Cir. 1989). Rather, "as a practical matter, initials do not usually differ significantly in their trademark role from the descriptive words that they represent." *Id*. For example: "NKJV" was held to be a descriptive abbreviation of "New King James Version" for use on Bibles, *In re Thomas Nelson, Inc.*, 97 U.S.P.Q.2d 1712 (T.T.A.B. 2011); and the letter "O" was found to be descriptive for orange flavored vodka, *Star Industries, Inc. v. Bacardi & Co. Ltd. Corp.*, 71 U.S.P.Q.2d 1026 (S.D. N.Y. 2003), aff'd on other grounds, 412 F.3d 373 (2d Cir. 2005), cert. denied, 126 S. Ct. 1570 (U.S. 2006). As such, a descriptive acronym is protectable as a trademark only if it has acquired secondary meaning in the minds of the purchasing public.

Nevertheless, Petter does not bear the burden of persuasion on this issue. Viewed in a light most favorable to Petter, the Court concludes that evidence exists in the record that could persuade a factfinder that TAWS has acquired secondary meaning in the minds of the relevant public, even if the Court did find that TAWS was descriptive.

First, Petter advertised its TAWS within the relevant market by preparing advertising brochures, directly contacting potential customers, features on its website, and in trade shows. While the aforementioned advertising was not particularly costly or extensive, Hydro argues that the purchasing public is a discrete subsection of the market. Therefore, a factfinder could find that Petter's limited advertising was sufficient to engender secondary meaning in the minds of the relevant public.

Second, Petter was the only seller of a TAWS system at the time the trademark dispute arose. Although it made only a single sale (of 12 units, to the Army), the discrete nature of the relevant market may render this single sale sufficient for creating secondary meaning.

While these factors are not particularly strong indicators of secondary meaning, the burden is not on Petter to provide evidence of secondary meaning—rather, its mark enjoys a presumption of being "inherently distinctive" and, consequently, not requiring proof of secondary meaning for registration. Hydro must rebut this presumption by a preponderance of the evidence. Viewing the evidence in the light most favorable to Petter, as the Court must do, the Court cannot conclude that Hdyro has rebutted this presumption at this stage of the litigation.

C. Fraud

Hydro also argues that Petter's mark is not entitled to a presumption of validity because Petter offered a declaration to the USPTO during the registration prosecution that constituted

fraud rending the registration invalid. Essentially, Hydro claims that Petter had some affirmative obligation to offer the USPTO information about the AWS and TEWS acronyms and that their failure to do so was fraudulent. Section 38 of the Lanham Act creates civil liability for those who fraudulently procure a trademark registration:

> Any person who shall procure registration in the Patent and Trademark Office of a mark by a false or fraudulent declaration or representation, oral or in writing, or by any false means, shall be liable in a civil action by any person injured thereby for any damages sustained in consequence thereof.

15 U.S.C. §1120. In order to prove fraudulent procurement, Hydro is required to show:

> (1) the false representation regarding a material fact; (2) the registrant's knowledge or belief that the representation is false (scienter); (3) the intention to induce action or refraining from action in reliance on the misrepresentation; (4) reasonable reliance on the misrepresentation; and (5) damages proximately resulting from such reliance.

*San Juan Prods., Inc. v. San Juan Pools of Kansas, Inc.*, 849 F.2d 468 (10th Cir. 1988).

However, Hydro's argument fails. As part of the trademark registration application, Petter signed an affidavit attesting that to the best of its belief and knowledge, "no other person, firm, or corporation ha[d] the right to use said mark in commerce, either in the identical form or in such near resemblance hereto as may be likely when applied to the goods of such other person to cause confusion or to cause mistake or to deceive." 15 U.S.C. § 1051.

In determining whether this statement was fraudulent, the Court must determine the "declarant's subjective, 'honestly held, good faith' belief." See *United Phosphorus, Ltd. v. Midland Fumigant, Inc.*, 205 F.3d 1219, 1227 (10th Cir. 2000) (quoting *San Juan Prods.*, 849 F.2d at 472 (citation omitted)). Therefore, Hydro has the burden of proving, by clear and convincing evidence, that Petter signed the oath knowing that Hydro had the right to use the

TAWS mark in commerce. *See Stanfield v. Osborne Indus., Inc.,* 52 F.3d 867, 874 (10th Cir.), *cert. denied,* 516 U.S. 920 (1995); *Beer Nuts, Inc. v. Clover Club Foods Co.,* 711 F.2d 934, 942 (10th Cir.1983) (burden of proof is clear and convincing). Courts are to be "mindful" of "characterization of this burden as a heavy one." *United Phosphorus, Ltd.,* 205 F.3d at 1227.

The case Hydro cites in support of its argument is distinct from the facts of the instant case—in *United Phosphorus, Ltd.,* the company applying for a mark did so despite knowing that another company was using the very same term. 205 F.3d at 1223–24. Here, Hydro's only arguments are that: both Petter and Hydro were using AWS prior to Petter's registration of TAWS; Petter knew Hydro was using TEWS prior to its registration; and that AWS and TEWS differ from the registered TAWS by only one letter. These facts are distinct from the facts in *United Phosphorus Ltd.,* where the registrant submitted the verified statement to the USPTO knowing that another company was using exactly the same term. The Court cannot conclude as a matter of law that Hydro has met this burden of proving that Petter had a duty to provide the information on various other acronyms or that, by failing to do so, Petter committed fraud on the USPTO.

## II.     Petter's Motion for Summary Judgment

Petter has moved for summary judgment of no infringement of Hydro's alleged trademark, TEWS. Unlike Petter, Hydro did not register its mark with the USPTO, so the mark does not enjoy a presumption of validity.

Petter's Motion for Summary Judgment focuses on the following two elements of Hydro's infringement claim—(i) secondary meaning sufficient to render Hydro's mark protectable and

(ii) likelihood of confusion. Petter argues that Hydro offered insufficient evidence to prove these two elements of its infringement claim, such that no reasonable jury could find in Hydro's favor.

However, as discussed above, a determination of "secondary meaning" is a question of fact and should generally not be decided in summary fashion. *Sally Beauty Co.*, 304 F.3d at 978 (explaining that secondary meaning is a "question of fact and thus generally should not be decided at the summary judgment stage"); *see also KMMmentor*, 712 F. Supp. at 1245 (denying motion for summary judgment on infringement counterclaim and stating that "if the issue comes down to secondary meaning, the question of whether a trademark has acquired secondary meaning is generally a question of fact and should not be decided in a summary fashion").

Likewise, a determination of "likelihood of confusion" is a highly fact-intensive inquiry, where the Court is to consider all "relevant factors," including the six *Sally Beauty* factors. *Sally Beauty Co.*, 304 F.3d at 972; *Heartsprings, Inc. v. Heartspring, Inc.*, 143 F.3d 550, 554 (10th Cir. 1998). Although it can be decided in summary fashion when there is no genuine issue of material fact, the instant case does not qualify for such a description. *See, e.g., King of the Mountain Sports, Inc. v. Chrysler Corp.*, 185 F.3d 1084, 1089 (10th Cir. 1999) ("Although likelihood of confusion is frequently a fairly disputed issue of fact on which reasonable minds may differ, the issue is amenable to summary judgment [where the nonmovant shows that a genuine issue of material fact exists].") (citations omitted). Furthermore, even if no genuine issue of material fact exists, Petter is not entitled to judgment as a matter of law because this Court concludes that a reasonable jury could find in Hydro's favor.

The Court finds that ample evidence exists in the record which, when viewed in the light most favorable to Hydro, raises a genuine issue of material fact and could lead a reasonable jury

to conclude that its TEWS mark has earned secondary meaning in the minds of the relevant public (especially given the discrete nature of the market involved) and that there is a likelihood of confusion between the TEWS and TAWS marks.

For example, in support for a finding of secondary meaning, Hydro cites deposition testimony of the Army purchasing officers and others who are a large part of, or entirely, the relevant public for trademark purposes in this case, that they view TEWS as synonymous with Hydro. Hydro presents testimony and documentation showing that it has sold its TEWS for twenty four years, with approximately 1,518 units being sold to the Army and sales totaling $11,373,700.

For the likelihood of confusion element, Hydro cites evidence in support of each *Sally Beauty* factor, including: testimony and documents suggesting that because TEWS and TAWS are one letter apart, Petter was concerned with the high degree of similarity between its new mark TAWS and Hydro's long-standing mark TEWS ("degree of similarity between the marks" factor); testimony suggesting that Petter adopted and registered its mark TAWS knowing that it might be confused with Hydro's TEWS ("intent of the alleged infringer in adopting its mark" factor); an email from an Army employee asking if TAWS was Hydro's product, as well as deposition of a Hydro employee testifying that six out of every ten customers who call Hydro looking to buy a TEWS, call it a "TAWS" ("evidence of actual confusion" factor); testimony that both Hydro and Petter understood the TEWS and TAWS products to perform the same functions ("similarity of products and manner of marketing" factor); evidence that the Army was the major purchaser of Hydro's TEWS ("degree of care likely to be exercised by purchasers" factor); and evidence showing Hydro's long and exclusive use of TEWS, as well as testimony from the Army

and Petter suggesting that they associate TEWS exclusively with Hydro, compared with evidence suggesting that Petter's TAWS mark was not in use for very long at the time of alleged infringement and that Petter's advertising of the TAWS mark was weak ("strength or weakness of the marks" factor).

Viewing this evidence in a light most favorable to Hydro, the Court concludes that a reasonable jury could find that Hydro's TEWS mark is associated with secondary meaning in the minds of the purchasing public and that there is a likelihood of confusion between Hydro's mark TEWS and Petter's mark TAWS.

## CONCLUSION

In sum, the Court cannot conclude as a matter of law that Hydro rebutted the presumption of validity enjoyed by Petter's registered mark TAWS. It also cannot conclude as a matter of law that Hydro proved, by clear and convincing evidence, that Petter's registered mark is invalid due to fraud perpetrated on the USPTO. For the reasons stated above, Hydro's Motion for Summary Judgment on Petter's Third Counterclaim, for Trademark Infringement, is DENIED.

Finally, the Court concludes that Hydro has provided sufficient evidence to raise a genuine issue of material fact as to the elements of secondary meaning and likelihood of confusion in its trademark infringement claim which could lead a reasonable jury to decide in its favor. Accordingly, Riveer's Motion for Summary Adjudication of No Trademark Infringement is DENIED.

DATED this 4th day of JANUARY, 2016.

_____
Dee Benson
United States District Judge